1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH,<br><br>        Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Jeffrey N. Schneider ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the

– 1 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Defendants' public documents, announcements made by Defendants, public filings, wire and press releases published by and regarding Champignon Brands Inc. ("Champignon" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Champignon securities between March 27, 2020 and February 17, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Champignon purports to be engaged in the formulation and manufacturing of novel ketamine, ketamine derivatives and other psychedelics, and delivery platforms for nutraceutical and psychedelic medicine while being supported by its psychedelic medicine clinic platform.

8.     Champignon is incorporated in British Columbia and its head office is located at 1430 Hurontario St., Mississauga, Ontario L5G 3H4. Champignon's securities trade over the counter on the OTC Pink Exchange ("OTC") under the ticker symbol "SHRMF".

9.     Defendant Gareth Birdsall ("Birdsall") served as the Company's Chief Executive Officer ("CEO") from August 2019 until May 2020 and as a Director from March 2019 until November 2020.

10.     Defendant Matthew Fish ("Fish") has served as the Company's President since May 2020 and as a Director since August 2019.

11.     Defendants Birdsall and Fish are sometimes referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

16.     On March 27, 2020, Champignon issued a press release entitled "CHAMPIGNON EXPANDS PRECLINICAL PIPELINE WITH MEASURED

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

PSILOCYBIN DOSAGES STUDIES AT UNIVERSITY OF MIAMI" which announced the following, in pertinent part, regarding the Company's acquisition of Tassili Life Sciences Corp. ("Tassili"):

> Champignon Brands Inc. ("**Champignon**" or the "**Company**") **(CSE: SHRM) (FWB: 496) (OTC: SHRMF)**, a health and wellness company specializing in the formulation of medicinal mushrooms health products and novel delivery platforms for the pharmaceutical and nutraceutical industries, has entered into a definitive agreement to acquire Tassili Life Sciences Corp. ("Tassili"), expanding the Company's preclinical trial pipeline, as well as its aggregation of broad intellectual property (IP) related to the development of novel psychedelics therapeutics and their delivery systems, targeting multiple pathological psychological diseases.

> \*      \*      \*

> **TERMS**

> Under the terms of the agreement, Champignon will acquire 100% of the issued and outstanding shares of Tassili for total consideration of 16 million common shares in the capital of the Company. A finder's fee is applicable to this transaction.

(Emphasis in original.)

17.    Also on March 27, 2020, Champignon, filed a Material Change Report on Form 51-102F3 with the Canadian securities regulatory authorities which stated the following, in pertinent part, regarding the Company's acquisition of Artisan Growers Ltd. ("Artisan Growers"): "The Company is pleased to announce it has entered into a definitive agreement (the "Agreement") to acquire Artisan Growers Ltd. ("Artisan Growers"), a British Columbia based craft mushroom cultivator and supplier."

– 5 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

18.     Attached to the March 27, 2020 Material Change Report on Form 51-102F3 with the Canadian securities regulatory authorities was a press release by the Company which stated the following, in pertinent part, regarding the Company and its acquisition of Artisan Growers:

> Under the terms of the Agreement, Champignon will acquire 100 percent of the issued and outstanding shares of Artisan Growers for total consideration of 8 million common shares in the capital of the Company (the "**Consideration Shares**"). The Consideration Shares will be issued at an attributed price equal to a five-day volume-weighted average price at the time of issuance. A finder's fee is applicable to this transaction.

(Emphasis in original.)

19.     On March 30, 2020, Champignon, filed a Material Change Report on Form 51-102F3 with the Canadian securities regulatory authorities which stated the following, in pertinent part, regarding the Company's acquisition of Novo Formulations Ltd. ("Novoformulations"):" "The Issuer introduces new proprietary intellectual property ("IP") into its vertically integrated alternative medicine product range. The Company is pleased to announce its entry into a definitive agreement, signed March 18, 2020, to acquire Novo Formulations Ltd. ('Novoformulations')."

20.     Attached to the March 30, 2020 Material Change Report on Form 51-102F3 was a press release by the Company which stated the following, in pertinent part, regarding the Company and its acquisition of Novoformulations: "Under the terms of the Agreement, Champignon will acquire 100 percent of the issued and outstanding shares of Novoformulations for total consideration of 12.5 million common shares in the capital of the Company at a deemed price of $0.2475 per share. A finder's fee is applicable to this transaction."

– 6 –
CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

21.     On April 9, 2020, Champignon issued a press release entitled "CHAMPIGNON TO ACQUIRE ALTMED CAPITAL CORP., CONTRIBUTING HEALTH CANADA'S ONLY APPROVED PSYCHEDELIC MEDICINE CLINIC, SOPs FOR CLINICAL EXPANSION, EXISTING IP & MULTIPLE TRIALS" which announced the following, in pertinent part, regarding the Company's acquisition of AltMed Capital Corp. ("AltMed"):

> ***Under the terms of the Agreement, Champignon will acquire 100% of the issued and outstanding shares of AltMed*** for total consideration of 55,124,000 common shares, common shares in the capital of the company (the "Consideration Shares"), of which 16,522,000 will be subject only to applicable hold periods under securities legislation and 38,602,000 will be subject to voluntary resale restrictions and released in five equal tranches every three months with the first release commencing thirty days following closing. Additionally, 3,391,500 share purchase warrants will be issued in exchange for the cancellation of outstanding exercised AltMed share purchase warrants. The Transaction remains subject to AltMed shareholder approval. A finder's fee is applicable to this transaction.

(Emphasis added.)

22.     On May 29, 2020, the Company filed with the Canadian securities regulatory authorities its Condensed Interim Consolidated Financial Statements for the six month period ended March 31, 2020 and the period from incorporation on March 26, 2019 to March 31, 2019 (the "Financial Statements") and its Management's Discussion and Analysis for the same period (the "MD&A").

23.     The Financial Statements were "[a]pproved on behalf of the Board" and signed by Defendants Birdsall and Fish.

– 7 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

24.    The Financial Statements provided the following financial information:

(Expressed in Canadian Dollars)

| As at | Notes | March 31, 2020 $ | September 30, 2019 $ |
|---|---|---|---|
| **ASSETS** | | | |
| **Current assets** | | | |
| Cash | | 1,519,680 | 855,669 |
| Sales tax receivable | | 208,015 | - |
| Prepaid expenses | 4 | 351,823 | 153,093 |
| Inventory | 5 | 117,374 | 33,783 |
| | | 2,196,892 | 1,042,545 |
| **Non-current assets** | | | |
| Right-of-use asset | 10 | 11,077 | - |
| Intangible assets | 6 | 11,860,462 | 117,929 |
| **TOTAL ASSETS** | | **14,068,431** | **1,160,474** |
| **LIABILITIES** | | | |
| **Current liabilities** | | | |
| Accounts payable and accrued liabilities | 7,8 | 63,994 | 53,263 |
| Lease liability | 10 | 11,077 | - |
| **TOTAL LIABILITIES** | | **75,071** | 53,263 |
| **SHAREHOLDERS' EQUITY** | | | |
| Share capital | 9 | 15,603,227 | 1,269,500 |
| Reserve | 9 | 1,479,158 | 10,434 |
| Deficit | | (3,089,025) | (172,723) |
| **TOTAL SHAREHOLDERS' EQUITY** | | **13,993,360** | 1,107,211 |
| **TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY** | | **14,068,431** | **1,160,474** |

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

(Expressed in Canadian Dollars)

| | Notes | Three months ended, March 31, 2020 $ | Period from incorporation on March 26, 2019 to March 31, 2019 $ | Six months ended, March 31, 2020 $ | Period from incorporation on March 26, 2019 to March 31, 2019 $ |
|---|---|---|---|---|---|
| Revenues | | 316 | - | 316 | - |
| Cost of sales | | (196) | - | (196) | - |
| | | 120 | - | 120 | - |
| **Expenses** | | | | | |
| Accounting fees | | 14,671 | - | 14,671 | - |
| Advertising and promotion | | 881,910 | - | 948,410 | - |
| Amortization | 6 | 3,000 | - | 6,000 | - |
| Consulting fees | 8 | 308,966 | - | 346,716 | - |
| Filing fees | | 18,073 | - | 31,013 | - |
| Foreign exchange | | (4,001) | - | (8,296) | - |
| Legal fees | | 49,161 | - | 71,375 | - |
| Office and miscellaneous | | 132,874 | - | 136,081 | - |
| Research and development | | 50,000 | - | 50,000 | - |
| Share-based compensation | 8,9 | 1,320,452 | - | 1,320,452 | - |
| **Net loss and comprehensive loss for the period** | | (2,774,986) | - | (2,916,302) | - |
| **Loss per share – basic and diluted** | | (0.08) | - | (0.11) | - |
| **Weighted average number of common shares outstanding – basic and diluted** | | 32,404,705 | 1 | 26,462,853 | 1 |

25.    The MD&A stated the following, in pertinent part, regarding the Company's internal controls and required filings:

***Reporting Issuer Status***

As a reporting issuer, the Company is subject to reporting requirements under applicable Securities Laws and stock exchange policies. The Company is working with its legal, accounting and financial advisors to identify those areas in which changes should be made to its subsidiaries financial management control systems to manage its obligations as a subsidiary of a public company. Compliance with these requirements will increase legal and financial compliance costs, make some activities more difficult, time consuming or costly and increase demand on existing systems and resources. Among other things, the Company is required to file annual, quarterly and current reports with respect to its business and results of operations and maintain effective

– 9 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

disclosure controls and procedures and internal controls over financial reporting. ***To maintain and, if required, improve disclosure controls and procedures and internal controls over financial reporting to meet this standard, significant resources and management oversight may be required.***

(Emphasis added.)

26.     The MD&A stated the following, in pertinent part, regarding the Company's related party transactions:

**Related Party Transactions**

The Directors and Executive Officers of the Company are as follows:
Roger McIntyre, CEO
Matthew Fish, President, Secretary and Director
Stephen Brohman, CFO
Gareth Birdsall, Director
Jerry Habuda, Director
Dr. Bill Wilkerson, Director
Pat McCutcheon, Director

The aggregate value of transactions and outstanding balances relating to key management personnel were as follows:

|  | For the period ended March 31, | |
| --- | --- | --- |
|  | 2020 | 2019 |
| Consulting fees paid or accrued to companies controlled by the CEO | $    35,000 | $       - |
| Consulting fees paid or accrued to companies controlled by the CFO | 7,500 | - |
| Share based compensation | 69,456 | - |
| Total | $  111,956 | $       - |

Included in accounts payable and accrued liabilities is $1,575 (September 30, 2019 - $46,500) payable to directors and officers of the Company.

27.     The statements contained in ¶¶16-26 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

– 10 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Champignon had undisclosed material weaknesses and insufficient financial controls; (2) Champignon's previously issued financial statements were false and unreliable; (3) Champignon's earlier reported financial statements would need to be restated; (4) Champignon's acquisitions involved an undisclosed related party; (5) as a result of the foregoing and subsequent reporting delays and issues, the British Columbia Securities Commission would suspend Champignon's from trading; and (6) as a result, Defendants' statements about Champignon's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Begins to Emerge**

28.     On June 22, 2020, Champignon issued a press release entitled "CHAMPIGNON ANNOUNCES REGULATORY REVIEW" which announced that the Company had "been selected for a continuous disclosure review by the British Columbia Securities Commission (the "Commission"). The review relates to the Company's disclosure obligations since it became a reporting issuer on February 6, 2020 and includes a review of the disclosure surrounding certain recent acquisitions completed by the Company." Further, "In connection with the review, ***the Commission has issued a cease trade order*** suspending trading in the securities of the Company pending the filing of business acquisition reports by the Company in connection with the acquisitions of Artisan Growers Ltd., Novo Formulations Ltd. and Tassili Life Sciences Corp." (Emphasis added.)

– 11 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

29.    On this news, Champignon's stock price fell 24% to close at $0.500 per share on June 22, 2020, damaging investors.

30.    On September 15, 2020, Champignon issued a press release entitled "CHAMPIGNON PROVIDES UPDATE ON DISCLOSURE REVIEW" which provided the following regarding the AltMed acquisition and the cease trade orders:

> Since the review was commenced, the Company has arranged for … Preparation of financial disclosure in connection with the acquisition of AltMed Capital Corp. ("AltMed"). ***Compilation of the statements is at an advanced stage, and the Company expects this work to be concluded shortly.***
>
> … ***the Commission issued a replacement cease trade order (the "Replacement Order"), pending the filing of a revised material change report (the "Material Change Report") in connection with the acquisition by the Company of AltMed.***
>
> *            *            *
>
> The Company previously filed a Material Change Report on May 11, 2020, in connection with the acquisition of AltMed. The Replacement Order will remain in effect until a revised Material Change Report is filed which contains the disclosure required for a restructuring transaction in accordance with National Instrument 51-102 – Continuous Disclosure Obligations.
>
> Prior to finalization of a revised Material Change Report, the Company is required to finalize the accounting treatment for the acquisition of AltMed. ***The Company has concluded, in discussions with its external auditor and accounting advisors, that the acquisition of AltMed should be treated as a reverse-takeover*** in accordance with IFRS 3 – Business Combinations. As a result of this conclusion, AltMed is treated as the acquiror for accounting purposes and the Company is in the process of compiling the financial statements of AltMed for the six-month period ended June 30, 2020 to meet disclosure requirements.

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Compilation of the statements is at an advanced stage, and the Company expects this work to be concluded shortly.

(Emphasis added).

31.    On this news, Champignon's stock price fell 5% to close at $0.271 per share on September 16, 2020, damaging investors.

32.    On October 29, 2020, Champignon issued a press release entitled "Champignon Brands Provides Update on Continuous Disclosure Review" which provided the following updates:

Prior to finalization of a revised Material Change Report, the Company is required to finalize the accounting treatment for the acquisition of AltMed, which includes compiling the financial statements of AltMed for the six-month period ended June 30, 2020 to meet disclosure requirements.

**On October 27, 2020, the Commission issued an additional cease trade order pending the filing of the interim financial statements of the Company for the period ended June 30, 2020 (the "October Order").**

(Emphasis added).

33.    The statements contained in ¶¶30-32 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Champignon had undisclosed material weaknesses and insufficient financial controls; (2) Champignon's previously issued financial statements were false and unreliable; (3) Champignon's earlier reported financial statements would need

– 13 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

restatement; (4) Champignon's acquisitions involved an undisclosed related party; (5) as a result of the foregoing and subsequent reporting delays and issues, Champignon's Canadian stock trading would be suspended; (6) Champignon downplayed the seriousness of the needed restatement; and (7) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### **The Truth Emerges**

34.     On February 17, 2021, Champignon issued a press release entitled "Champignon Brands to Restate Financial Statements and MD&A has Prepared CSE Listing Statement" which announced the following, in pertinent part:

> Champignon Brands Inc. (the "Company"), (CSE: SHRM) (FWB: 496) (OTCQB: SHRMF), announced that as a result of a review by the British Columbia Securities Commission (the "Commission"), ***the Company has determined to withdraw and refile its condensed interim consolidated financial statements and management's discussion & analysis ("MD&A") for the three and six month periods ended March 31, 2020 (the "Original Financial Statements and MD&A")***.

> For the three and six month periods ended March 31, 2020, ***the Company previously recognized intangible assets in connection with the acquisitions of Artisan Growers Ltd., Novo Formulations Ltd. and Tassili Life Sciences Corp. (the "Acquisitions")*** that aggregated approximately $12 million. Subsequent to the issuance of the Original Financial Statements and MD&A, ***management determined that the financial statements needed to be restated to correct the accounting for the Acquisitions as the assets do not meet the definition of intangible assets for the purposes of international financial reporting standards and as result will be recorded as transaction costs in the Company's statement of loss and comprehensive loss***. The restated condensed interim consolidated financial statements and MD&A will

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

reflect this change in the accounting treatment of the assets acquired in these acquisitions. The effect of the restatements does not impact the Company's cash position.

In addition, *it was determined that a shareholder and contracted consultant (the Consultant")* [sic] *of the Company was a related party with respect to the Acquisitions*. As a result, the restated condensed interim consolidated financial statements and MD&A will include additional disclosure details with respect to related party transactions involving the Consultant.

The Company also expects to concurrently file condensed interim consolidated financial statements and related MD&A's for the three months ended June 30, 2020 and for the six months ended September 30, 2020 (the "September Interim Financial Statements and MD&A"). The September Interim Financial Statements and MD&A will reflect the acquisition of Altmed Capital Corp. ("Altmed") on April 30, 2020 (the "Transaction"). The Transaction constituted a Reverse Takeover Transaction ("RTO") of Champignon by Altmed. As a result, the fiscal year end of the Company for accounting and reporting purposes subsequent to April 30, 2020 will be Altmed's fiscal year end of March 31.

The Company has submitted drafts of the restated condensed interim consolidated financial statements and management's discussion & analysis ("MD&A") for the three and six month periods ended March 31, 2020 (the "Restated Financial Statements and MD&A") and the September Financial Statements and MD&A to the Commission for review. *Until the Restated Financial Statements and MD&A are filed, the Original Financial Statements and MD&A should not be relied upon and should be considered to have been withdrawn.*

(Emphasis added.)

35.     On this news, Champignon's stock price fell 10% to close at $0.687 per share on February 17, 2021, damaging investors.

– 15 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

36.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Champignon during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

– 17 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded OTC, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

– 18 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

– 19 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

50.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

52.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity

– 20 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

53.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

54.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act

### Against The Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

– 21 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

57.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

58.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and

– 22 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

– 23 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Dated: April 10, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/Laurence M. Rosen</u>
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

– 24 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS