Robert V. Prongay (SBN 270796)
 *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
 *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
 *prajesh@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Michael G. Quinn Jr. and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     v.<br><br>CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH,<br><br>          Defendants. | Case No. 2:21-cv-03120-JVS-KES<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF MICHAEL G. QUINN JR. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date:    July 12, 2021<br>Time:    1:30 p.m.<br>Judge:   James V. Selna<br>Crtrm.:  10C |

Lead Plaintiff Movant Michael G. Quinn Jr. ("Quinn") respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 15), and in reply to the opposition filed by Kenneth Kessler ("Kessler") (Dkt. No. 24, "Kessler Opp.").

## I.   INTRODUCTION

Only Kessler filed an opposition to Quinn's lead plaintiff motion. Kessler concedes, however, that Quinn has the largest financial interest in the relief sought by the class. Accordingly, Quinn is the presumptively most adequate plaintiff.

Kessler attempts to rebut the presumption by arguing that Quinn is subject to a unique defense that he is atypical. Specifically, Kessler claims that Quinn purchased his shares "after the fraud had been disclosed" on the basis that Quinn purchased shares before the final corrective disclosure at the end of the class period, but after two earlier purported partial corrective disclosures. This is nonsense. First, the complaint in this action (drafted and filed by Kessler's own counsel) clearly alleges that the final corrective disclosure revealed the fraud, and even alleges that the two earlier partial corrective disclosures where themselves fraudulent misrepresentations. Second, Champignon Brands Inc.'s stock price declined significantly upon disclosure of the fraud at the end of the Class Period. If the two earlier purported corrective disclosures had already disclosed the fraud like Kessler claims, then there would have been no reason for the stock to decline by 10% upon the final disclosure. Third, Kessler fails to note that courts in this Circuit overwhelmingly hold that plaintiffs need not hold shares at the time of every corrective disclosure to be lead plaintiff, and that purchasing shares after a partial corrective disclosure is not disqualifying.  Fourth, many class members in this action likely purchased shares on the same days as Quinn, negating the argument that he is atypical of the class.

As such, Kessler has failed to present the "proof" necessary to rebut the presumption that Quinn is the most adequate plaintiff. Accordingly, Quinn should be appointed as lead plaintiff and his selection of counsel should be approved.

## II.   QUINN IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

It cannot be contested that Quinn satisfies all three requirements to be the presumptively most adequate plaintiff. Kessler concedes that Quinn "claims a larger loss" than Kessler, as he must:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Michael G. Quinn, Jr. | 102,000 | 102,000 | $77,400.00 | $33,612.71 |
| Kenneth Kessler | 10,000 | 10,000 | $13,200.00 | $8,831.82 |

*See* Kessler Opp. at 2. Quinn also filed a timely motion and made the required preliminary showing that he satisfies the requirements of Rule 23 in his opening memorandum (*see* Dkt. Nos. 15, 16). Accordingly, Quinn is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## III.   THE PRESUMPTION THAT QUINN IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that Quinn is the most adequate plaintiff may be rebutted only upon "proof" that Quinn "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculative assertions are insufficient. *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 10-cv-6794, 2010 WL 11556544, at *1 (C.D. Cal. Dec. 15, 2010) (holding "mere speculation" was insufficient to rebut the most adequate plaintiff presumption); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are] insufficient to rebut the lead plaintiff presumption."); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) ("[S]peculations about possible conflicts do not rebut the statutory presumption that

one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories.") (emphasis in original).

Kessler's attacks on Quinn are not warranted in fact or law. Kessler claims Quinn "purchased all of this [sic] shares after the alleged fraud had been disclosed" and that "[c]ourts have held such trading patterns are atypical and disqualified lead plaintiff movants as such." Kessler Opp. at 2-3. This is incorrect. Quinn did not purchase his shares after the fraud had been disclosed, and courts overwhelmingly hold that purchasing shares after a partial corrective disclosure (but before the disclosure of the actual fraud) is not disqualifying.

### A. Quinn Did Not Purchase All His Shares After the Alleged Fraud Was Disclosed

The class period in this action is March 27, 2020, to February 17, 2021. *See* Dkt. No. 1 (the "Complaint") ¶ 1. The final corrective disclosure alleged in the complaint occurred at the end of the class period on February 17, 2021. *See* Complaint ¶ 34 (paragraph introduced as "The Truth Emerges"). On that day, Champignon ***disclosed for the first time that it had published false financial statements and had concealed related party dealings***. Specifically, Champignon issued a press release entitled "Champignon Brands to Restate Financial Statements and MD&A has Prepared CSE Listing Statement." *Id.* Therein, Champignon announced, among other things, that it would "withdraw and refile its condensed interim consolidated financial statements . . . for the three and six month periods ended March 31, 2020" to "correct the accounting for the [acquisitions of Artisan Growers Ltd., Novo Formulations Ltd. and Tassili Life Sciences Corp]." *Id.* Champignon further disclosed that "a shareholder and contracted consultant . . . of the [c]ompany was a related party with respect to the [a]cquisitions" and that "[a]s a result, the restated condensed interim consolidated financial statements . . . will include additional disclosure details with respect to related party transactions

involving the [c]onsultant." *Id.* On this news, Champignon's stock price fell 10%. *Id.* ¶ 35.[1]

Kessler claims, however, that two earlier partial corrective disclosures put investors "on notice of the alleged fraud" prior to February 17, 2021. *See id.* at 3. This is incorrect. As an initial matter, Kessler's counsel drafted the initial complaint. *Compare* Dkt. No. 10 at 3 (listing The Rosen Law Firm, P.A. as Kessler's counsel), *with* Complaint at 24 (listing The Rosen Law Firm, P.A. as plaintiff's counsel). The vary same attorneys who wrote "the Truth Emerg[d]" on February 17, 2021 (*see* Complaint ¶ 34), should not now be permitted to claim the truth emerged earlier simply because it is convenient to their appointment as lead counsel.

Setting that aside, however, the two earlier partial corrective disclosures did not put investors on notice of the fraud. The Complaint alleges that on June 22, 2020, Champignon had been selected for a continuous disclosure review by the British Columbia Securities Commission (the "Commission") and that the Commission had suspended trading of Champignon's securities pending Champignon's filing of business acquisition reports in connection with its acquisitions of Artisan Growers Ltd., Novo Formulations Ltd., and Tassili Life Sciences Corp. *See* Complaint ¶ 28. Then, on September 15, 2020, Champignon disclosed that the Commission issued a replacement cease trade order pending the filing of a revised material change report in connection with Champignon's acquisition of a fourth company: AltMed Capital Corp. ("AltMed"). *See id.* ¶ 30. Kessler claims these disclosures "revealed the fraud." Kessler Opp. at 3. However, there was nothing in these alleged partial corrective disclosures regarding Champignon's need to withdraw false financial statements or that Champignon had

---

[1] Kessler's argument is further demonstrated to be baseless by the fact that there was this statistically significant stock price decline after the corrective disclosure at the end of the class period. If the fraud had already been disclosed as Kessler claims, then the announcement of the restatement and related party dealings would not have been considered material by the market and would not have resulted in a significant stock price decline.

concealed related party transactions. In fact, the Complaint (which was drafted by Kessler's counsel) contradicts Kessler. The Complaint alleges that these two partial corrective disclosures were ***themselves misleading*** because they failed to disclose that:

> (1) Champignon had undisclosed material weaknesses and insufficient financial controls; (2) Champignon's previously issued financial statements were false and unreliable; (3) Champignon's earlier reported financial statements would need restatement; (4) Champignon's acquisitions involved an undisclosed related party; (5) as a result of the foregoing and subsequent reporting delays and issues, Champignon's Canadian stock trading would be suspended; (6) Champignon downplayed the seriousness of the needed restatement; and (7) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

Complaint ¶ 33. In other words, while Kessler implausibly claims these two partial corrective disclosures "revealed the fraud," Kessler's counsel alleged that they ***were*** the fraud.  Disclosures that do not mention a financial restatement or related party transaction, and are alleged to be false for that reason, cannot rationally be claimed to have disclosed the need to restate or the related party transactions.

Since Quinn purchased his shares prior to the actual disclosure of the fraud (*see* Dkt. No. 17-2, certifying purchases on February 11, 2021, and February 16, 2021), the Court should reject Kessler's claim that Quinn "purchased all of this [sic] shares after the alleged fraud had been disclosed." Kessler Opp. at 2.

**B.     Purchasing Shares After a Partial Corrective Disclosure Is Not Disqualifying**

Kessler claims that Quinn should be disqualified because he is subject to the unique defense that his "trading patterns are atypical," and that "[c]ourts have disqualified [similar] lead plaintiff movants." Kessler opp. at 3. These attacks fail. First, Quinn's trading was not atypical. Quinn purchased shares on two days squarely within the class period. Presumably, there are many members of the class that bought shares on those same days. As such, Kessler has failed to prove that Quinn is subject to a unique atypicality defense. *See In re Providian Fin. Corp. Sec.*

*Litig.*, No. 01-cv-03952, 2004 WL 5684494, at \*5 (N.D. Cal. Jan. 15, 2004) (recognizing that "even if RSA is subject to a defense based on its purchases after the disclosure, such a defense is not unique to RSA, and is equally applicable to other potential class members."). In fact, the only Central District of California case Kessler cites to attack Quinn in fact supports Quinn. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602-03 (C.D. Cal. 2009) (cited in Kessler Opp. at 3) (recognizing that there is no unique typicality defense where "other class members also presumably purchased after Countrywide's first corrective disclosure and during the disclosure period").

Moreover, the weight of authority in the Ninth Circuit holds that purchases after a partial disclosure (or even after the final disclosure) do not render a plaintiff atypical. *See Ferreira v. Funko*, Inc., No. 20-cv-02319, 2020 WL 3246328, at \*6 (C.D. Cal. June 11, 2020) ("Courts typically find that purchasing securities after a partial, or even full, disclosure of alleged fraud does not disqualify potential lead plaintiffs.") (collecting cases); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. 07-cv-7114, 2010 WL 11507255, at \*4 (C.D. Cal. Aug. 27, 2010) ("[P]ost-disclosure purchases do not defeat typicality."); *Hufnagle v. Rino Int'l Corp.*, No. 10-cv-8695-, 2011 WL 710704, at \*8 (C.D. Cal. Feb. 14, 2011), *adopted*, No. 10-cv-1754, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ("[P]urchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality.") (citation omitted); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) ("The weight of authority . . . 'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'") (citation omitted).[2]  Here, Kessler's argument is even weaker than these other cases since

---

[2]  Moreover, the fact that Quinn does not have losses associated with every corrective disclosure is not disqualifying. *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) ("[N]othing in the

Quinn's purchases at issue were all in the class period. Certainly, a class member purchasing shares during the class period, and then holding those shares over the final corrective disclosure is typical.

All four cases that Kessler cites to support his claim that Quinn is subject to a unique typicality defense are inapposite. *See* Kessler Opp. at 3-4.[3]

First, the court in *Valence* disqualified two proposed class representatives because they purchased a large number of shares ***after one of the two had already filed a complaint alleging that the company had committed fraud***. *See Valence*, 1996 WL 119468, at *5 ("Berry filed a fraud complaint on May 3, 1994, the day of the May 3, 1994 announcement, and then purchased 1000 shares in July 1994, tripling his holdings for a total of 1500 shares."). Here, there was no complaint on file alleging fraud when Quinn purchased his shares, and Kessler's counsel alleges in the Complaint that the fraud was revealed after Quinn's purchases.

Second, *Countrywide* supports Quinn. *See Countrywide*, 273 F.R.D. 586, 602-03 ("[t]he Court joins the great weight of authority and concludes . . . it is not inherently atypical (or necessarily unreasonable) to make some purchases" after one or more corrective disclosures).

Third, the court in *Petrobras* rejected a lead plaintiff applicant who purchased shares on November 14, 2014 (*see Petrobras*, 104 F.Supp.3d at 623), after twelve substantive disclosures detailing the fraud that occurred on September 7, 2014, September 8, 2014, September 30, 2014, October 9, 2014, October 16, 2014, October 18, 2014, October 20, 2014, October 27, 2014, November 1, 2014,

---

PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.") (internal quotation marks and citation omitted).

[3] Citing *In re Valence Technology Securities Litigation*, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996); *Countrywide*, 273 F.R.D. at 603 fn.38; *In re Petrobras Securities Litigation*, 104 F.Supp.3d 618, 623 (S.D.N.Y. May 17, 2015); and *In re Hebron Technology Co., Ltd. Securities Litigation*, 2020 WL 5548856, at *7 (S.D.N.Y. Sep. 16, 2020).

November 9, 2014, November 13, 2014, and even one on the day of the purchase, November 14, 2014. *See* Class Action Complaint, *Kaltman v. Petroleo Brasileiro S.A.*, No. 14-cv-9662 (S.D.N.Y. Dec. 8, 2014), Dkt. No. 1 ¶¶ 64-88, *available at* 2014 WL 6907909. *Petrobras* is inapplicable here because Quinn did not purchase his shares after a dozen detailed and substantive corrective disclosures revealing the intricacies of the fraud.

Finally, the *Hebron* court rejected a lead plaintiff applicant who first purchased shares at nearly the same moment that the final corrective disclosure was hitting the market, and then increased his holdings after the final corrective disclosure. *See Hebron*, 2020 WL 5548856, at *8 ("the first time he purchased Hebron stock during the class period was June 3, 2020, at 10:26 a.m., just as the Grizzly Research presentation was revealing its thesis regarding Hebron" and "after that initial purchase, he continued to purchase Hebron shares at least throughout the morning, and possibly into the afternoon"). In light of this, the court held that "the cottage industry of issues surrounding [his] purchase of Hebron shares would saddle, or at least potentially saddle, his claims with unique defenses." *Id.* Here, Quinn purchased shares during the class period and held them through the corrective disclosure, so *Hebron* is not factually analogous or applicable.

* * *

Accordingly, Kessler has failed to present the proof necessary to rebut the presumption that Quinn is the most adequate plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Quinn respectfully requests that the Court appoint him as lead plaintiff, and approve his selection of Glancy Prongay & Murray LLP as lead counsel for the class.

DATED:  June 28, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Charles H. Linehan*

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movant Michael G. Quinn Jr. and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*