UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:21-cv-03120-JVS-KESx                              Date    June 29, 2021

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al

Present: The
Honorable          **James V. Selna, U.S. District Court Judge**

|              Lisa Bredahl              |              Not Present              |
| :---: | :---: |
|              Deputy Clerk              |              Court Reporter              |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| :---: | :---: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] <u>Order</u> <u>Regarding</u> <u>Motions</u> <u>for</u> <u>Appointment</u> <u>as</u>
<u>Lead</u> <u>Plaintiff</u>**

The following parties moved for appointment as lead plaintiff: Kenneth Kessler
(Dkt. Nos. 10-14); Michael G. Quinn (Dkt. Nos. 15-18); and Tim Ryan (Dkt. Nos. 20-
22).  Ryan subsequently filed a statement of non-opposition to the appointment of Kessler
or Quinn.[1]  Dkt. No. 23.  Kessler and Quinn each oppose the appointment of the other as
lead plaintiff.  Dkt. Nos. 24, 25.  Kessler and Quinn then both replied, respectively.  Dkt.
Nos. 26 and 27.

For the following reasons, the Court **GRANTS** Quinn's motion for appointment as
lead plaintiff.  The hearing noticed for July 12, 2021 is ordered VACATED.

I. **BACKGROUND**

The following facts are drawn from the complaint, Dkt. No. 1.  Champignon
Brands, Inc. ("Champignon" or the "Company") formulates nutraceutical and psychedelic
medications.  Id. ¶ 7.  Gareth Birdsall ("Birdsall) served as its Chief Executive Officer
from August 2019 until May 2020.  Id. ¶ 9.  Matthew Fish ("Fish) served as its President
since May 2020.  The complaint alleges that Champignon, Birdsall, and Fish made a
number of materially false and misleading statements related to the Company's pending
and future acquisitions.  Id. ¶¶ 16-22.

---

[1]Because Ryan filed a statement of non-opposition, the Court denies his motion as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:21-cv-03120-JVS-KESx                    Date   June 29, 2021

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al

The statements incorporated in materials related to these acquisitions were materially false and/or misleading because they failed to disclose the following:

(1)   Champignon had undisclosed material weaknesses and insufficient financial controls;

(2)   Champignon's previously issued financial statements were false and unreliable;

(3)   Champignon's earlier reported  financial statements would need to be restated; (4) Champignon's acquisitions involved an undisclosed related party;

(5)   As a result of the foregoing and subsequent reporting delays and issues, the British Columbia Securities Commission would suspend Champignon's from trading; and

(6)   As a result, Defendants' statements about Champignon's business, operations, and prospects, were materially false and misleading and/or lacked  a reasonable basis at all relevant times.

Id. ¶ 27.  On June 22, 2020, the Company issued another press release that the British Columbia Securities Commission  had selected the Company for a continuous disclosure review and had issued an order to cease trading pending the filing of business acquisition reports in related to these acquisitions.  Id. ¶ 28.  As a result, its stock price fell by 24%.  Id. ¶ 29.  Several months later, a second cease trade order was issued, and the Company's stock price fell an additional 5%.  Id. ¶¶ 31.  On February 17, 2021, the Company issued another press release that it would refile a consolidated financial statement, and as a result, its stock price fell an additional 10%.  Id. ¶¶ 34-36.  The February 17 press release constituted the final and full disclosure, and the prior press releases were partial disclosures.

## II. LEGAL STANDARD

The PSLRA sets forth the procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  15 U.S.C. § 78u-4(a)(3)(B).  A member of the class may move the Court to serve as the lead plaintiff of the purported class not later than 60 days after the date on which notice has been given to the prospective class of the complaint.  Id. § 78u-4(a)(3)(A)(i)(II).  Then, "[n]ot later than 90 days after the date on which a notice is published...the court shall consider any motion made by a purported

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:21-cv-03120-JVS-KESx                    Date   June 29, 2021

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al

class member in response to the notice . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." Id. § 78u-4(a)(3)(B)(I).

A rebuttable presumption exists that the most adequate plaintiff is the person or group of persons that has either filed the complaint or requested to serve as Lead Plaintiff; has "in the determination of the court, . . .the largest financial interest in the relief sought by the class"; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Id. § 78u-4(a)(3)B)(iii).

In the Ninth Circuit, In re Cavanaugh, 306 F.3d 726, 729–30 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process.

First, as discussed above, timely and complete notice of the action must be published. Id. at 729. Second, the district court considers the losses suffered by potential lead plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B) (iii)(I)). Thus, the Court must determine which plaintiff "has the most to gain from the lawsuit." Id. Finally, the court focuses on that plaintiff to ensure that the proposed lead plaintiff "satisfies the requirements of [Fed. R. Civ. P.] 23(a), in particular those of 'typicality' and 'adequacy.'" Id. A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." Id.

Other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. Id. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

**III. DISCUSSION**

**A.     Appointment of Lead Plaintiff**

*i.      PSLRA Prerequisites*

First, timely and complete notice of the action has been published. See Dkt. No. 1. Next, the Court considers whether the prospective lead plaintiffs timely filed their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:21-cv-03120-JVS-KESx                    Date    June 29, 2021

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al

request.  The action was filed on April 10, 2021.  Kessler and Quinn, filed on June 9, 2021.  See Dkt. Nos. 10, 15, and 20.  Therefore, both prospective lead plaintiff timely filed their motion.

    *ii.    Financial Loss*

Second, the Court considers which prospective lead plaintiff has the largest financial interest in the relief sought.

Kessler lost approximately $10,484 as a result of the alleged fraud.  Dkt. No. 12, Ex. 3.  He purchased approximately 10,000 shares on May 29, 2020, at $1.320 per share, and sold them on April 21, 2021 for either $.273 or $.271 a share.  Id.  Quinn lost approximately $33,612.71.  Dkt. No. 17, Ex. C.  He purchased 102,000 shares at prices ranging from $.700 to $.760 per share on February 11 and February 16, 2021.  Id.

Courts may consider the number of shares purchased during the class period, the number of net shares purchased during the class period, the total net funds expended, and the approximate loss.  Malriat v. QuantumScape Corp., No. 3:21-CV-00058-WHO, 2021 WL 1550454, at *3 (N.D. Cal. Apr. 20, 2021); In re Nutanix, Inc. Sec. Litig., No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (internal quotation marks omitted).

Here, Quinn sets forth his losses on the basis that the 90-Day Average Price was significantly lower than the price he purchased his shares.  He argues, in his opposition, that under the 'Last In First Out' methodology (and indeed under any methodology), he has suffered the greatest losses.  Dkt. No. 25.  at 4.  Despite that Quinn retained his shares, no other party questions the validity or size of his losses.  See Dkt. Nos. 23 and 24.  Kessler even concedes that Quinn "claims a larger loss." Dkt. No. 24 at 2.  Finally, to the extent that Quinn's current ownership of these shares presents an issue, it would go to whether he meets the adequacy and typicality requirements, as discussed below.  See In re Gemstar-TV Guide Intern., Inc. Secs. Litig., 209 F.R.D. 447, 453 (C.D. Cal. 2002) (rejecting argument that putative lead plaintiff suffered from disabling conflict of interest despite the fact that it retained most of its stock during the class period while other class members sold their shares).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:21-cv-03120-JVS-KESx                    Date    June 29, 2021

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al

As noted, the Reform Act "provides in categorical terms that the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." See Cavanaugh, 306 F.3d at 732. Therefore, based on his losses, Quinn is the presumptive lead plaintiff.

>       *iii.    Rule 23(a) Requirements*

Finally, the Court considers whether the prospective lead plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23(a), particularly those of adequacy and typicality.

"The typicality threshold is satisfied where the proposed lead plaintiff's claims arise from the same conduct from which the other class members' claims and injuries arise." Teran v. Subaye, Inc., No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted). "The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation, (2) there is no conflict between the proposed lead plaintiff and the members of the class, and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Foley v. Transocean Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

Quinn asserts that he satisfies the requirements of Rule 23, noting that like prospective class members, he purchased Champignon securities during the Class Period and suffered losses as a result, and otherwise, there is no evidence that his claims are antagonistic to the Class. Dkt. No. 16 at 5-8. The Court agrees that Quinn has made out a prima facie showing of typicality because he has alleged that he purchased Champignon shares during the class period and his position does not appear to materially differ from that of any other plaintiff.

However, Kessler argues that Quinn does not meet the adequacy and typicality requirements because he purchased all of his shares after numerous disclosures related to the fraud in this case, such as the releases stating that Champginon had been selected for a continuous disclosure review and issued cease trade orders. Dkt. No. 25 at 2-3; see also Dkt. No. 26 at 2. Moreover, Quinn notes that Kessler does not meet the Rule 23(a) requirements because he purchased Champignon stock after the stock value had already tumbled. Id. at 3. Meanwhile, Kessler argues that he fulfills all the pertinent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:21-cv-03120-JVS-KESx                    Date    June 29, 2021

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al

requirements of Rule 23, noting that he shares substantially similar questions of law and fact with the proposed class.  Dkt. No. 11 at 5-6. He also notes that the complaint alleges that it was the <u>final</u> corrective disclosures that revealed the fraud and that the Company's stock price declined significantly upon disclosure of the fraud, meaning that the final corrective disclosure had a clear effect on the Company's value.  Dkt. No. 27 at 1.

The weight of authority "favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement", and therefore supports Quinn's position.  <u>In re Connetics Corp. Sec. Litig.</u>, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (concluding the same at the more rigorous class certification stage); <u>see also Hufnagle v. Rino Int'l Corp.</u>, No. CV 10-8695-VBF-VBKx, 2011 WL 710704, at *8 (C.D. Cal. Feb. 14, 2011), <u>adopted</u>, No. CV 10-1754-VBFVBKX, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (concluding purchases after disclosures do not destroy typicality).  Kessler's citation to <u>Valence</u> is also inapposite.  <u>See In re Valence Tech. Sec. Litig.</u>, No. C 95-20459 JW, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996) (finding plaintiff who tripled their shares post-disclosure was atypical).  While Quinn had no position in the Company prior to his February purchases (and thus could be said to have "increased" his position in the Company post-disclosure), he also did not increase his position again thereafter.  Moreover, unlike the prospective lead plaintiff in <u>Valence</u>, he did not file suit immediately after the first adverse disclosure, and then, "after a second adverse disclosure, triple[] his [] holdings."  <u>Id.</u> at *6.

Moreover, the Court agrees with Quinn that, while partial disclosures may have affected the Company's value, the complaint alleges that the final corrective disclosure (which occurred at the end of the class period on February 17, 2021), revealed the related party dealings.  Compl. ¶ 34.  And, like prospective members of the class, Quinn suffered injuries as a result of the final February 17 disclosure.

Finally, the Court also acknowledges that many prospective members of the class will likely not have exactly the same trading patterns as Kessler or Quinn.  <u>In re Countrywide Fin. Corp. Sec. Litig.</u>, 273 F.R.D. 586, 602 (C.D. Cal. 2009) ("[O]ther class members also presumably purchased after [the] first corrective disclosure and during the disclosure period.").  The prospective class includes "all of those who purchased or otherwise acquired the publicly traded securities of Champignon during the Class Period . . . and were damaged upon the revelation of the alleged corrective disclosure."  <u>Id.</u> ¶ 37. The Class is not limited to those who purchased shares <u>only</u> before the partial disclosures

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:21-cv-03120-JVS-KESx                    Date   June 29, 2021

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al

(and indeed, the Class will likely include those who purchased after the first or even second partial disclosure).

Therefore, the Court finds that Quinn meets the adequacy and typicality requirements for appointment as lead plaintiff.

**B.      Appointment of Glancy Prongay & Murray LLP**

Once the Court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  "[T]he district court does not select class counsel at all."  Cavanaugh, 306 F.3d at 732. "The district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." Cohen v. U.S. Dist. Court, 586 F.3d 703, 711 (9th Cir. 2009). Rather, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." Id. at 712.

Here, Quinn has selected Glancy Prongay & Murray LLP as lead counsel.  The Firm has significant background in litigating similar cases over 25 years.  See Dkt. No. 17-4.  Therefore, the Court **GRANTS** Quinn's request to approve Glancy Prongay & Murray LLP as lead counsel.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Quinn's motion for appointment as lead plaintiff and **DENIES AS MOOT** Ryan's motion.

           **IT IS SO ORDERED**.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |