# Exhibit A

**51-312 Harmonized Continuous Disclosure Review Program [CSA Staff Notice]**

History of 51-312

**Purpose**
In 2004 staff (we) of the Canadian Securities Administrators (CSA) established a harmonized program for continuous disclosure reviews (the CDR program). The goal of the program is to improve the completeness, quality and timeliness of continuous disclosure (CD) by reporting issuers in Canada.

In July 2004, we issued CSA Staff Notice 51-312, which described the new program. This revised notice updates issuers, investors and other market participants on the CDR program.  It also gives an overview of how the CDR program works.

**Background**
Under Canadian securities law, reporting issuers must provide timely CD about their businesses and affairs. Market participants, including investors, rely on this information to make informed investment decisions.

Most of the continuous disclosure requirements are in the following rules or regulations (the CD rules) :

• National Instrument 51-102 *Continuous Disclosure Obligations* (NI 51-102)
• National Instrument 51-101 *Standards of Disclosure for Oil and Gas Activities*
• National Instrument 52-109 *Certification of Disclosure in Issuer's Annual and Interim Filing*
• National Instrument 52-110 *Audit Committees*
• National Instrument 58-101 *Disclosure of Corporate Governance Practices*
• National Instrument 43-101 *Standards of Disclosure for Mineral Projects*

The CD rules are intended to ensure that Canadian investors receive a uniformly high level of CD across the country. Through the CDR program, we are working to ensure that the scope and level of CD reviews carried out by staff across Canada are consistent.

Under the CDR program, the CSA regulators generally follow principles of mutual reliance. That means issuers deal only with staff of their principal regulator. Staff of the other regulators rely on the staff of the principal regulator on matters related to CD reviews.

**Objectives of the CDR program**
The CDR program helps ensure that issuers understand and comply with their obligations under the CD rules. Accordingly, the CDR program has two fundamental objectives: education and compliance.

*Education*
Issuers should understand the nature and extent of their disclosure obligations under the CD rules. We educate issuers through our interaction with them during our CD

Ex. A, at 1

reviews. We also provide guidance through our publications, seminars, webcasts and other forums that address specific aspects of the CD rules.

### *Compliance*
The CD review process helps us determine whether issuers are complying with their disclosure obligations under the CD rules. The CDR program is designed to identify material disclosure deficiencies and questionable transactions that affect the reliability and accuracy of an issuer's disclosure record.

### Role of the principal regulator
The principal regulator is responsible for reviewing an issuer's CD information and taking any necessary steps to ensure that the issuer complies with its CD obligations. An issuer's principal regulator is determined by the principles set out in Part 3 of National Policy 11 202 *Process for Prospectus Reviews in Multiple Jurisdictions*.

The principal regulator is usually the regulator in the jurisdiction where the reporting issuer's head office is located. As a result, an issuer will generally only have to deal with staff of a single regulator on CD-related matters. It also allows staff in each jurisdiction to develop a greater understanding of their respective issuers, which helps enhance the efficiency and quality of CD reviews.

### Selecting issuers for review
In general, we use a risk-based approach to select issuers for review and to determine the type of reviews to conduct. This approach takes into account the potential harm to Canadian capital markets if an issuer fails to provide complete, accurate and timely disclosure about its business and affairs.

We apply risk-based criteria to select issuers for review. We also consider specific issues and concerns affecting each industry. The selection criteria may change, for example, if certain disclosure-related issues gain greater public prominence, or the CSA develops a consensus or has concerns about particular accounting issues or disclosure practices. In addition to the risk-based criteria, individual jurisdictions may use criteria specific to their jurisdiction.

The CDR program has continued to evolve and we have now established industry discussion groups to facilitate the sharing of information. These discussion groups allows us to expand our knowledge and identify risks particular to specific industries. This approach also allows us to conduct CD reviews more efficiently and address the key risk areas, accounting issues and general disclosure issues affecting each industry.

### Types of review
In general, we will conduct either a "full" review or an "issue-oriented" review.

### *Full review*
A full review is broad in scope and covers many types of disclosure.  A full review covers the issuer's most recent annual and interim financial statements and MD&A filed before the start of the review. For all other disclosure, the review covers a 12- to 15-month period before the start of the review. In certain cases, we may extend the scope of the review to cover prior periods. We monitor a reporting issuer's CD until we complete the review.  Among other things, we usually review the issuer's:

Ex. A, at 2

- annual financial statements and management's discussion and analysis (MD&A)
- interim financial statements and MD&A
- technical disclosure, including technical reports for oil and gas, and mining issuers
- annual information forms (AIF)
- annual reports
- information circulars
- press releases, material change reports and business acquisition reports (BARs)
- website
- CFO and CEO certifications
- material contracts

We may also review media coverage and analysts' reports, if warranted.

### *Issue-oriented review*

An issue-oriented review is an in-depth review focusing on a specific accounting, legal or regulatory issue that we believe warrants regulatory scrutiny.   Issue-oriented reviews may be conducted locally by individual jurisdictions or co-ordinated across the CSA.  The nature of the issue or issues identified determines the period we will review.

### Review process

The primary focus of a CD review is to ensure an issuer's compliance with securities legislation. This includes compliance of its financial statements to generally accepted accounting principles.

We examine the consistency of disclosure in the issuer's CD record and the overall quality of the disclosure. In particular, we assess whether there is sufficient information for the reader to understand the issuer's financial performance, financial position, business risks and future prospects.

If we do not identify any issues, we close the CD review file. If we identify issues, we communicate them to the issuer, usually through a comment letter. We also ask the issuer to provide its audit committee and its auditors with a copy of all correspondence between the issuer and the principal regulator during the review.

In general, we expect issuers to provide a written response within two weeks of the date of the comment letter. The more complete and comprehensive the response is, the faster and more efficiently we can conclude the review. It will also reduce the need for additional follow up.

While the objective of a CD review is to improve the overall quality of an issuer's disclosure, the fact that an issuer has been the subject of a CD review does not guarantee the accuracy of its disclosure.

### Resolving issues

We work with issuers to ensure that the issues identified during the review are resolved in a timely and appropriate manner.

When material deficiencies or errors are identified, we expect issuers to correct them by restating and re-filing the document. In some circumstances, we may ask the

Ex. A, at 3

issuer to restate comparative information in financial statements in subsequent filings.

Under section 11.5 of NI 51-102, if an issuer has to restate or re-file a CD document because of a material deficiency or error, it must promptly issue and file a news release disclosing:

• the nature and substance of the change or proposed changes
• the general impact of the changes on previously filed information, and
• the steps the issuer will take before amending or filing restated CD document.

In certain situations, where we have identified a material deficiency or error during the CD review, we may place the issuer on our default lists or issue a cease-trade order.

If we identify a material breach of securities legislation and cannot resolve it with the issuer, we may consider recommending enforcement action against the issuer. If the issuer corrects the disclosure problem in the meantime, we may still pursue enforcement action. However, the correction will minimize the harm to investors and will generally be taken into account in considering whether any action is necessary.

July 24, 2009

**For more information**
For more information, contact one of the following people:

Allan Lim
Manager, Corporate Finance
British Columbia Securities Commission
604-899-6780
Toll-free 800-373-6393
alim@bcsc.bc.ca

Scott Pickard
Senior Securities Analyst, Corporate Finance
British Columbia Securities Commission
604-899-6720
Toll-free 800-373-6393
spickard@bcsc.bc.ca

Lisa Enright
Manager, Corporate Finance
Ontario Securities Commission
416-593-3686
lenrigh@osc.gov.on.ca

Ex. A, at 4

Ritu Kalra
Senior Accountant, Corporate Finance
Ontario Securities Commission
416-593-8063
rkalra@osc.gov.on.ca

Jonathan Taylor
Manager, CD Compliance & Market Analysis
Alberta Securities Commission
403-297-4770
jonathan.taylor@asc.ca

Lara Gaede
Associate Chief Accountant
Alberta Securities Commission
403-297-4223
lara.gaede@asc.ca

Nicole Parent
Analyste, Service de l'information continue
Autorité des marchés financiers
514-395-0337 ext. 4455
Toll-free  877-525-0337
nicole.parent@lautorite.qc.ca

Johanne Boulerice
Chef du service de l'information continue
Autorité des marchés financiers
514-395-0337 ext. 4331
Toll-free 877-525-0337
johanne.boulerice@lautorite.qc.ca

Ian McIntosh
Deputy Director, Corporate Finance
Saskatchewan Financial Services Commission
306-787-5867
ian.mcintosh@gov.sk.ca

Tony Herdzik
Senior Securities Analyst, Corporate Finance
Saskatchewan Financial Services Commission
306-787-5849
tony.herdzik@gov.sk.ca

Kevin Redden
Securities Analyst, Corporate Finance
Nova Scotia Securities Commission
902-424-5343
reddenkg@gov.ns.ca

Junjie Jiang
Securities Analyst, Corporate Finance

Ex. A, at 5

Nova Scotia Securities Commission
902-424-7059
jiangjj@gov.ns.ca

Bob Bouchard
Director, Corporate Finance
Manitoba Securities Commission
204-945-2555
bob.bouchard@gov.mb.ca

Kevin Hoyt
Director, Regulatory Affairs & Chief Financial Officer
New Brunswick Securities Commission
506-643-7691
kevin.hoyt@nbsc-cvmnb.ca

Ex. A, at 6