# Exhibit L

**FORM 51-102F4**

**BUSINESS ACQUISITION REPORT**

**Item 1**.        **Name and Address of Company**

**1.1**        **Name and Address of Company**

**CHAMPIGNON BRANDS INC.**
Suite 605, 130 Brew Street
Port Moody, British Columbia
V3H 0E3

**1.2**        **Executive Officer**

**Stephen Brohman**
Chief Financial Officer
604 525-9409

**Item 2**.        **Details of Acquisition**

**2.1**        **Nature of Business Acquired**

Champignon Brands Inc. (the "Company") completed its acquisition of all of the issued and outstanding shares of Artisan Growers Ltd. ("AGL") in accordance with the terms of a securities purchase agreement (the "Definitive Agreement") entered into with AGL and the selling securities holders of AGL (the "Vendors").

AGL is a Kelowna, British Columbia based craft mushroom sourcing and cultivation company focused on the research of exotic mushrooms and wellness benefits associated with the strains.  AGL leases a cultivation facility intended to produce an assortment of organic craft mushroom varietals.  AGL utilizes a variety of cultivation techniques and grow infrastructure to produce premium craft mushrooms.  AGL possesses spore cultures and self-contained growing units and humidity bags for the purposes of producing premium craft mushroom verities.

**2.2**        **Date of Acquisition**

March 17, 2020

Ex. L, at 1

-2-

**2.3**        **Consideration**

In consideration for the acquisition of all of the issued and outstanding shares of AGL, the Company issued 8,000,000 common shares to the Vendors at a deemed price $0.27 per share, being the discounted closing price of the common shares of the Company as of the date of announcing the entry into the Definitive Agreement on March 13, 2020.

**2.4**        **Effect on Financial Position**

The Company plans on integrating AGL craft mushroom production capacity into its existing medicinal mushroom manufacturing, formulation and distribution infrastructure.

The Company has apportioned and allocated a dedicated laboratory within the existing AGL facility for specific research and development activities and fungi profile analysis, with such objectives as: further investigating the integration of its mushroom extracts as an alternative medicine delivery system; formulating bioactive compounds extracted from plants and fungi; cultivating fungi varietals; and isolating and synthesizing of certain plant of fungi extracts.   Proceeding with the design and construction of the laboratory and obtaining the necessary Health Canada approvals will require significant financing and there can be no assurance that such approvals will be obtained.

The Company has absorbed AGL as a wholly owned subsidiary and plans to engage independent contractors to conduct research, cultivation and laboratory development.

Other than set forth above, the Company does not presently have any plans or proposals for material changes to the affairs (corporate structure, personnel or management) of the Company, or AGL, that will have an impact on the financial performance and financial position of the Company.

**2.5**        **Prior Valuations**

The Company obtained a valuation report and purchase price allocation from RwE Growth Partners, Inc., dated July 6, 2020, in respect of AGL. Given the consideration for the acquisition involved common shares of the Company, that an active and liquid market for those shares existed, and that the Company was at arms-length from AGL, the report concluded that the most appropriate means of determining the fair market value of AGL, at the time of its acquisition by the Company, was to rely upon the consideration offered by the Company.

-3-

**2.6**          **Parties to Transaction**

The acquisition was not with an informed person, associate, or affiliate of the Company.

**2.6**          **Date of Report**

July 21, 2020.

**Item 3**.          **Financial Statements**

The audited financial statements of AGL for the period from incorporation on September 9, 2019 to February 29, 2020 are included in this Business Acquisition Report.

AGL has not obtained the consent of the auditors to include the audit report thereon in this Business Acquisition Report.

**ARTISAN GROWERS LTD.**

**FINANCIAL STATEMENTS**

**FOR THE PERIOD FROM SEPTEMBER 5, 2019 (DATE OF INCORPORATION)
TO FEBRUARY 29, 2020**

**(In Canadian Dollars)**

1

UNIT# 168
4300 NORTH FRASER WAY
BURNABY, BC, V5J 5J8

T: **604.318.5465**
F: **778.375.4567**



**ADAM SUNG KIM LTD.**
**CHARTERED PROFESSIONAL ACCOUNTANT**

## INDEPENDENT AUDITOR'S REPORT

To:     the Shareholders of
        Artisan Growers Ltd.

**Opinion**

I have audited the financial statements of Artisan Growers Ltd. (the "Company"), which comprise the statement of financial position as at February 29, 2020, and the statement of loss and comprehensive loss, statement of cash flows and statement of changes in equity for period from the date of incorporation September 5, 2019 to February 29, 2020, and notes to the financial statements, including a summary of significant accounting policies.

In my opinion, the accompanying financial statements present fairly, in all material respects, the financial position of the Company as at February 29, 2020, and its financial performance and its cash flow for the period from the date of incorporation September 5, 2019 to February 29, 2020 in accordance with International Financial Reporting Standards (IFRSs).

**Basis for Opinion**

I conducted my audit in accordance with Canadian generally accepted auditing standards. My responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of my report. I am independent of the Company in accordance with the ethical requirements that are relevant to my audit of the financial statements in Canada, and I have fulfilled my other ethical responsibilities in accordance with these requirements. I believe that the audit evidence I have obtained is sufficient and appropriate to provide a basis for my opinion.

**Material Uncertainty Related to Going Concern**

I draw attention to Note 1 in the financial statements, which indicates that the Company incurred a net loss of $23,039 during the year ended February 29, 2020 and, as of that date, the Company had not yet achieved profitable operations, had accumulated losses of $23,039 since its inception, and expects to incur further losses in the development of its business. As stated in Note 1, these events or conditions, along with other matters as set forth in Note 1, indicate that a material uncertainty exists that may cast significant doubt on the Company's ability to continue as a going concern. My opinion is not modified in respect of this matter.

**Responsibilities of Management and Those Charged with Governance for the Financial Statements**

Management is responsible for the preparation and fair presentation of the financial statements in accordance with IFRSs, and for such internal control as management determines is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so.

Those charged with governance are responsible for overseeing the Company's financial reporting process.

2

Ex. L, at 5

**Auditor's Responsibilities for the Audit of the Financial Statements**

My objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes my opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with Canadian generally accepted auditing standards will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements. As part of an audit in accordance with Canadian generally accepted auditing standards, I exercise professional judgment and maintain professional skepticism throughout the audit. I also:

• Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for my opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.
• Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control.
• Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.
• Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Company's ability to continue as a going concern. If I conclude that a material uncertainty exists, I are required to draw attention in my auditor's report to the related disclosures in the financial statements or, if such disclosures are inadequate, to modify my opinion. My conclusions are based on the audit evidence obtained up to the date of my auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.
• Evaluate the overall presentation, structure and content of the financial statements, including the disclosures, and whether the financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

I communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that I identify during my audit.

I also provide those charged with governance with a statement that I have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on my independence, and where applicable, related safeguards.

The engagement partner on the audit resulting in this independent auditor's report is Adam Kim, CPA, CA.

*"Adam Sung Kim Ltd."*
Chartered Professional Accountant

Unit# 168 – 4300 North Fraser Way
Burnaby, BC, Canada V5J 5J8
July 3, 2020

Ex. L, at 6

**ARTISAN GROWERS LTD.**
**Statement of Financial Position**
**As at February 29, 2020**
*(Expressed in Canadian dollars)*

|  |  | February 29 2020 |
|---|---|---|
| **Assets** |  |  |
| **Current assets** |  |  |
| Deposit *(note 4)* | $ | 2,558 |
| Right-of-use asset *(note 4)* |  | 11,422 |
|  |  | **13,980** |
| **Non-current assets** |  |  |
| Intellectual property *(note 5)* |  | 1 |
| **Total assets** | $ | **13,981** |
|  |  |  |
| **Liabilities** |  |  |
| **Current liabilities** |  |  |
| Lease liability *(note 4)* | $ | 12,351 |
| Accrued liabilities |  | 24,659 |
| **Total liabilities** |  | **37,010** |
|  |  |  |
| **Shareholders' deficiency** |  |  |
| Share capital *(note 6)* |  | 10 |
| Accumulated deficit |  | (23,039) |
| Total shareholders' deficiency |  | (23,029) |
| Total liabilities and shareholders' deficiency | $ | **13,981** |

Nature and continuance of operations *(note 1)*
Subsequent event *(note 11)*

Approved and authorized for issue on behalf of the Board of Directors on July 3, 2020

*"Gareth Birdsall"*
Director

The accompanying notes are an integral part of these financial statements.

4

Ex. L, at 7

**ARTISAN GROWERS LTD.**
**Statement of Loss and Comprehensive Loss**
**For the period from September 5, 2019 (date of incorporation) to February 29, 2020**
*(Expressed in Canadian dollars)*

|  |  | For the period from September 5, 2019 (date of incorporation) to February 29, 2020 |
|---|---|---:|
| **Expenses** |  |  |
| Finance charges *(Note 4)* | $ | 2,848 |
| Depreciation *(Note 4)* |  | 15,990 |
| Marketing |  | 4,201 |
| **Net loss and comprehensive loss for the period** | $ | (23,039) |
|  |  |  |
| Loss per share, basic and diluted | $ | (2.30) |
| Weighted average shares outstanding, basic and diluted |  | 10,000 |

*The accompanying notes are an integral part of these financial statements.*

5

Ex. L, at 8

**ARTISAN GROWERS LTD.**
**Statement of Changes in Shareholders' Deficiency**
**For the period from September 5, 2019 (date of incorporation) toe February 29, 2020**
*(Expressed in Canadian dollars)*

| | Number of Common Shares | Share Capital | Deficit | Total |
|---|---|---|---|---|
| Balance, September 5, 2019 (date of incorporation) | - | - | - | - |
| Incorporation shares | 10,000 | 10 | - | 10 |
| Net loss for the period | - | - | (23,039) | (23,039) |
| **Balance, February 29, 2020** | 10,000 | 10 | (23,039) | (23,029) |

*The accompanying notes are an integral part of these financial statements.*

6

Ex. L, at 9

**ARTISAN GROWERS LTD.**
**Statement of Cash Flows**
**For the period from September 5, 2019 (date of incorporation) to February 29, 2020**
*(Expressed in Canadian dollars)*

|  |  | For the period from September 5, 2019 (date of incorporation) to February 29, 2020 |
|---|---|---:|
| **Cash flow used in operating activities** | | |
| | | |
| Net loss for the period | $ | (23,039) |
| Add items not involving cash | | |
| Depreciation | | 15,990 |
| Finance charges | | 2,848 |
| Change in on-cash working capital: | | |
| Trade and other payables | | 4,201 |
| Cash used in operating activities | | - |
| | | |
| **Change in cash** | | - |
| **Cash, beginning of period** | | - |
| **Cash, ending of period** | $ | - |
| | | |
| **Supplemental cash flow information** | | |
| Taxes paid | $ | - |
| Interest paid | $ | - |
| Right-of-use asset | $ | 27,412 |
| Lease liability | $ | (27,412) |

*The accompanying notes are an integral part of these financial statements.*

7

Ex. L, at 10

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

## 1. Nature and Continuance of Operations

Artisan Growers Ltd. (the "Company") was incorporated under the *Canada Business Corporations Act* on September 5, 2019. The Company's registered office is 704-595 Howe Street, Vancouver, British Columbia, V6C 2T5. The Company's current principal business activity is to supply and cultivate mushrooms.

At February 29, 2020, the Company had not yet achieved profitable operations, has accumulated losses of $23,039 since its inception and expects to incur further losses in the development of its business, all of which casts significant doubt about the Company's ability to continue as a going concern. The Company's ability to continue as a going concern is dependent upon its ability to generate future profitable operations and/or to obtain the necessary financing to conduct its planned business, meet its on-going levels of corporate overhead and discharge its liabilities as they come due. These financial statements have been prepared on a going concern basis which assumes that the Company will be able to realize its assets and discharge liabilities in the normal course of business. There is no assurance that the Company will be able to obtain adequate financing in the future or that such financing will be on terms advantageous to the Company. Accordingly, it does not give effect to adjustments, if any that would be necessary should the Company be unable to continue as a going concern and, therefore, be required to realize its assets and liquidate its liabilities in other than the normal course of business and at amounts which may differ from those shown in these financial statements.

## 2. Basis of Presentation

### (a) Statement of compliance

This annual financial statement is prepared in accordance with International Financial Reporting Standards ("**IFRS**") as issued by the International Accounting Standards Board ("**IASB**") and interpretations of the International Financial Reporting Interpretations Committee ("**IFRIC**"). The accounting policies set out below have been applied consistently to all periods presented.

### (b) Basis of presentation

This financial statement have been prepared on the historical cost basis, except for certain financial instruments that are measured at fair value, as detailed in the Company's accounting policies.

### (c) Functional and presentation currency

The Company's functional currency, as determined by management, is the Canadian dollar. These financial statements are presented in Canadian dollars.

### (d) Use of estimates and judgements

The preparation of this financial statement requires management to make judgments, estimates and assumptions that affect the application of policies and reported amounts of assets and liabilities, and revenue and expenses. The estimates and associated assumptions are based on historical experience and various other factors that are believed to be reasonable under the circumstances, the results of which form the basis of making the judgments about carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates.

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

3. **Significant Accounting Policies**

A summary of the significant accounting policies, which have been applied consistently to all periods presented in the accompanying financial statements are set out below:

Research and development

Research costs are expensed in the year incurred. Accordingly, internal research and development costs are expensed as incurred. Third-party research and developments costs are expensed when the contracted work has been performed or as milestone results have been achieved. Company-sponsored research and development costs related to both present and future products are expensed in the period incurred.

Development activities involve a plan or design for the production of new or substantially improved products and processes. Development expenditures are capitalized only if development costs can be measured reliably, the product or process is technically and commercially feasible, future economic benefits are probable, and the Company intends to and has sufficient resources to complete development and to use or sell the asset. Other development expenditures will be expensed as incurred. No development costs have been capitalized to date.

Impairment of non-financial assets

Intangible assets with a finite useful life are tested for impairment when events or changes in circumstances indicate the carrying amount may not be recoverable. Events relating to recoverability may include significant unfavorable changes in business conditions, recurring losses, or a forecasted inability to achieve break-even operating results over an extended period. An impairment loss is recognized for the amount by which the asset's carrying amount exceeds its recoverable amount. The Company evaluates impairment losses for potential reversals when events or circumstances warrant such consideration.

Financial instruments

Effective September 5, 2019 (date of incorporation), the Company has adopted IFRS 9 Financial Instruments, replacing existing standards and interpretations, including IAS 39 Financial Instruments: Recognition and Measurement.

Intangible assets
Intangible assets consist of intellectual property and is measured on initial recognition at cost. An intangible asset is derecognized on disposal or when no future economic benefits are expected from use or disposal. Any gain or loss arising from the derecognition of an intangible asset is measured as the difference between the net disposal proceeds and the carrying amount of the asset and is recognized in profit or loss.

Estimated useful lives and depreciation of intangible assets
Depreciation of finite-life intangible assets is dependent upon estimates of useful lives, which are determined through the exercise of judgment. The assessment of any impairment of these assets is dependent upon estimates of recoverable amounts that take into account factors such as economic and market conditions and the useful lives of assets.

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

**4.   Significant Accounting Policies (Continued)**

Financial instruments

*Classification*

On initial recognition, the Company determines the classification of financial instruments based on the following categories:

1. Measured at amortized cost
2. Measured at fair value through profit or loss (FVTPL)
3. Measured at fair value through other comprehensive income (FVOCI)

The classification under IFRS9 is based on the business model under which a financial asset is managed and on its contractual cash flow characteristics. Assets held for the collection of contractual cashflows and for which those cashflows correspond solely to principal repayments and interest payments are measured at amortized cost. Contracts with embedded derivatives where the host is a financial instrument in the scope of the standard will be assessed as a whole for classification.

A financial asset is measured at amortized cost if both of the following criteria are met:

1. Held within a business model whose objective is to hold assets to collect contractual cash flows; and
2. Contractual terms give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding.

*Measurement*

Initial recognition – A financial asset or financial liability is initially recorded at its fair value, which is typically the transaction price, plus or minus transaction costs that are directly attributable to the acquisition or issue of the financial asset or financial liability. In the event that fair value is determined to be different from the transaction price, and that fair value is evidenced by a quoted price in an active market for an identical asset or liability or is based on a valuation technique that uses only data from observable markets, then the difference between fair value and transaction price is recognized as a gain or loss at the time of initial recognition.

Amortized cost – The amount at which a financial asset or financial liability is measured at initial recognition minus the principal repayments, plus or minus the cumulative amortization using the effective interest method of any difference between that initial amount and the maturity amount and, for financial assets, adjusted for any expected credit losses. The effective interest method is a method of calculating the amortized cost of a financial asset or liability and of allocating interest and any transaction costs over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash receipts or payments through the expected life of the financial asset or liability to the net carrying amount on initial recognition.

Fair value through profit or loss – Changes in fair value after initial recognition, whether realized or not, are recognized through the statements of net loss and comprehensive loss. Income arising in the form of interest, dividends, or similar, is recognized through the statements of net loss and comprehensive loss when the right to receive payment is established, the economic benefits will flow to the Company, and the amount can be measured reliably.

Fair value through other comprehensive income – Changes in fair value after initial recognition, whether realized or not, are recognized through other comprehensive income. Income arising in the form of interest, dividends, or similar, is recognized through the statements of net loss and comprehensive loss when the right to receive payment is established, the economic benefits will flow to the Company, and the amount can be measured reliably.

Ex. L, at 13

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

3.  **Significant Accounting Policies (Continued)**

Financial instruments (Continued)

*Impairment*

In relation to the impairment of financial assets, IFRS 9 requires an expected credit loss model. The expected credit loss model requires an entity to account for expected credit losses and changes in those expected credit losses at each reporting date to reflect changes in credit risk since initial recognition.

*Derecognition*

Financial assets – The Company derecognizes a financial asset when the contractual rights to the cash flows from the financial asset have expired or when contractual rights to the cash flows have been transferred. Gains and losses from the derecognition are recognized in the statements of net loss and comprehensive loss.

Financial liabilities – The Corporation derecognizes a financial liability when the obligation specified in the contract is discharged, canceled or expired. The difference between the carrying amount of the derecognized financial liability and the consideration paid or payable, including non-cash assets transferred or liabilities assumed, is recognized in the statements of net loss and comprehensive loss.

Basic loss per common share

Basic loss per share is calculated by dividing the net loss for the period by the weighted average number of common shares outstanding during the period.

Income taxes

Income taxes are comprised of current and deferred tax. Income tax is recognized in the statements of loss and comprehensive loss except to the extent that it relates to items recognized directly in shareholders' equity (deficiency), in which case the income tax is also recognized directly in shareholders' equity (deficiency).

Current tax is the expected tax payable on the taxable income for the period, using tax rates enacted at the end of the reporting period, and any adjustments to tax payable in respect of previous years.

In general, deferred tax is recognized in respect of temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the financial statements. Deferred income tax is determined on a non-discounted basis using the tax rates and laws that have been enacted or substantively enacted at the statements of financial position dates and are expected to apply when the deferred tax asset or liability is settled. Deferred tax assets are recognized to the extent that it is probable the assets can be recovered.

When applicable, deferred income tax assets and liabilities are presented as non-current.

**Adoption of new accounting standards – IFRS 16 - Leases**

In January 2016, the IASB issued IFRS 16, Leases ("IFRS 16"), which replaces IAS 17, Leases ("IAS 17") and related interpretations. The standard introduces a single lessee accounting model and requires lessees to recognize assets and liabilities for all leases with a term exceeding 12 months, unless the underlying asset is insignificant. A lessee is required to recognize a right-of-use asset representing its right to use the underlying asset and a lease liability representing its obligation to make lease payments. Lessors continue to classify leases as operating or finance, with lessor accounting remaining substantially unchanged from the preceding guidance under IAS 17. The Company adopted the standard on September 5, 2019 (inception).

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

### Adoption of new accounting standards – IFRS 16 – Leases (Continued)

The Company assesses whether a contract is or contains a lease at inception of the contract. A lease is recognized as a right-of-use asset and corresponding liability at the commencement date. Each lease payment included in the lease liability is apportioned between the repayment of the liability and a finance charge. The finance charge is recognized in "finance charge" in the statement of loss and comprehensive loss over the lease period so as to produce a constant periodic rate of interest on the remaining balance of the liability. Lease liabilities represent the net present value of fixed lease payments (including in-substance fixed payments).

The Company's lease liability is recognized net of lease incentives receivable. The lease payments are discounted using the interest rate implicit in the lease or, if that rate cannot be determined, the lessee's incremental borrowing rate. The period over which the lease payments are discounted is the expected lease term, including renewal and termination options that the Company is reasonably certain to exercise.

Right-of-use assets are measured at cost, which is calculated as the amount of the initial measurement of lease liability plus any lease payments made at or before the commencement date. The right-of-use assets are depreciated on a straight-line basis over the shorter of the lease term and the useful life of the underlying asset. The depreciation is recognized from the commencement date of the lease.

4.  **Right-of-use Asset and Lease Liability**

During the period ended February 29, 2020, the Company entered into a Lease agreement ("Lease") for a mushroom cultivation facility in British Columbia, Canada that matures on August 1, 2020.

The Company recognized a right-of-use asset and lease liability of $27,412. Pursuant to the terms of the Lease, the Company's shareholder paid a security deposit of $2,558.

At the commencement date of the lease, the lease liability was measured as the present value of the future lease payments that were not paid at that date. These lease payments are discounted using a discount rate of 12%, which is an estimation of the Company's incremental borrowing rate.

The following is a continuity schedule of lease liabilities for the period from September 5, 2019 (date of incorporation) to February 29, 2020:

|  | $ |
|---|---|
| Incorporation, September 5, 2019 | - |
| Lease additions | 27,412 |
| Lease payments | (17,909) |
| Interest expense on lease liabilities | 2,848 |
| Balance,  February 29, 2020 | 12,351 |

As at February 29, 2020, the total undiscounted amount of the estimated cash flows to settle the Company's lease liability over the remaining lease term is $12,792.

The following is a continuity schedule of right-of-use asset for the period from September 5, 2019 (date of incorporation) to February 29, 2020:

|  | $ |
|---|---|
| Incorporation, September 5, 2019 | - |
| Lease additions | 27,412 |
| Depreciation | (15,990) |
| Balance, February 29, 2020 | 11,422 |

Ex. L, at 15

**ARTISAN GROWERS LTD.**
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

5.  **Intellectual Property**

Intellectual property consists of know-how. The intellectual property is not yet ready for its intended use and as such, no amortization has been recorded as at February 29, 2020.

6.  **Share Capital**

Authorized share capital

The Company is authorized to issue an unlimited number of common and preferred shares with no par value.

Outstanding share capital

*Period from September 5, 2019 (date of incorporation) to February 29, 2020:*

On September 5, 2019, the Company issued 10,000 common shares with a fair value of $10.

During the period from September 5, 2019 (date of incorporation) to February 29, 2020, no preferred shares were issued.

Stock options and warrants

During the period from September 5, 2019 (date of incorporation) to February 29, 2020, no stock options or warrants were issued.

7.  **Related Party Transactions**

Key management includes Directors and Officers of the Company.

During the period from September 5, 2019 (incorporation) to February 29, 2020, there were no transactions involving the compensation of related parties.

As at February 29, 2020, the Company did not owe related parties.

8.  **Capital Management**

The Company's objective in managing capital is to ensure a sufficient liquidity position to safeguard the Company's ability to continue as a going concern in order to provide returns for shareholders and benefits for other stakeholders. The Company defines capital as net equity and debt, comprised of issued common shares and accumulated deficit. The Company seeks to ensure that it has sufficient cash resources to maintain its ongoing operations and finance its research and development activities, corporate and administration expenses, working capital and overall capital expenditures. Since inception, the Company has primarily financed its liquidity needs through related parties.

The Company is not subject to externally imposed capital requirements.

Ex. L, at 16

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

9. **Financial Instruments and Risk Management**

*Financial Instruments*

Accounts payable and accrued liabilities have been classified as financial liabilities at amortised cost.

The carrying values of accounts payable and accrued liabilities approximate their fair values due to their short periods to maturity.

*Fair Value Hierarchy*

Financial instruments recorded at fair value are classified using a fair value hierarchy that reflects the significance of inputs used in making the measurements. The hierarchy is summarized as follows:
Level 1 – quoted prices (unadjusted) in active markets for identical assets and liabilities
Level 2 – inputs that are observable for the asset or liability, either directly (prices) or indirectly (derived from prices) from observable market data
Level 3 – inputs for assets and liabilities not based upon observable market data

*Financial Risk Factors*

The Company's risk exposure and the impact on the Company's financial instruments are summarized below:

(a) Liquidity risk

The Company's ability to continue as a going concern is dependent on management's ability to raise required funding through future equity issuances and through short-term borrowing. The Company manages its liquidity risk by forecasting cash flows from operations and anticipating any investing and financing activities. Management and the Board of Directors are actively involved in the review, planning and approval of significant expenditures and commitments.

(b) Interest rate risk

Interest rate risk is the risk the fair value or future cash flows of a financial instrument will fluctuate because of changes in market interest rates. Financial assets and liabilities with variable interest rates expose the Company to cash flow interest rate risk. The Company does not hold any financial liabilities with variable interest rates. The Company does not believe it is currently subject to any significant interest rate risk.

10. **Income Taxes**

A reconciliation of income taxes at the statutory rate with the reported taxes is as follows:

|  |  | 2020 |
|---|---|---|
| Loss before income taxes | $ | (23,039) |
| Combined federal and provincial tax rate | | 27.0% |
| | | |
| Expected income tax recovery | | (6,221) |
| Permanent differences | | 251 |
| Change in unrecognized deductible temporary differences | | 5,970 |
| | | |
| Income tax recovery | $ | - |

14

ARTISAN GROWERS LTD.
Notes to the Financial Statements
*For the period from September 5, 2019 (date of incorporation) to February 29, 2020*

10.   **Income Taxes (Continued)**

Details of unrecognized deferred tax assets are as follows:

|  | 2020 |
|---|---|
| Non-capital losses carried forward | 5,970 |
| Unrecognized deferred tax assets | (5,970) |
| Total | - |

As at February 29, 2020, the Company had approximately $22,000 of non-capital losses available, which will expire in 2040 and may be applied against future taxable income.

Tax attributes are subject to revision, and potential adjustment, by tax authorities.

11.   **Subsequent Event**

a) The shareholders of the Company entered into a Share Exchange Agreement (the "Share Exchange Agreement") with Champignon Brands Inc. ("Champignon"), whereby Champignon acquired all of the 10,000 issued and outstanding shares of the Company in exchange for 8,000,000 common shares of Champignon.

b) Since March 2020, several measures have been implemented in Canada and the rest of the world in response to the increased impact from novel coronavirus (COVID-19). The Company continues to operate its business at this time. While the impact of COVID-19 is expected to be temporary, the current circumstances are dynamic and the impacts of COVID-19 on business operations cannot be reasonably estimated at this time. The Company anticipates this could have an adverse impact on its business, results of operations, financial position and cash flows in during the year ended February 28, 2021 and beyond.

Ex. L, at 18