# Exhibit Y





Home  >  Issued Standards  >  IFRS Standards Navigator  >  IAS 28 Investments in Associates and Joint Ventures

# IAS 28 Investments in Associates and Joint Ventures

Follow

Standard 2021 Issued

## SHOW SECTIONS

Actions:

| Standard | ... |
|---|---|

Search within Standards Collection (Optional)

⦿ **Phrase search**    ◯ **Word search**

**Show:**

⬤ Annotation 🔒

⬤ Taxonomy 🔒

**Expand All +**

Ex. Y, at 1

## Contents                                                                                    +

International Accounting Standard 28 *Investments in Associates and Joint Ventures* (IAS 28) is set out in paragraphs 1–47. All the paragraphs have equal authority but retain the IASC format of the Standard when it was adopted by the IASB. IAS 28 should be read in the context of its objective and the Basis for Conclusions, the *Preface to IFRS Standards* and the *Conceptual Framework for Financial Reporting*. IAS 8 *Accounting Policies, Changes in Accounting Estimates and Errors* provides a basis for selecting and applying accounting policies in the absence of explicit guidance.

## Objective                                                                                   —

1   **The objective of this Standard is to prescribe the accounting for investments in associates and to set out the requirements for the application of the equity method when accounting for investments in associates and joint ventures.**

## Scope                                                                                       —

2   **This Standard shall be applied by all entities that are investors with joint control of, or significant influence over, an investee.**

## Definitions                                                                                 —

3   **The following terms are used in this Standard with the meanings specified:**

    **An *associate* is an entity over which the investor has significant influence.**

    **Consolidated financial statements are the financial statements of a group in which assets, liabilities, equity, income, expenses and cash flows of the parent and its subsidiaries are presented as those of a single economic entity.**

Ex. Y, at 2

The *equity method* is a method of accounting whereby the investment is initially recognised at cost and adjusted thereafter for the post-acquisition change in the investor's share of the investee's net assets. The investor's profit or loss includes its share of the investee's profit or loss and the investor's other comprehensive income includes its share of the investee's other comprehensive income.

A *joint arrangement* is an arrangement of which two or more parties have joint control.

*Joint control* is the contractually agreed sharing of control of an arrangement, which exists only when decisions about the relevant activities require the unanimous consent of the parties sharing control.

A *joint venture* is a joint arrangement whereby the parties that have joint control of the arrangement have rights to the net assets of the arrangement.

A *joint venturer* is a party to a joint venture that has joint control of that joint venture.

*Significant influence* is the power to participate in the financial and operating policy decisions of the investee but is not control or joint control of those policies.

4       The following terms are defined in paragraph 4 of IAS 27 *Separate Financial Statements* and in Appendix A of IFRS 10 *Consolidated Financial Statements* and are used in this Standard with the meanings specified in the IFRSs in which they are defined:

- control of an investee

- group

- parent

- separate financial statements

- subsidiary.

## Significant influence                                                    –

If an entity holds, directly or indirectly (eg through subsidiaries), 20 per cent or more of the voting power of the investee, it is presumed that the entity has significant influence, unless it can be clearly demonstrated that this is not the case. Conversely, if the entity holds, directly or indirectly (eg through subsidiaries), less than 20 per cent of the voting power of the investee, it is presumed that the entity does not have significant influence, unless such influence can be clearly demonstrated. A substantial or majority ownership by another investor does not necessarily preclude an entity from having significant influence.

6    The existence of significant influence by an entity is usually evidenced in one or more of the following ways:

    (a)    representation on the board of directors or equivalent governing body of the investee;

    (b)    participation in policy-making processes, including participation in decisions about dividends or other distributions;

    (c)    material transactions between the entity and its investee;

    (d)    interchange of managerial personnel; or

    (e)    provision of essential technical information.

7    An entity may own share warrants, share call options, debt or equity instruments that are convertible into ordinary shares, or other similar instruments that have the potential, if exercised or converted, to give the entity additional voting power or to reduce another party's voting power over the financial and operating policies of another entity (ie potential voting rights). The existence and effect of potential voting rights that are currently exercisable or convertible, including potential voting rights held by other entities, are considered when assessing whether an entity has significant influence. Potential voting rights are not currently exercisable or convertible when, for example, they cannot be exercised or converted until a future date or until the occurrence of a future event.

8    In assessing whether potential voting rights contribute to significant influence, the entity examines all facts and circumstances (including the terms of exercise of the potential voting rights and any other contractual arrangements whether considered individually or in combination) that affect potential rights, except the intentions of management and the financial ability to exercise or convert those potential rights.

Ex. Y, at 4

An entity loses significant influence over an investee when it loses the power to participate in the financial and operating policy decisions of that investee. The loss of significant influence can occur with or without a change in absolute or relative ownership levels. It could occur, for example, when an associate becomes subject to the control of a government, court, administrator or regulator. It could also occur as a result of a contractual arrangement.

## Equity method —

Under the equity method, on initial recognition the investment in an associate or a joint venture is recognised at cost, and the carrying amount is increased or decreased to recognise the investor's share of the profit or loss of the investee after the date of acquisition. The investor's share of the investee's profit or loss is recognised in the investor's profit or loss. Distributions received from an investee reduce the carrying amount of the investment. Adjustments to the carrying amount may also be necessary for changes in the investor's proportionate interest in the investee arising from changes in the investee's other comprehensive income. Such changes include those arising from the revaluation of property, plant and equipment and from foreign exchange translation differences. The investor's share of those changes is recognised in the investor's other comprehensive income (see IAS 1 *Presentation of Financial Statements*).

The recognition of income on the basis of distributions received may not be an adequate measure of the income earned by an investor on an investment in an associate or a joint venture because the distributions received may bear little relation to the performance of the associate or joint venture. Because the investor has joint control of, or significant influence over, the investee, the investor has an interest in the associate's or joint venture's performance and, as a result, the return on its investment. The investor accounts for this interest by extending the scope of its financial statements to include its share of the profit or loss of such an investee. As a result, application of the equity method provides more informative reporting of the investor's net assets and profit or loss.

When potential voting rights or other derivatives containing potential voting rights exist, an entity's interest in an associate or a joint venture is determined solely on the basis of existing ownership interests and does not reflect the possible exercise or conversion of potential voting rights and other derivative instruments, unless paragraph 13 applies.

13   In some circumstances, an entity has, in substance, an existing ownership as a result of a transaction that currently gives it access to the returns associated with an ownership interest. In such circumstances, the proportion allocated to the entity is determined by taking into account the eventual exercise of those potential voting rights and other derivative instruments that currently give the entity access to the returns.

14   IFRS 9 *Financial Instruments* does not apply to interests in associates and joint ventures that are accounted for using the equity method. When instruments containing potential voting rights in substance currently give access to the returns associated with an ownership interest in an associate or a joint venture, the instruments are not subject to IFRS 9. In all other cases, instruments containing potential voting rights in an associate or a joint venture are accounted for in accordance with IFRS 9.

14A  An entity also applies IFRS 9 to other financial instruments in an associate or joint venture to which the equity method is not applied. These include long-term interests that, in substance, form part of the entity's net investment in an associate or joint venture (see paragraph 38). An entity applies IFRS 9 to such long-term interests before it applies paragraph 38 and paragraphs 40–43 of this Standard. In applying IFRS 9, the entity does not take account of any adjustments to the carrying amount of long-term interests that arise from applying this Standard.

15   Unless an investment, or a portion of an investment, in an associate or a joint venture is classified as held for sale in accordance with IFRS 5 *Non-current Assets Held for Sale and Discontinued Operations*, the investment, or any retained interest in the investment not classified as held for sale, shall be classified as a non-current asset.

## Application of the equity method                                                    –

16   An entity with joint control of, or significant influence over, an investee shall account for its investment in an associate or a joint venture using the equity method except when that investment qualifies for exemption in accordance with paragraphs 17–19.

## Exemptions from applying the equity method    —

17    An entity need not apply the equity method to its investment in an associate or a joint venture if the entity is a parent that is exempt from preparing consolidated financial statements by the scope exception in paragraph 4(a) of IFRS 10 or if all the following apply:

   (a)    The entity is a wholly-owned subsidiary, or is a partially-owned subsidiary of another entity and its other owners, including those not otherwise entitled to vote, have been informed about, and do not object to, the entity not applying the equity method.

   (b)    The entity's debt or equity instruments are not traded in a public market (a domestic or foreign stock exchange or an over-the-counter market, including local and regional markets).

   (c)    The entity did not file, nor is it in the process of filing, its financial statements with a securities commission or other regulatory organisation, for the purpose of issuing any class of instruments in a public market.

   (d)    The ultimate or any intermediate parent of the entity produces financial statements available for public use that comply with IFRSs, in which subsidiaries are consolidated or are measured at fair value through profit or loss in accordance with IFRS 10.

18    When an investment in an associate or a joint venture is held by, or is held indirectly through, an entity that is a venture capital organisation, or a mutual fund, unit trust and similar entities including investment-linked insurance funds, the entity may elect to measure that investment at fair value through profit or loss in accordance with IFRS 9. An example of an investment-linked insurance fund is a fund held by an entity as the underlying items for a group of insurance contracts with direct participation features. For the purposes of this election, insurance contracts include investment contracts with discretionary participation features. An entity shall make this election separately for each associate or joint venture, at initial recognition of the associate or joint venture. (See IFRS 17  *Insurance Contracts* for terms used in this paragraph that are defined in that Standard.)

19    When an entity has an investment in an associate, a portion of which is held indirectly through a venture capital organisation, or a mutual fund, unit trust and similar entities including investment-linked insurance funds, the entity may elect to

Ex. Y, at 7

measure that portion of the investment in the associate at fair value through profit or loss in accordance with IFRS 9 regardless of whether the venture capital organisation, or the mutual fund, unit trust and similar entities including investment-linked insurance funds, has significant influence over that portion of the investment. If the entity makes that election, the entity shall apply the equity method to any remaining portion of its investment in an associate that is not held through a venture capital organisation, or a mutual fund, unit trust and similar entities including investment-linked insurance funds.

## Classification as held for sale     −

20    An entity shall apply IFRS 5 to an investment, or a portion of an investment, in an associate or a joint venture that meets the criteria to be classified as held for sale. Any retained portion of an investment in an associate or a joint venture that has not been classified as held for sale shall be accounted for using the equity method until disposal of the portion that is classified as held for sale takes place. After the disposal takes place, an entity shall account for any retained interest in the associate or joint venture in accordance with IFRS 9 unless the retained interest continues to be an associate or a joint venture, in which case the entity uses the equity method.

21    When an investment, or a portion of an investment, in an associate or a joint venture previously classified as held for sale no longer meets the criteria to be so classified, it shall be accounted for using the equity method retrospectively as from the date of its classification as held for sale. Financial statements for the periods since classification as held for sale shall be amended accordingly.

## Discontinuing the use of the equity method     −

22    **An entity shall discontinue the use of the equity method from the date when its investment ceases to be an associate or a joint venture as follows:**

    (a)    **If the investment becomes a subsidiary, the entity shall account for its investment in accordance with IFRS 3 *Business Combinations* and IFRS 10.**

    (b)    **If the retained interest in the former associate or joint venture is a financial asset, the entity shall measure the retained interest at fair**

Ex. Y, at 8

value. The fair value of the retained interest shall be regarded as its fair value on initial recognition as a financial asset in accordance with **IFRS 9**. The entity shall recognise in profit or loss any difference between:

(i)      the fair value of any retained interest and any proceeds from disposing of a part interest in the associate or joint venture; and

(ii)     the carrying amount of the investment at the date the equity method was discontinued.

(c)      When an entity discontinues the use of the equity method, the entity shall account for all amounts previously recognised in other comprehensive income in relation to that investment on the same basis as would have been required if the investee had directly disposed of the related assets or liabilities.

Therefore, if a gain or loss previously recognised in other comprehensive income by the investee would be reclassified to profit or loss on the disposal of the related assets or liabilities, the entity reclassifies the gain or loss from equity to profit or loss (as a reclassification adjustment) when the equity method is discontinued. For example, if an associate or a joint venture has cumulative exchange differences relating to a foreign operation and the entity discontinues the use of the equity method, the entity shall reclassify to profit or loss the gain or loss that had previously been recognised in other comprehensive income in relation to the foreign operation.

**If an investment in an associate becomes an investment in a joint venture or an investment in a joint venture becomes an investment in an associate, the entity continues to apply the equity method and does not remeasure the retained interest.**

## Changes in ownership interest                                                        —

If an entity's ownership interest in an associate or a joint venture is reduced, but the investment continues to be classified either as an associate or a joint venture respectively, the entity shall reclassify to profit or loss the proportion of the gain or loss that had previously been recognised in other comprehensive income relating to

that reduction in ownership interest if that gain or loss would be required to be reclassified to profit or loss on the disposal of the related assets or liabilities.

## Equity method procedures                                                  —

Many of the procedures that are appropriate for the application of the equity method are similar to the consolidation procedures described in IFRS 10. Furthermore, the concepts underlying the procedures used in accounting for the acquisition of a subsidiary are also adopted in accounting for the acquisition of an investment in an associate or a joint venture.

A group's share in an associate or a joint venture is the aggregate of the holdings in that associate or joint venture by the parent and its subsidiaries. The holdings of the group's other associates or joint ventures are ignored for this purpose. When an associate or a joint venture has subsidiaries, associates or joint ventures, the profit or loss, other comprehensive income and net assets taken into account in applying the equity method are those recognised in the associate's or joint venture's financial statements (including the associate's or joint venture's share of the profit or loss, other comprehensive income and net assets of its associates and joint ventures), after any adjustments necessary to give effect to uniform accounting policies (see paragraphs 35–36A).

Gains and losses resulting from 'upstream' and 'downstream' transactions involving assets that do not constitute a business, as defined in IFRS 3, between an entity (including its consolidated subsidiaries) and its associate or joint venture are recognised in the entity's financial statements only to the extent of unrelated investors' interests in the associate or joint venture. 'Upstream' transactions are, for example, sales of assets from an associate or a joint venture to the investor. The entity's share in the associate's or the joint venture's gains or losses resulting from these transactions is eliminated. 'Downstream' transactions are, for example, sales or contributions of assets from the investor to its associate or its joint venture.

When downstream transactions provide evidence of a reduction in the net realisable value of the assets to be sold or contributed, or of an impairment loss of those assets, those losses shall be recognised in full by the investor. When upstream transactions provide evidence of a reduction in the net realisable value of the assets

Ex. Y, at 10

to be purchased or of an impairment loss of those assets, the investor shall recognise its share in those losses.

30   The gain or loss resulting from the contribution of non-monetary assets that do not constitute a business, as defined in IFRS 3, to an associate or a joint venture in exchange for an equity interest in that associate or joint venture shall be accounted for in accordance with paragraph 28, except when the contribution lacks commercial substance, as that term is described in IAS 16 *Property, Plant and Equipment*. If such a contribution lacks commercial substance, the gain or loss is regarded as unrealised and is not recognised unless paragraph 31 also applies. Such unrealised gains and losses shall be eliminated against the investment accounted for using the equity method and shall not be presented as deferred gains or losses in the entity's consolidated statement of financial position or in the entity's statement of financial position in which investments are accounted for using the equity method.

31   If, in addition to receiving an equity interest in an associate or a joint venture, an entity receives monetary or non-monetary assets, the entity recognises in full in profit or loss the portion of the gain or loss on the non-monetary contribution relating to the monetary or non-monetary assets received.

31A   The gain or loss resulting from a downstream transaction involving assets that constitute a business, as defined in IFRS 3, between an entity (including its consolidated subsidiaries) and its associate or joint venture is recognised in full in the investor's financial statements.

31B   An entity might sell or contribute assets in two or more arrangements (transactions). When determining whether assets that are sold or contributed constitute a business, as defined in IFRS 3, an entity shall consider whether the sale or contribution of those assets is part of multiple arrangements that should be accounted for as a single transaction in accordance with the requirements in paragraph B97 of IFRS 10.

32   An investment is accounted for using the equity method from the date on which it becomes an associate or a joint venture. On acquisition of the investment, any difference between the cost of the investment and the entity's share of the net fair value of the investee's identifiable assets and liabilities is accounted for as follows:

(a)    Goodwill relating to an associate or a joint venture is included in the carrying amount of the investment. Amortisation of that goodwill is not permitted.

(b)    Any excess of the entity's share of the net fair value of the investee's identifiable assets and liabilities over the cost of the investment is included as income in the determination of the entity's share of the associate or joint venture's profit or loss in the period in which the investment is acquired.

Appropriate adjustments to the entity's share of the associate's or joint venture's profit or loss after acquisition are made in order to account, for example, for depreciation of the depreciable assets based on their fair values at the acquisition date. Similarly, appropriate adjustments to the entity's share of the associate's or joint venture's profit or loss after acquisition are made for impairment losses such as for goodwill or property, plant and equipment.

33    **The most recent available financial statements of the associate or joint venture are used by the entity in applying the equity method. When the end of the reporting period of the entity is different from that of the associate or joint venture, the associate or joint venture prepares, for the use of the entity, financial statements as of the same date as the financial statements of the entity unless it is impracticable to do so.**

34    **When, in accordance with paragraph 33, the financial statements of an associate or a joint venture used in applying the equity method are prepared as of a date different from that used by the entity, adjustments shall be made for the effects of significant transactions or events that occur between that date and the date of the entity's financial statements. In any case, the difference between the end of the reporting period of the associate or joint venture and that of the entity shall be no more than three months. The length of the reporting periods and any difference between the ends of the reporting periods shall be the same from period to period.**

35    **The entity's financial statements shall be prepared using uniform accounting policies for like transactions and events in similar circumstances.**

36    Except as described in paragraph 36A, if an associate or a joint venture uses accounting policies other than those of the entity for like transactions and events in similar circumstances, adjustments shall be made to make the associate's or joint venture's accounting policies conform to those of the entity when the associate's or

joint venture's financial statements are used by the entity in applying the equity method.

36A    Notwithstanding the requirement in paragraph 36, if an entity that is not itself an investment entity has an interest in an associate or joint venture that is an investment entity, the entity may, when applying the equity method, elect to retain the fair value measurement applied by that investment entity associate or joint venture to the investment entity associate's or joint venture's interests in subsidiaries. This election is made separately for each investment entity associate or joint venture, at the later of the date on which (a) the investment entity associate or joint venture is initially recognised; (b) the associate or joint venture becomes an investment entity; and (c) the investment entity associate or joint venture first becomes a parent.

37    If an associate or a joint venture has outstanding cumulative preference shares that are held by parties other than the entity and are classified as equity, the entity computes its share of profit or loss after adjusting for the dividends on such shares, whether or not the dividends have been declared.

38    If an entity's share of losses of an associate or a joint venture equals or exceeds its interest in the associate or joint venture, the entity discontinues recognising its share of further losses. The interest in an associate or a joint venture is the carrying amount of the investment in the associate or joint venture determined using the equity method together with any long-term interests that, in substance, form part of the entity's net investment in the associate or joint venture. For example, an item for which settlement is neither planned nor likely to occur in the foreseeable future is, in substance, an extension of the entity's investment in that associate or joint venture. Such items may include preference shares and long-term receivables or loans, but do not include trade receivables, trade payables or any long-term receivables for which adequate collateral exists, such as secured loans. Losses recognised using the equity method in excess of the entity's investment in ordinary shares are applied to the other components of the entity's interest in an associate or a joint venture in the reverse order of their seniority (ie priority in liquidation).

39    After the entity's interest is reduced to zero, additional losses are provided for, and a liability is recognised, only to the extent that the entity has incurred legal or constructive obligations or made payments on behalf of the associate or joint venture. If the associate or joint venture subsequently reports profits, the entity

Ex. Y, at 13

resumes recognising its share of those profits only after its share of the profits equals the share of losses not recognised.

---

## Impairment losses —

40  After application of the equity method, including recognising the <u>associate's</u> or <u>joint venture's</u> losses in accordance with paragraph 38, the entity applies paragraphs 41A–41C to determine whether there is any objective evidence that its net investment in the associate or joint venture is impaired.

41  [Deleted]

41A  The net investment in an associate or joint venture is impaired and impairment losses are incurred if, and only if, there is objective evidence of impairment as a result of one or more events that occurred after the initial recognition of the net investment (a 'loss event') and that loss event (or events) has an impact on the estimated future cash flows from the net investment that can be reliably estimated. It may not be possible to identify a single, discrete event that caused the impairment. Rather the combined effect of several events may have caused the impairment. Losses expected as a result of future events, no matter how likely, are not recognised. Objective evidence that the net investment is impaired includes observable data that comes to the attention of the entity about the following loss events:

(a)  significant financial difficulty of the associate or joint venture;

(b)  a breach of contract, such as a default or delinquency in payments by the associate or joint venture;

(c)  the entity, for economic or legal reasons relating to its associate's or joint venture's financial difficulty, granting to the associate or joint venture a concession that the entity would not otherwise consider;

(d)  it becoming probable that the associate or joint venture will enter bankruptcy or other financial reorganisation; or

(e)  the disappearance of an active market for the net investment because of financial difficulties of the associate or joint venture.

41B  The disappearance of an active market because the associate's or joint venture's

Ex. Y, at 14

equity or financial instruments are no longer publicly traded is not evidence of impairment. A downgrade of an associate's or joint venture's credit rating or a decline in the fair value of the associate or joint venture, is not of itself, evidence of impairment, although it may be evidence of impairment when considered with other available information.

41C   In addition to the types of events in paragraph 41A, objective evidence of impairment for the net investment in the equity instruments of the associate or joint venture includes information about significant changes with an adverse effect that have taken place in the technological, market, economic or legal environment in which the associate or joint venture operates, and indicates that the cost of the investment in the equity instrument may not be recovered. A significant or prolonged decline in the fair value of an investment in an equity instrument below its cost is also objective evidence of impairment.

42   Because goodwill that forms part of the carrying amount of the net investment in an associate or a joint venture is not separately recognised, it is not tested for impairment separately by applying the requirements for impairment testing goodwill in IAS 36 *Impairment of Assets*. Instead, the entire carrying amount of the investment is tested for impairment in accordance with IAS 36 as a single asset, by comparing its recoverable amount (higher of value in use and fair value less costs of disposal) with its carrying amount whenever application of paragraphs 41A–41C indicates that the net investment may be impaired. An impairment loss recognised in those circumstances is not allocated to any asset, including goodwill, that forms part of the carrying amount of the net investment in the associate or joint venture. Accordingly, any reversal of that impairment loss is recognised in accordance with IAS 36 to the extent that the recoverable amount of the net investment subsequently increases. In determining the value in use of the net investment, an entity estimates:

(a)   its share of the present value of the estimated future cash flows expected to be generated by the associate or joint venture, including the cash flows from the operations of the associate or joint venture and the proceeds from the ultimate disposal of the investment; or

(b)   the present value of the estimated future cash flows expected to arise from dividends to be received from the investment and from its ultimate disposal.

Using appropriate assumptions, both methods give the same result.

43   The recoverable amount of an investment in an <u>associate</u> or a joint venture shall be

Ex. Y, at 15

assessed for each associate or joint venture, unless the associate or joint venture does not generate cash inflows from continuing use that are largely independent of those from other assets of the entity.

## Separate financial statements                                                               −

44          An investment in an <u>associate</u> or a joint venture shall be accounted for in the entity's separate financial statements in accordance with paragraph 10 of IAS 27 (as amended in 2011).

## Effective date and transition                                                               −

45          An entity shall apply this Standard for annual periods beginning on or after 1 January 2013. Earlier application is permitted. If an entity applies this Standard earlier, it shall disclose that fact and apply IFRS 10, IFRS 11 *Joint Arrangements*, IFRS 12 *Disclosure of Interests in Other Entities* and IAS 27 (as amended in 2011) at the same time.

45A         IFRS 9, as issued in July 2014, amended paragraphs 40–42 and added paragraphs 41A–41C. An entity shall apply those amendments when it applies IFRS 9.

45B         *Equity Method in Separate Financial Statements* (Amendments to IAS 27), issued in August 2014, amended paragraph 25. An entity shall apply that amendment for annual periods beginning on or after 1 January 2016 retrospectively in accordance with IAS 8 *Accounting Policies, Changes in Accounting Estimates and Errors*. Earlier application is permitted. If an entity applies that amendment for an earlier period, it shall disclose that fact.

45C         *Sale or Contribution of Assets between an Investor and its Associate or Joint Venture* (Amendments to IFRS 10 and IAS 28), issued in September 2014, amended paragraphs 28 and 30 and added paragraphs 31A–31B. An entity shall apply those amendments prospectively to the sale or contribution of assets occurring in annual periods beginning on or after a date to be determined by the

Ex. Y, at 16

IASB. Earlier application is permitted. If an entity applies those amendments earlier, it shall disclose that fact.

45D    *Investment Entities: Applying the Consolidation Exception* (Amendments to IFRS 10, IFRS 12 and IAS 28), issued in December 2014, amended paragraphs 17, 27 and 36 and added paragraph 36A. An entity shall apply those amendments for annual periods beginning on or after 1 January 2016. Earlier application is permitted. If an entity applies those amendments for an earlier period, it shall disclose that fact.

45E    *Annual Improvements to IFRS Standards 2014–2016 Cycle*, issued in December 2016, amended paragraphs 18 and 36A. An entity shall apply those amendments retrospectively in accordance with IAS 8 for annual periods beginning on or after 1 January 2018. Earlier application is permitted. If an entity applies those amendments for an earlier period, it shall disclose that fact.

45F    IFRS 17, issued in May 2017, amended paragraph 18. An entity shall apply that amendment when it applies IFRS 17.

45G    *Long-term Interests in Associates and Joint Ventures*, issued in October 2017, added paragraph 14A and deleted paragraph 41. An entity shall apply those amendments retrospectively in accordance with IAS 8 for annual reporting periods beginning on or after 1 January 2019, except as specified in paragraphs 45H–45K. Earlier application is permitted. If an entity applies those amendments earlier, it shall disclose that fact.

45H    An entity that first applies the amendments in paragraph 45G at the same time it first applies IFRS 9 shall apply the transition requirements in IFRS 9 to the long-term interests described in paragraph 14A.

45I    An entity that first applies the amendments in paragraph 45G after it first applies IFRS 9 shall apply the transition requirements in IFRS 9 necessary for applying the requirements set out in paragraph 14A to long-term interests. For that purpose, references to the date of initial application in IFRS 9 shall be read as referring to the beginning of the annual reporting period in which the entity first applies the amendments (the date of initial application of the amendments). The entity is not



required to restate prior periods to reflect the application of the amendments. The entity may restate prior periods only if it is possible without the use of hindsight.

45J    When first applying the amendments in paragraph 45G, an entity that applies the temporary exemption from IFRS 9 in accordance with IFRS 4 *Insurance Contracts* is not required to restate prior periods to reflect the application of the amendments. The entity may restate prior periods only if it is possible without the use of hindsight.

45K    If an entity does not restate prior periods applying paragraph 45I or paragraph 45J, at the date of initial application of the amendments it shall recognise in the opening retained earnings (or other component of equity, as appropriate) any difference between:

   (a)    the previous carrying amount of long-term interests described in paragraph 14A at that date; and

   (b)    the carrying amount of those long-term interests at that date.

## References to IFRS 9    —

46    If an entity applies this Standard but does not yet apply IFRS 9, any reference to IFRS 9 shall be read as a reference to IAS 39.

## Withdrawal of IAS 28 (2003)    —

47    This Standard supersedes IAS 28 *Investments in Associates* (as revised in 2003).

## Board Approvals    —

### Approval by the Board of IAS 28 issued in December 2003    +

### Approval by the Board of *Sale or Contribution of Assets between an Investor and its Associate or Joint Venture* (Amendments to IFRS 10 and IAS 28) issued in September 2014    +

Ex. Y, at 18

**Approval by the Board of *Investment Entities: Applying the Consolidation Exception* (Amendments to IFRS 10, IFRS 12 and IAS 28) issued in December 2014** +

**Approval by the Board of *Effective Date of Amendments to IFRS 10 and IAS 28* issued in December 2015** +

**Approval by the Board of *Long-term Interests in Associates and Joint Ventures* (Amendments to IAS 28) issued in October 2017** +

## Footnotes −

1    Ms Patricia McConnell (former IASB member) intended to dissent from the issue of the amendments to IFRS 10 and IAS 28 for the same reasons as Ms Lloyd and Mr Ochi. Her dissenting opinion is not included in these amendments, because her term as an IASB member expired on 30 June 2014. (back)

Copyright ©2021 IFRS Foundation

**Share**

  

About us                                  Jobs

Around the world                          News and events

Contact us                                Projects

eIFRS                                     Shop

Funding                                   Speaking requests

Issued Standards                          Products and services

Supporting implementation

Academics

Accounting profession

Investors

Media

National standard-setters

Preparers

Regulators

Students

**Stay in touch**

**Register for news alerts**

The IFRS Foundation's logo and the *IFRS for SMEs*® logo, the IASB® logo, the 'Hexagon Device', eIFRS®, IAS®, IASB®, IFRIC®, IFRS®, *IFRS for SMEs*®, IFRS Foundation®, International Accounting Standards®, International Financial Reporting Standards®, NIIF® and SIC® are registered trade marks of the IFRS Foundation, further details of which are available from the IFRS Foundation on request.

The International Financial Reporting Standards Foundation is a not-for-profit corporation incorporated in the State of Delaware, United States of America, with the Delaware Division of Companies (file no: 3353113), and is registered as an overseas company in England and Wales (reg no: FC023235). Head office: Columbus Building, 7 Westferry Circus, Canary Wharf, London E14 4HD, UK.

© IFRS Foundation 2021

Accessibility  |  Privacy  |  Terms and Conditions  |  Trade mark guidelines  |  All legal information  |  Using our website



Ex. Y, at 20