Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com

*Counsel for Lead Plaintiff Michael G.*
*Quinn and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH, <br><br> Defendants. | Case No. 2:21-cv-03120-JVS-KES <br><br> **MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** <br><br> Date:    May 9, 2022 <br> Time:   1:30 p.m. <br> Crtm:   10C <br> Judge:  James V. Selna |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................1

II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ...............1

    A. Nature of the Action ..............................................................................1

    B. Initial Complaint and Lead Appointment Process.................................2

    C. Lead Counsel's Investigation and the Complaint..................................2

    D. Settlement Negotiations.........................................................................3

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)....3

IV. ARGUMENT .................................................................................................5

    A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors..............5

        1. Plaintiff and Lead Counsel Adequately Represented the Settlement Class ........................................................................5

        2. The Settlement Is The Request Of Arm's-Length Negotiations ..6

        3. The Relief Provided For The Settlement Class Is Adequate........7

        4. Other Factors Established by Rule 23(e)(2)(C) Support Final Approval........................................................................................11

        5. All Settlement Class Members Are Treated Equitably ..............13

        6. The Remaining Ninth Circuit Factors Are Satisfied ..................13

V. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA ..........................................................................................................14

    A. The Method Of Notice Is Adequate.....................................................14

    B. The Content Of The Notice Is Adequate .............................................15

i

VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................ 16

    A.    Numerosity – Rule 23(a)(1) .................................................................. 17

    B.    Commonality – Rule 23(a)(2) ............................................................... 17

    C.    Typicality – Rule 23(a)(3) .................................................................... 18

    D.    Adequacy – Rule 23(a)(4) .................................................................... 18

    E.    Predominance and Superiority – Rule 23(b)(3) .................................... 18

VII.    PROPOSED SETTLEMENT SCHEDULE .................................................... 19

VIII.    CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................17, 19

*Barani v. Wells Fargo Bank, N.A.*,
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ........................................................15

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ................................................................................5

*Dubin v. Miller*,
132 F.R.D. 269 (D. Colo. 1990) ..........................................................................18

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) .................................................................................19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ................................................................................9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................5, 6, 7, 16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...............................................................................18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .....................................................10

*Ikuseghan v. Multicare Health System*,
2016 WL 3976569 (W.D. Wash. July 25, 2016)....................................................7

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................8

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991)............................................................9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  1993 WL 144861 (C.D. Cal. Feb. 26, 1993).........................................................19

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................7

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)........................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).................................................................................12

*In re Omnivision Technologies, Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................8

*In re Vivendi Universal, S.A., Sec. Litig.*,
  2012 WL 362028 (S.D.N.Y. Feb. 6, 2012).............................................................8

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008).............................................................................9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016).......................................................13

*Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012)..........................................................11

*Jaffe v. Morgan Stanley & Co., Inc.*,
  2008 WL 346417 (N.D. Cal. Feb. 7, 2008)...........................................................17

*Karam v. Corinthian Colleges Inc.*,
  2017 WL 4070889 (C.D. Cal. July 7, 2017) .........................................................17

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................................7

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) .....................................................5, 6

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997)................................................................9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)..................................................................6

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)......................................14

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993).........................................................10

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014).........................................13

*Wehner v. Syntex Corp.*,
  117 F.R.D. 641 (N.D. Cal. 1987)...........................................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010).................................................16, 17, 18

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021)................................5, 6, 7

**STATUTES**

15 U.S.C. § 78j(b) .......................................................................................1

15 U.S.C. § 78t(a)........................................................................................1

15 U.S.C. § 78u-4(a)(7)..............................................................................16

**RULES**

Fed. R. Civ. P. 23 ...............................................................................*passim*

**REGULATIONS**

17 C.F.R. § 240.10b-5 .................................................................................1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    PRELIMINARY STATEMENT

Lead Plaintiff Michael G. Quinn ("Plaintiff"), on behalf of himself and the proposed Settlement Class, respectfully seeks preliminary approval of the $1,000,000 all cash settlement ("Settlement") he has reached with defendants Champignon Brands Inc. n/k/a Braxia Scientific Corp., ("Braxia" or the "Company"), Gareth Birdsall, Roger McIntyre, Stephen Brohman, and Matthew Fish (collectively with Braxia, "Defendants").[1]   This memorandum outlines the Settlement's parameters, demonstrates why preliminary approval should be granted, and proposes a schedule for final approval of the Settlement.   It also establishes why the Court should: (i) certify the proposed Settlement Class; and (ii) approve the form and manner of providing notice of the Settlement to Settlement Class Members.   Defendants support preliminary approval and do not oppose Plaintiff's motion.[2]

### II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

#### A.    Nature of the Action

Plaintiff asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants.   Plaintiff alleges Defendants misled investors between March 27, 2020 and February 17, 2021 (the "Settlement Class Period"), by making materially false and misleading statements about the Company's pending and future acquisitions.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 6, 2022 ("Stipulation") or the Declaration of Casey E. Sadler ("Sadler Declaration" or "Decl."), filed concurrently herewith.   A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration.

[2] Unless otherwise noted, all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Declaration.

**B.     Initial Complaint and Lead Appointment Process**

On April 10, 2021, a class action complaint was filed in the United States District Court for the Central District of California, styled *Schneider v. Champignon Brands, Inc., et al.*, Case No. 2:21-cv-03120.  ECF No. 1.  On June 9, 2021, a number of movants applied for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), including Kenneth Kessler, Michael G. Quinn, and Tim Ryan.  ECF Nos. 10, 15, 20.  On June 21, 2021, Tim Ryan filed a statement of non-opposition to the appointment of Messrs. Kessler or Quinn.  ECF No. 23. Messrs. Kessler and Quinn each filed oppositions on June 21, 2021 (ECF Nos. 24 & 25, respectively) and replies on June 28, 2021 (ECF Nos. 26 & 27, respectively).  On June 29, 2021, the Court appointed Plaintiff Michael G. Quinn as lead plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP as Lead Counsel for the class.  ECF No. 28.

**C.     Lead Counsel's Investigation and the Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) the Company's filings with Canadian regulatory agencies, including the  British Columbia Securities Commission, and the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning the Company, and (c) other publicly available material related to the Company; and (2) retaining and working with damages and loss causation experts as well as an accounting expert.

On November 3, 2021, Plaintiff filed and served the Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") based on this investigation.  ECF No. 40.  Defendants moved to dismiss the Complaint and requested judicial notice of 29 exhibits on December 20, 2021.  ECF Nos. 55-58.

### D.     Settlement Negotiations

While Plaintiff was researching and preparing his opposition to Defendants' motion to dismiss, the Parties began exploring the possibility of resolving this Action. The Parties detailed their positions and stated their offers of settlement by letter. Subsequently, responses and counteroffers by each of the Parties were also made by letter.  Additionally, on numerous telephone calls, counsel for the Parties engaged in frank discussions regarding the litigation and the strengths and weaknesses of the case.

On January 14, 2022, the Parties entered a joint stipulation extending Plaintiff's deadline to respond to Defendants' motion to dismiss for thirty (30) days and informed the Court that the Parties had begun earnest settlement discussions through their respective counsel and, based on those discussions, Plaintiff had served a confidential settlement demand on Defendants on January 13, 2022.  ECF No. 59. The Court granted the Parties' request for an extension on January 18, 2022.  ECF No. 60.

On February 18, 2022, the Parties notified the Court of an agreement in principle to settle the Action and informed the Court that the Parties were working to memorialize their agreement.  ECF No. 61.  The Parties then conducted further discussions which culminated in a memorialization of the material terms of the Settlement in a term sheet (the "Term Sheet") executed on February 25, 2022.  The Parties subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation.

### III.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds

it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).[3] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)  have the class representatives and class counsel adequately represented the class;
>
> (B)  was the proposal negotiated at arm's length;
>
> (C)  is the relief provided for the class adequate, taking into account:
>
> > (i)  the costs, risks, and delay of trial and appeal;
> >
> > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously adopted by the courts. The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[4]

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

[4] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. Additionally, there is no government participant.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain Hanlon factors.").  As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.   Plaintiff And Lead Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representative[] and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff and Lead Counsel adequately represented the Settlement Class during both the litigation of this Action and its settlement.  Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel, Glancy Prongay & Murray, have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country for over 26 years. *See* ECF No. 17-4 (GPM firm resume). Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation through a detailed review of all publicly available documents as well as numerous interviews with former Company employees, drafting a detailed complaint, and obtaining a $1 million Settlement for the benefit of the Settlement Class. *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

**2.      The Settlement Is The Request Of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[5] The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, as detailed above, the Parties began exploring the possibility of resolving this Action only after Plaintiff had an opportunity to review and analyze Defendants' arguments in support of dismissal as well as performing legal research to prepare his counterarguments. Armed with this knowledge, Plaintiff served a confidential settlement demand on Defendants. Following numerous written responses on the merits and counteroffers by the Parties, as well as various telephonic discussions regarding the specifics of the

---

[5] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

case, the Parties were ultimately able to agree to the general contours of the Settlement. The arm's-length nature of the extensive settlement negotiations between capable counsel with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See Ikuseghan v. Multicare Health System*, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

### 3. The Relief Provided For The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6]

### (a) The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Securities fraud cases are inherently complex and tend to take

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

The risks of continued litigation here were considerable, perhaps insurmountable. The most immediate risk is that Plaintiff might not advance past the pleading stage thereby eliminating any benefit potentially available to the Settlement Class. Although Plaintiff believes the Complaint was adequate to survive Defendants' motion to dismiss, Defendants raised plausible arguments in favor of dismissing Plaintiff's claims, including that a pending lawsuit in British Columbia, Canada was the more appropriate forum for the claims to be heard and that Defendants did not have a duty to disclose the fact that the transactions at issue involved a related party. If the Court agreed with Defendants' arguments, any potential recovery would be lost.

Even if Plaintiff did prevail at the motion to dismiss stage, Plaintiff would need to move for class certification, which Defendants would likely oppose. Although Plaintiff believes certifying a class here is meritorious, Defendants' likely opposition makes class certification not a foregone conclusion. Had Plaintiff failed to obtain class certification, the benefit to the Settlement Class would have been eliminated. Moreover, even assuming class certification was achieved, the Court could have revisited certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See*, *e.g.*, *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive

through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, even if Plaintiff prevailed at the class certification stage, he would still have to **prove** his claims. This would be no small task and Plaintiff and Lead Counsel recognize the significant risk, time, and expense involved in prosecuting Plaintiff's claims against Defendants through completion of fact and expert discovery – discovery that would have mainly occurred outside of the United States – summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain. *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. Any recovery that shareholders may ultimately see is diminished by the escalating costs accumulated in the process. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[7]

---

[7] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re Apple Computer Sec. Litig.*, (footnote continued)

In sum, even if Plaintiff were to prevail after trial and appeals, there is no guarantee that he would have obtained a judgment greater than the $1 million Settlement. There was, as in any complex securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately-realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### (b)     The Settlement Amount

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018). The $1,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.

Here, Plaintiff's damages expert estimates that if Plaintiff had fully prevailed in his claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury fully accepted Plaintiff's loss causation and damages arguments—*i.e.*, Plaintiff's **best case scenario**—the total **maximum** damages would be approximately $7.9 million. Thus, the $1 million Settlement Amount represents approximately 12.7% of the total **maximum** damages *potentially* available in this Action. In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Ex. 2 (Janeen McIntosh and Svetlana Starykh, Recent Trends in

1991 WL 238298 at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

Securities Class Action Litigation: 2020 Full-Year Review (NERA Jan. 25, 2021) at p. 20, Fig. 16; *see also Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at \*3 (D. Nev. Oct. 19, 2012) (approving settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years"). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of preliminary approval.  This is particularly relevant here, as it is not assured that Braxia would be able to continue as a going concern and thus funds needed to fund a settlement may have no longer been available in the future.

### 4.     Other Factors Established By Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation),

after Court approval.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Postcard Notice, Summary Notice, and Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class.  A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶17.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted.  *See* Stipulation ¶14.

### 5.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

### 6.    The Remaining Ninth Circuit Factors Are Satisfied

**The Extent of Discovery Completed and the Stage of the Proceeding:** In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016). (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Here, Lead Counsel conducted an extensive investigation of the claims asserted in this Action (*see* Sec II.C., *supra*, detailing Lead Counsel's investigation), including consultation with experts in the fields of loss causation, damages, and accounting. Additionally, in drafting the Complaint and preparing an opposition to Defendants' motion to dismiss, Lead Counsel further engaged in extensive legal research, which

helped to further evaluate and sharpen the understanding of the strengths and weaknesses of the claims asserted in this Action.

This material amount of information helped enable Lead Counsel to make an informed assessment of the strengths and weaknesses of this Action to make a determination on behalf of the Settlement Class about whether to settle. The Parties' settlement negotiations, as explained above, further informed Lead Counsel about the strengths and weaknesses of the potential class's claims in this Action and Defendants' defenses to those claims. As a result, the Parties and their counsel have sufficient basis to make informed decisions about the relative merits and weakness of this Action and the fairness of the Settlement.

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at \*6 (N.D. Cal. Aug. 25, 2017). Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Defendants have been vigorously represented by Katten Muchin Rosenman LLP throughout the Action and settlement negotiations. Defendants' counsel is equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel, preliminary approval is warranted.

## V. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA

### A. The Method Of Notice Is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs. Here,

Lead Counsel propose to either (a) email links to the webpage[9] hosting the Notice and Claim Form (Exhibits A-1 & A-2 to the Stipulation) to Settlement Class Members for whom SCS is able to obtain email addresses, or (b) mail, by first class mail, a copy of the Postcard Notice (Exhibit A-4 to the Stipulation), if no electronic mail address can be obtained, to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.   Contemporaneously with the mailing of the Postcard Notice, downloadable copies of the Notice and the Claim Form will be posted on the webpage specifically developed for the Settlement.  The case-specific webpage will also allow online claim submission.   Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  No more than ten (10) business days after emailing/mailing notice of the Settlement, the Summary Notice will also be published once in *GlobeNewswire*.

Courts have found this method of notice to be sufficient.  *Tchatchou v. India Globalization Capital, Inc.*, Case No. 8:18-cv-03396-PWG, Dkt. No. 88 at ¶¶13-18 (D. Md. Dec. 27, 2021 (Ex. 3) (approving combination of emailing a link to settlement webpage or mailing postcard along with publishing notice); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).  A full printed Notice and Claim Form sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Plaintiff respectfully submits that the combination of emailing a link to the settlement-specific webpage or mailing the Postcard Notice, publishing Summary Notice, and online availability of the Notice provides "the best notice that is practicable under the circumstances."

**B.    The Content Of The Notice Is Adequate**

Plaintiff respectfully submits that the Court should approve the form and

---

[9] www.strategicclaims.net/Braxia/

content of the proposed Notice and Summary Notice. *See* Exhibits A-1 and A-3 to the Stipulation. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1)(A), the Notice objectively and neutrally apprises all Settlement Class Members the nature of the Action, the definition of the Settlement Class, the claims and issues, that the Court will exclude from the Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*.

## VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23. *See Hanlon*, 150 F.3d at 1019. Under Rule 23(a), a class may be certified if the following four factors are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) are satisfied. *Id*. Under subsection (b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy.  *Id*.; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).[10]  As discussed below, the class meets the requirements under Rule 23.

### A.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be so large that joinder of all class members is impracticable.  Throughout the Settlement Class Period, Braxia's stock was actively traded on the OTC Market, with an average trading volume of 170,145,660 shares.  Thus, numerosity is satisfied.  *See e.g.*, *Karam v. Corinthian Colleges Inc.*, 2017 WL 4070889, at *2 (C.D. Cal. July 7, 2017) (numerosity satisfied because it was safe to "infer that well over 40 individuals purchased" stock during the class period where there existed over 86 million shares of stock and the average weekly trading volume was over 10 million shares.).

### B.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) is satisfied where the proposed class representative(s) share at least one question of law or fact with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Here, there are numerous questions of law and fact common to the Settlement Class.  If the Action were to proceed, common questions would include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) whether Defendants knowingly or recklessly disregarded that their statements and omissions were false and misleading; (iv) whether the price of Braxia stock was artificially inflated during the Settlement Class Period; and (v) whether the Settlement Class Members have sustained damages and the proper measure of such damages.  Thus, commonality is satisfied.  *See e.g.*, *Corinthian*, 2017 WL 4070889, at *2

---

[10] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

(finding commonality is satisfied where there existed similar common questions of law and fact).

## C.    Typicality – Rule 23(a)(3)

The typicality requirement recognizes that a class representative "with claims typical of the class will, in pursuing and defending his own self-interest in the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted).

Here, the claims of Plaintiff and the Settlement Class arise from the same alleged conduct by Defendants. Plaintiff alleges that he, like the other Settlement Class Members, purchased Braxia stock at artificially inflated prices because the Defendants, in violation of the federal securities laws, issued materially false and/or materially misleading statements during the Settlement Class Period. The proof that Plaintiff would present to establish his claims would also prove the claims of the rest of the Settlement Class. Further, Plaintiff is not subject to any unique defenses that would make him an atypical Settlement Class Member.

## D.    Adequacy – Rule 23(a)(4)

The adequacy factor requires a finding that the representative parties will fairly and adequately protect the interests of the class. *Wolin*, 617 F.3d at 1172. As set forth Sec. IV.A.1., *supra*, Plaintiff and Lead Counsel have adequately represented the Settlement Class.

## E.    Predominance and Superiority – Rule 23(b)(3)

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the

18
MEMORANDUM OF POINTS AND AUTHORITIES

controversy.  The predominance test is met here because the same set of operative facts applies to each Settlement Class Member.  *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1993 WL 144861, at \*6 (C.D. Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct.").  Further, the fact that a class action is the superior method to efficiently and effectively pursue the claims alleged here is shown by the fact that if Plaintiff and each of the Settlement Class Members were to bring individual actions, they each would be required to prove the same wrongdoing by Defendants to establish liability.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (class actions are a particularly appropriate and desirable means to resolve claims based on securities laws).  Finally, damages suffered by individual Settlement Class Members are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . . A class action solves this problem[.]").  Accordingly, class certification for the purposes of settlement is appropriate.

## VII.  PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Proposed Timing |
| --- | --- |
| Deadline for disseminating notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |

| Event | Proposed Timing |
|---|---|
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶13) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement and enter the accompanying Preliminary Approval Order.

DATED:  April 7, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Casey E. Sadler*
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
csadler@glancylaw.com

*Counsel for Plaintiff Michael G. Quinn and Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On April 7, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 7, 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler