Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com

*Counsel for Lead Plaintiff Michael G.*
*Quinn and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH, <br><br> Defendants. | Case No. 2:21-cv-03120-JVS-KES <br><br> **SUPPLEMENTAL DECLARATION OF CASEY E. SADLER IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** |

SUPPLEMENTAL DECLARATION OF CASEY E. SADLER

I, Casey E. Sadler, declare as follows:

1.     I am an attorney admitted to practice before this Court. I am a partner with the law firm of Glancy Prongay & Murray LLP, the Court-appointed Lead Counsel for Lead Plaintiff Michael G. Quinn ("Plaintiff") and the proposed Settlement Class. I have personal knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so. I submit this declaration, together with the attached exhibits, in support of Plaintiff's Unopposed Motion for (I) Preliminary Approval of Class Action Settlement, (II) Certification of the Settlement Class, and (III) Approval of Notice to the Settlement Class (the "Motion").

2.     On August 9, 2022, the Court provided the Parties with its tentative order denying the Motion without prejudice (the "Tentative Order"). While the Tentative Order found that most of the prerequisites for preliminary approval of the proposed settlement were satisfied, the Court found there was insufficient information provided as to the several issues, which Plaintiff seeks to cure with the instant declaration.

## THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

3.     Plaintiff believes that the Settlement Amount, which obtains $1,000,000 for the Settlement Class, is an eminently fair, reasonable, and adequate recovery.

4.     For the superiority prong of Federal Rule of Civil Procedure 23(b)(3), Plaintiff contends that the damages suffered by individual Settlement Class members are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' violations of the securities laws. The Court found that this argument was "conclusory without any evidence of the amount of the alleged damages that are actually at issue." Tentative Order at 16-17. Relatedly, to assess the adequacy of class relief among the factors pursuant to Rule 23(e)(2), the Court sought evidence to support the assertion that the

$1,000,000 Settlement Amount is reasonable, including a report or affidavit from Plaintiff's expert explaining how he estimated the total maximum damages as $7.9 million, as well as evidence of the number of shares, individuals, or entities that were harmed by Defendants' conduct. *Id.* at 20. "Specifically, Plaintiff must provide evidence of the maximum recovery amount and an explanation as to how that amount was calculated." *Id.* at 24-25.

5. During the course of litigation, Lead Counsel retained damages consultant Michael A. Marek, CFA, of Financial Markets Analysis, LLC, to assist Plaintiff in understanding the materiality of information allegedly misstated and/or omitted by Defendants, the causation of damages to members of the Settlement Class, and the quantification of those damages. Mr. Marek estimates that the maximum available damages, if Plaintiff were to entirely prevail on his claims and recover 100% of the damages flowing from the two alleged corrective disclosures, would total $7,926,522. *See* Declaration of Michael A. Marek in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Marek Decl."), attached hereto as Exhibit 1, at ¶ 17.

6. As further explained in Mr. Marek's declaration, through the application of an empirical event study that was based on Plaintiff's allegations, he was able to determine the abnormal returns for Braxia common stock during the Class Period that were purportedly related to Braxia's disclosures. *Id.* at ¶¶ 4-10. Specifically, Mr. Marek's event study first identified events of interest, which was done by reviewing databases of publicly available information regarding Braxia and then measuring significance by the change in common stock price. *Id.* at ¶ 7. He then created a "market model" that quantifies the mathematical and statistical relationships between changes in the price of Braxia common stock and changes in the general stock market and/or stocks of companies whose primary business is related to that of the Company. *Id.* at ¶ 8. Using a regression equation, which is a widely accepted practice for determining abnormal returns (*see id.* at ¶ 9), Mr.

Marek calculated the predicted and abnormal returns for Braxia common stock during the Class Period. *Id.* at ¶ 10.

7.      The estimation of class-wide damages depends in part on the drop in value of Braxia's stock price following the alleged corrective disclosures. The estimate also depends on the number of damaged shares (*i.e.*, the number of shares purchased at allegedly inflated prices during the Settlement Class Period, which were still held as of the time of the alleged corrective disclosure). As in any securities case, the precise number of damaged shares in this case is unknown. Instead, economic experts attempting to estimate damages in securities cases such as this one use a company's "float" (the number of shares available for trading) and various probability-based trading models to estimate the frequency with which the *same* shares may be traded multiple times during a given period. This informs an estimation of how many *distinct* shares of common stock may have been purchased or acquired during the Settlement Class Period and held through each alleged corrective disclosure – *i.e.*, an estimate of the number of shares alleged to have been damaged.

8.      Here, Mr. Marek employed a widely accepted "multi-trader model" to estimate the number of damaged shares. This type of model assumes that some traders have a greater propensity to trade than others. Marek Decl., at ¶¶ 13-15. The model thus divides a company's shares into two groups – those held by active traders and those held by passive traders – and from those assumptions, estimates the trading volume attributed to each group. The "float" is adjusted over the course of the Class Period to reflect issuances of additional shares pursuant to secondary offerings and business acquisitions, insider trading activity, changes in the short interest position, warrant exercises and repurchases made by Braxia. *Id.* at ¶ 15. Because Braxia common stock traded both in Canada and in the United States, Mr. Marek used the reported trading volume during the Settlement Class Period to

conclude that the percent of float held in the United States was equal to approximately 46% of the total. *Id.* at ¶ 16.

9.     Mr. Marek ultimately estimates that there are 53,716,176 shares that were purchased and damaged. *Id.* at ¶ 17. According to Mr. Marek, this results in a total estimated damages under Section 10(b) of the Securities Exchange Act of 1934 of $7,926,522, meaning the Settlement Amount is approximately 12.7% of the total estimated damages. *Id.*

10.     As a result, the following are certain relevant statistics regarding damages and the Settlement: average compensable damage per share ($0.148) and average settlement recovery per share ($0.019); attorney's fees and expenses per share ($0.007); and average recovery per share after attorney's fees and expenses ($0.012).[1] Thus, it would not be economical for individual Settlement Class members to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' violations of the securities laws.

11.     Plaintiff respectfully submits that the Settlement Amount, which Mr. Marek estimates is approximately 12.7% of the maximum available damages, compares favorably to other securities class action settlements, and indeed, is an

---

[1] As I consulted with Plaintiff's damages consultant to prepare this supplemental declaration to address the Court's Tentative Order, I discovered that incorrect figures for the average settlement recovery and average cost per share were used in the Postcard Notice and Notice. The average settlement recovery per share of $0.12 per share in the Postcard Notice and Notice (*see* ECF No. 65-1 at pp. 59 & 98 of 111) should actually be $0.019. Additionally, the average cost per share of $0.04 per share, if the Court approves Lead Counsel's fee and expense application (ECF No. 65-1 at p. 59 of 111), listed in the Notice should actually be $0.007.

Proposed revised Postcard Notice and Notice to reflect these corrections are attached hereto as Exhibits 2 & 3 for the Court's review. Defendants have agreed to these revisions.

excellent recovery for the Settlement Class. *See* ECF No. 64 at 10 (median recovery for securities class actions in 2020 was approximately 1.7% of estimated damages).

12. Plaintiff also recognizes that there were significant risks in proving and prevailing in recovery of the maximum estimated damages. The most immediate risk is that Plaintiff might not advance past the pleading stage thereby eliminating any benefit potentially available to the Settlement Class. *See also* Tentative Order at 21 (recognizing costs, risks, and delay of continued litigation).

13. In light of these risks, Plaintiff and his counsel believe that the $1,000,000 Settlement Amount is a reasonable recovery for the Settlement Class.

**EXTENT OF DISCOVERY**

14. To assess the adequacy of representation of Lead Plaintiff when considering the factors for the fairness of the settlement under Rule 23(e)(2), the Court found that "Plaintiff provides little information about the extent of the discovery that has been conducted" and that "Plaintiff does not explain why it was sufficient to only review Braxia's public records." *Id.* at 18-19.

15. This action alleges claims pursuant to the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Defendants responded to the Amended Complaint by filing a motion to dismiss, thereby staying discovery in this action.

16. As Plaintiff was precluded from discovery due to the PSLRA and only able to review publicly available documents, Plaintiff would have needed to meet the heightened pleading standard set forth by the PSLRA without any non-public information. As such, Lead Counsel have extensive experience meeting this standard through their expertise in analyzing corporate securities filings and other

public information as well as retaining subject matter experts, such as an accounting expert in the instant action.  Since all securities class action plaintiffs are prevented from conducting discovery until after a motion to dismiss has been defeated, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (cleaned up). In fact, courts often approve the settlement of securities class actions absent discovery. *See, e.g.*, *Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (approving settlement reached "before formal discovery or any significant motion practice"); *Scott v. ZST Dig. Networks, Inc.*, 2013 WL 12126744, at *5-6 (C.D. Cal. Aug. 5, 2013) (Lead Counsel informed by public filings and expert reports); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *6 (S.D. Cal. Oct. 23, 2015) (similar).

**CONFIDENTIAL AGREEMENTS**

17.    To evaluate the fairness of the Parties' confidential agreement concerning Defendants' termination option (the "Opt-Out Agreement"), the Court required the Parties to submit a copy of it for in-camera review. *Id.* at 23, 25.

18.    Plaintiff has lodged a copy of the Opt-Out Agreement for the Court's in-camera review.

19.    The Opt-Out Agreement, which provides the conditions under which Defendants may terminate the Settlement if a threshold number of Settlement Class members opt-out, is standard in securities fraud class actions and does not preclude approval of the Settlement. *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (such an agreement is "common in securities fraud actions and does not weigh against preliminary approval"); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH, 21.631 (2015) ("Opt-out agreements in which a defendant conditions its agreement on a limit on the number or value of opt outs that will vitiate a settlement might encourage third parties to solicit class

members to opt out. A common practice is to receive information about such agreements in camera.").

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31st day of August 2022, in Los Angeles California.

*/s/ Casey E. Sadler*
Casey E. Sadler

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 31, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 31, 2022, at Los Angeles, California.

*s/ Casey E. Sadler*
Casey E. Sadler