Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com

*Counsel for Lead Plaintiff Michael G.*
*Quinn and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH,<br><br>Defendants. | Case No. 2:21-cv-03120-JVS-KES<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION ON FOR A PRELIMINARY AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE
      REQUEST ...................................................................................................... 3

      A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From
            The Common Fund ............................................................................... 3

      B.    The Requested Attorneys' Fee Award Should Be A Percentage Of
            The Fund .............................................................................................. 4

      C.    The Requested Fee Is Supported By The Factors Considered By
            Courts In The Ninth Circuit ................................................................ 5

            1.    The Quality Of The Result Supports The Fee Request .............. 5

            2.    The Substantial Risks Of The Litigation Support The Fee
                  Request ...................................................................................... 7

            3.    The Skill Required And The Quality Of The Work ................. 10

            4.    The Contingent Nature Of The Fee And The Financial Burden
                  Carried By Counsel Support The Fee Request ........................ 11

            5.    A Benchmark Fee Award Of 25% Is Consistent With Fee
                  Awards In Similar, Complex, Contingent Litigation ............... 13

            6.    The Reaction Of The Settlement Class Is Not Applicable ........ 15

      D.    A Lodestar Cross-Check Supports The Requested Fee ...................... 15

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
      APPROVED ................................................................................................ 18

IV.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE
      COSTS AND EXPENSES PURSUANT TO THE PSLRA ......................... 19

V.    CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)............................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).................................................................................3

*Buccellato v. AT&T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011).........................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............................................9

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008)..................................................17

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)......................................7, 11

*Ellison v. Steven Madden, Ltd.*,
   2013 WL 12124432 (C.D. Cal. May 7, 2013)...........................................4

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .................................................................7

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) .................................................................17

*Glass v. UBS Fin. Servs.*,
   331 F. App'x. 452 (9th Cir. 2009).........................................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .................................................................12

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ..........................................................................................8

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ....................................................................................16

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) .................................................................................2

*Gross v. GFI Group, Inc.*,
784 F. App'x 27 (2d Cir. Sept. 13, 2019) .....................................................................9

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ..........................................................................................18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..............................................................8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)......................................................................................................5

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................................................20

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989).............................................................................14

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ..............................................................11

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) .........................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ..................................................................20

*In re American Apparel, Inc. Shareholder Litigation*,
2014 WL 10212865 (C.D. Cal. 2014) ...................................................................14, 16

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................................... 15

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. 2012) ........................................................................ 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................................... 13

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 8

*In re Bluetooth Headsets Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................... 5

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................... 9

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................... 8

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................. 6

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................... 10

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ................................................... 11, 18

*In re Genworth Fin. Sec. Litig.*,
2016 WL 5400360 (E.D. Va. Sep. 26, 2016) ......................................................... 15

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................. 10, 15, 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................... 13, 19, 20

*In re K12 Inc. Sec. Litig.*,
2019 WL 3766420 (N.D. Cal. July 10, 2019) ............................................... 10, 20

*In re Mannkind Corp. Sec. Litig.*,
2012 WL 13008151 (C.D. Cal. Dec. 21, 2012)......................................................17

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).......................................................20

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996).....................................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................................14

*In re NASDAQ Market-Makers Antitrust. Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998).......................................................................8, 13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................*passim*

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009)....................................................2, 12

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................13, 14

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .................................................................................16

*In re Scientific Atl., Inc. Sec. Litig.*,
754 F. Supp. 2d 1339 (N.D. Ga. 2010)...................................................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ......................................................................16

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................11

*In re Waste Mgmt., Inc. Sec Litig.*,
2002 WL 35644013 (S.D. Tex. May 10, 2002)........................................................8

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980  (D. Minn. 2005) ...........................................................12, 20

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011)......................................................................................13

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009) .......................................................14

*Lea v. TAL Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......................................17

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ....................................18

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................17

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .................................................................1

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)......................................................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ...........................................................13, 15

*Retta v. Millennium Prods. Inc.*,
2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ....................................18

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .............................................................13

*Roberti v. OSI Sys., Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)........................................17

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ...................................................................5

*Romero v. Producers Dairy Foods, Inc.*,
2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ....................................13

*Singer v. Becton Dickinson and Co.*,
2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................................13

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................18

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ...............................................................................14

*Steiner v. Am. Broad Co.*,
248 F. App'x 780 (9th Cir. 2007).........................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................................4, 14

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ......................................................20

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .................................................................................13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ..................................................................................4

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010).........................................................................14

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ..................................................................................3

*Vinh Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014)..........................................................5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .....................................................................*passim*

STATUTES

15 U.S.C. §78u-4(a)(4) ........................................................................................ 1, 19

15 U.S.C. §78u-4(a)(6) ............................................................................................. 4

15 U.S.C. §78u-4(b)(1) ............................................................................................. 1

RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

Court-appointed Lead Counsel, Glancy Prongay & Murray LLP ("GPM"), respectfully request the Court grant their motion for a preliminary award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the Settlement Fund. Lead Counsel also seeks reimbursement of: (i) $23,953.30 in out-of-pocket expenses advanced by counsel, and (ii) $1,000 for Lead Plaintiff Michael G. Quinn ("Plaintiff"), as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. §78u-4(a)(4).[1]

## I.   PRELIMINARY STATEMENT

The proposed Settlement, which provides for a non-reversionary cash payment of $1.0 million in exchange for the resolution of the Action, represents an excellent result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Plaintiff would have needed to overcome to prevail in this complex securities fraud case. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The risk of losing was very real, enhanced by the fact that Plaintiff would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. §78u-4(b)(1) and (3)(B); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008) ("Due in large part to the enactment of the . . . PSLRA . . . plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6).").[2] And the risk was even greater here

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation of Settlement dated April 6, 2022 (ECF No. 65-1) (the "Stipulation") or the concurrently-filed Declaration of Casey E. Sadler (the "Sadler Declaration" or "Sadler Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Sadler Declaration.

[2] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

because Defendants were located abroad and argued dismissal on *forum non conveniens* grounds, among others, which (if accepted) would have left U.S. investors without recourse.

Indeed, success was far from a forgone conclusion and, even if Plaintiff prevailed at the pleading stage, he would still have to **prove** his case. There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, *L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Despite these risks, Lead Counsel worked over 303.90 hours on behalf of the Settlement Class and advanced $23,953.30 in costs and expenses, all on a fully contingent basis.

As compensation for Lead Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 25% of the Settlement Fund, the "benchmark" in the Ninth Circuit. Lead Counsel believe an award of 25% properly reflects the many significant risks taken by Lead Counsel, as well as the excellent result achieved in a difficult litigation. When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable and well within the range of attorneys' fees awarded in similar complex, contingency cases.

Lead Counsel also seek reimbursement of $23,953.30 in out-of-pocket litigation expenses incurred in prosecuting this Action. *See* ¶¶21-22, 25-26. The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Plaintiff respectfully requests a PSLRA award in the amount of $1,000 to compensate him for the time and effort he expended on behalf of the Settlement Class. ¶21. Plaintiff, *inter alia*, familiarized himself with the facts of the case, reviewed filings, produced documents to Lead Counsel, conferred with Lead Counsel regarding the litigation and settlement strategies, and authorized his attorneys to settle the case. ¶23. But for Plaintiff's "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Sadler Declaration, Lead Counsel respectfully request that the Court preliminarily award attorneys' fees equal to 25% of the Settlement Fund, approve reimbursement of $23,953.30 in litigation expenses incurred by Lead Counsel, and grant payment of $1,000 to the Plaintiff pursuant to the PSLRA.

## II. THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A. Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

Moreover, courts have repeatedly recognized that it is in the public interest to

have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("[P]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets[.]") (internal quotation marks omitted). As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

**B. The Requested Attorneys' Fee Award Should Be A Percentage Of The Fund**

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). For these reasons, Lead Counsel respectfully request that the Court

award attorneys' fees in this case on a percentage-of-the-fund basis. *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires.").

### C.   The Requested Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-51. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

### 1.   The Quality Of The Result Supports The Fee Request

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class."). Lead Counsel submits that the $1.0 million proposed Settlement is an outstanding result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Plaintiff's damages expert estimates that *if* Plaintiff had fully prevailed on his

claims at both summary judgment and after a jury trial, *if* the Court certified the same class period as the Settlement Class Period, *and if* the Court and jury accepted Plaintiff's damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*, Plaintiff's best-case scenario—estimated total maximum class-wide damages would be approximately $7.9 million. *See* ECF No. 72 at ¶5 (explaining that if Plaintiff were to entirely prevail on his claims and recover 100% of the damages flowing from the two alleged corrective disclosures, would total $7,926,522); *see also* ECF No. 72-1 at ¶17.

This case was not, however, risk-free, and there were meaningful barriers to recovery. Obstacles included both the well-known general risks inherent in complex securities litigation, as well as the specific risks in this case. *See* ¶¶16-19; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").

Moreover, the estimated maximum damages assumes Plaintiff is given full credit for both of the respective stock drops and does not take into account any disaggregation arguments that Defendants raised and would likely continue to raise. ¶18. Defendants had already challenged loss causation in their motion to dismiss (*see* ECF No. 56 at 24-25) and even if Plaintiff succeeded in defeating the motion, he still would have been required to show what portion of his loss is attributable to actionable issues versus non-actionable factors. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (other forces contributing to an investment's decline "will not bar recovery under the loss causation requirement but will play a role in determining recoverable damages."). This would not be an easy task, would rely heavily on expert testimony, and if Defendants' arguments were accepted by the Court or a jury, the Settlement Class's maximum potential damages would have been substantially reduced, if not completely eliminated. *See Destefano v. Zynga, Inc.*, 2016 WL

537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

Given the range of possible results in this litigation, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### 2. The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); Ex. 3 (*Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at p. 18 (Fig. 17)) ("Recent annual dismissal rates have been closer to

50%.")).[3]  This Action was no exception.

While Lead Counsel believe that the claims of Plaintiff and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial risks in the litigation and that Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re NASDAQ Market-Makers Antitrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise)."); *In re Waste Mgmt., Inc. Sec Litig.*, 2002 WL 35644013, at \*28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end.").  Nevertheless, Lead Counsel accepted the challenge.

For example, Defendants asserted that Plaintiff could not establish loss causation for any of the purported disclosures dates.  Although Plaintiff believed that he had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, it would have dramatically limited or foreclosed any potential recovery.  ¶18; *see also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no

---

[3] *See also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.").

means assured.").

Defendants also asserted that the Court should dismiss the case on *forum non conveniens* grounds because of an existing class action securities case on behalf of shareholders already in process in Canada.  ECF No. 56 at 6-12.  Defendants also argued that their statements were not actually false and misleading and that, even if they were, they were not made with scienter.  *Id*. at 14-23.  While Plaintiff believes that these arguments are without merit, Defendants' arguments were not illusory, and there existed a very real risk of dismissal of the Action pursuant the stringent pleading standards of the PSLRA.  There is simply no guarantee that the case would have ever progressed past the pleading stage.  *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Even assuming Plaintiff prevailed past the pleading stage, there still existed major obstacles to ***proving*** liability and damages.  For example, to defeat a summary judgment motion and prevail at trial, Plaintiff would have to prove by a preponderance of the evidence, among other things, that Defendants made materially false and/or misleading statements about the Company's financials and related party transactions and that Individual Defendants had the requisite scienter in connection with such statements and omissions.  Each of these are subjective, fact based inquiries, and the trier of fact could easily have determined that the evidence supported Defendants' version of the events.  *See Gross v. GFI Group, Inc.*, 784 F. App'x 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("As with falsity, although Plaintiffs

uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition.").

In sum, the risks posed by litigation were substantial, and they were present every step of the way.

### 3. The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award," *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long record of successfully prosecuting securities cases throughout the country, including within this Circuit. *See* ¶14; *see also* Ex. 1 (GPM firm resume); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019) ("Lead Counsel [GPM] has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy."). Lead Counsel respectfully submit that the quality of their efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate a favorable settlement.

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337

(C.D. Cal. 1977).[4]  Defendants in this Action were represented by Katten Muchin Rosenman LLP, which is a capable and well-respected law firm, whose brief filed in support of Defendants' motion to dismiss reflected a vigorous defense.  ¶15.  Lead Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### 4.    The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the fee.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").  Here, Lead Counsel has received no compensation to date, invested 303.90 hours of work equating to a total lodestar of $182,872.50, and advanced expenses of $23,953.30 in prosecuting and resolving this Action.  Additional work in implementing the Settlement and claims administration will also be required.[5]  Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real.  Lead

---

[4] *See also In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).

[5] *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (finding a 33% fee award was reasonable considering the additional work required by counsel for plaintiffs including overseeing the claims process, responding to inquiries, and assisting class members with claim forms.).

Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re: Korean Ramen Antitrust Litig.*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in a case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles); *see also* ¶19.

And Lead Counsel is not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980 994 (D. Minn. 2005).[6] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on

---

[6] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (summary judgment to defendants after eight years of litigation and plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million).

loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[7]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result and that such a result would only be realized after substantial amounts of time, effort, and expense had been expended. Nevertheless, Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *NASDAQ Market-Makers*, 187 F.R.D. at 488; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("In complex cases, such as this, the risk of no recovery is substantial and must be balanced against an expectation of a sizeable award.").

### 5. A Benchmark Fee Award Of 25% Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. 886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same). However, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,"); *Singer v. Becton Dickinson and*

---

[7] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

*Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (awarding 33.33% common fund and noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases"); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. 2009) ("[I]n most common fund cases, the award exceeds that benchmark"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (awarding 33⅓% and stating "the exact percentage varies depending on the facts of the case and in most common fund cases, the award exceeds that [25%] benchmark.").

"This is particularly true in securities class actions such as this." *In re American Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. 2014); *see also Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming a 33% award of $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of the $1.725 recovery); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]")).

In view of the outstanding result obtained, the contingent fee risk, the number of hours dedicated to this matter by Lead Counsel, the financial commitment of Lead Counsel, and the important public policy advanced by securities litigation such as this, it is respectfully submitted that an award of 25% of the recovery obtained for the Settlement Class is appropriate. *See, e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases."); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil

enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

### 6.    The Reaction Of The Settlement Class Is Not Applicable

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *see also OmniVision*, 559 F. Supp. 2d at 1048.  Since the Court has yet to preliminarily approve the Settlement and order notice to be sent to Settlement Class Members, there is currently no way to assess the reaction of the Settlement Class to the Settlement. As such, this factor is neutral at this time.

### D.    A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also Vizcaino,* 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016).  "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Graulty*, 886 F.2d at 272.  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of

representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at \*22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009); *see also In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at \*23 (C.D. Cal. Jul. 28, 2014) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").[8]  In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 303.90 hours to the prosecution of the Action. ¶9. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a declaration that includes a schedule breaking down the firm's lodestar by individual, position, billing rate, and hours billed. *Id.*; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d

---

[8] *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at \*7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check").

294, 306–07 (3d Cir. 2005) ("[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records").  Based on current hourly rates,[9] Lead Counsel's lodestar is $182,872.50. ¶9.[10] Thus, the 25% fee request (equal to $250,000), yields a multiplier of 1.37.

A multiplier of 1.37 is well within the range of, and even below, multipliers commonly awarded in securities class actions and other complex litigation.  *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Steiner v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) (approving multiplier of just under 2.2 in securities fraud class action); *In re Mannkind Corp. Sec. Litig.*, 2012 WL 13008151, at *8 (C.D. Cal. Dec. 21, 2012) (approving multiplier of 2.3 in securities fraud class action); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country"); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *1-*2 (N.D. Cal. June 30, 2011) (awarding 25% fee and stating

---

[9] Courts use current rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[10] Lead Counsel's rates range from $750-$875 for partners, and $450-$625 for non-partners (¶11), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021); *see also* Ex. 2 (chart of peer law firm billing rates).

"a multiplier of 4.3 is reasonable"); *Retta v. Millennium Prods. Inc.*, 2017 WL 5479637, at \*13 (C.D. Cal. Aug. 22, 2017) (approving multiplier of "roughly" 3.5); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range of reasonable multipliers.").

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017); *see also Facebook,* 2015 WL 6971424, at \*10.  Indeed, among other things, Lead Counsel will move for final approval of the Settlement, oversee the claims administration process, respond to shareholder inquiries, and prepare and present a motion to distribute the Settlement Fund to the Court.  The multiplier will, therefore, diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work.

In sum, Lead Counsel's requested fee award is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.  *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-

pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

In the aggregate, Lead Counsel have incurred expenses in the amount of $23,953.30 while prosecuting the Action, as set forth in the Sadler Declaration, ¶¶22, 25-26. The expenses consisted of the retention of experts ($21,656.00) and service of process ($2,297.30). Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and are the types of expenses routinely charged to clients who pay hourly. They should, therefore, be reimbursed out of the common fund. *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").

**IV.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA**

In connection with Lead Counsel's request for reimbursement of Litigation Expenses, Lead Counsel also seek reimbursement of $1,000 in costs and expenses incurred by Plaintiff. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the

class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

Here, Plaintiff took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiff in the Action; (ii) reviewing the pleadings in the action; (iii) communicating regularly with Lead Counsel regarding the posture and progress of the case, as well as strategy; (iv) producing documents to Lead Counsel; (v) consulting with Lead Counsel regarding settlement negotiations; and (vi) evaluating and approving the proposed Settlement.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009).  Consequently, Lead Counsel respectfully request that the Court grant Plaintiff's request for reimbursement of "[his] reasonable costs and expenses incurred in managing this litigation and representing the Class."  *Id.* at *21; *see also Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *In re K12*, 2019 WL 3766420, at *2 (awarding $5,500 to lead plaintiff pursuant to PSLRA); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff); *In re Xcel*, 364 F. Supp. 2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

## V.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court

grant the fee and expense application.

DATED:  September 26, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Casey E. Sadler*
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
csadler@glancylaw.com

*Counsel for Plaintiff Michael G. Quinn and Lead Counsel for the Class*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On September 26, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 26, 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler

---

MEMO. ISO MOTION FOR PRELIMINARY AWARD OF ATTORNEYS' FEES AND EXPENSES