Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com

*Counsel for Lead Plaintiff Michael G.*
*Quinn and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:21-cv-03120-JVS-KES |
| Plaintiff, | **DECLARATION OF CASEY E. SADLER IN SUPPORT OF LEAD COUNSEL'S MOTION FOR A PRELIMINARY AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |
| v. | |
| CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH, | |
| Defendants. | |

DECLARATION OF CASEY E. SADLER

# **TABLE OF CONTENTS**

I.      THE FEE AND LITIGATION EXPENSE APPLICATION ..........................2

    A.      The Fee Application.................................................................3

        1.      The Work And Experience Of Lead Counsel..............................4

        2.      Standing And Caliber Of Defendants' Counsel ..........................6

        3.      The Risks Of Litigation And The Need To Ensure The Availability Of Competent Counsel In High-Risk Contingent Securities Cases ........................................................................6

    B.      The Litigation Expense Application ........................................8

II.     CONCLUSION .................................................................................9

# TABLE OF EXHIBITS TO DECLARATION

| EX. | TITLE |
|-----|-------|
| 1 | Glancy Prongay & Murray LLP Firm Resume |
| 2 | Table Of Law Firm Billing Rates |
| 3 | Excerpts of *Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021) |

I, Casey E. Sadler, hereby declare and state as follows:

1. I am an attorney admitted to practice before this Court. I am a partner with the law firm of Glancy Prongay & Murray LLP, the Court-appointed Lead Counsel for Lead Plaintiff Michael G. Quinn ("Plaintiff") and the proposed Settlement Class.[1] I have personal knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so.

2. I respectfully submit this Declaration in support of Lead Counsel's Motion for a Preliminary Award of Attorneys' Fees and Reimbursement of Litigation Expenses and the concurrently filed memorandum in support thereof (the "Fee Memorandum"). As set forth in the Fee Memorandum, Lead Counsel seeks a preliminary award of attorneys' fees in the amount of 25% of the Settlement Fund (which, by definition, includes interest accrued thereon); and reimbursement of Litigation Expenses in the total amount of $24,953.30, which includes Lead Counsel's total out-of-pocket litigation costs of $23,953.30 and $1,000 to Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs related to his representation of the Settlement Class.

3. The proposed Settlement provides for the resolution of all claims in the Action in exchange for a cash payment of $1,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. The proposed Settlement is the result of Lead Counsel's efforts, which included, among other things: (a) conducting a comprehensive investigation into the alleged claims, assisted by both an accounting expert and a loss causation and damages expert; (ii) drafting the highly-detailed amended complaint based on the investigation; (iii) analyzing and researching Plaintiff's response to Defendants' motion to dismiss; (iv) negotiating at arms' length

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 6, 2022 (ECF No. 65-1, the "Stipulation").

to reach a potential resolution of the Action; (v) negotiating and executing the Stipulation and its exhibits; (vi) drafting and filing the preliminary approval papers in support of the Settlement; and (vi) responding to legal issues related to preliminary approval raised by the Court, including showing that the Court is empowered to grant class relief with respect to transactions on the OTC Market under *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247 (2010) and providing further information regarding the superiority of the Settlement and the amount of damages at issue, the extent of discovery conducted, and the confidential, Opt-Out Agreement.

4.     Based on the foregoing efforts, Plaintiff and Lead Counsel are well aware of the strengths and weaknesses of the claims and defenses in the Action, and believe the Settlement represents a highly favorable outcome for the Settlement Class and is in the best interests of its members.

5.     As discussed in detail in the accompanying Fee Memorandum, the requested 25% fee is the benchmark in the Circuit and is thus squarely within the range of percentage awards granted by courts in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check and warranted in light of the extent and quality of the work performed and the substantial result achieved.  Likewise, the requested out-of-pocket litigation costs of $23,953.30 and the requested PSLRA award of $1,000 to Lead Plaintiff is also fair and reasonable.  Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses be approved.

## I.     THE FEE AND LITIGATION EXPENSE APPLICATION

6.     Lead Counsel are applying to the Court for an award of attorneys' fees of 25% of the Settlement Fund (or $250,000, plus interest earned at the same rate as the Settlement Fund).  Lead Counsel are also requesting reimbursement of out-of-pocket expenses incurred by Lead Counsel in connection with the prosecution of the

Action from the Settlement Fund in the amount of $23,953.30. Finally, pursuant to 15 U.S.C. § 78u-4(a)(4), Lead Counsel are requesting reimbursement to Plaintiff in the total amount of $1,000 for costs, including lost wages, incurred in representing the Settlement Class. The legal authorities supporting the requested fee and reimbursement of Litigation Expenses are set forth in the concurrently-filed Fee Memorandum. The primary factual bases for the requested fee and reimbursement of Litigation Expenses are summarized below.

## A. The Fee Application

7. For their efforts on behalf of the Settlement Class, Lead Counsel are applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class. As set forth in the accompanying Fee Memorandum, the percentage method is the best method for determining a fair attorneys' fee award in common fund cases like this one because, unlike the lodestar method, it aligns the lawyers' interest with that of the Settlement Class. The lawyers are motivated to achieve maximum recovery in the shortest amount of time required under the circumstances. This paradigm minimizes unnecessary drain on the Court's resources. Notably, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court and Ninth Circuit for cases of this nature.

8. Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is fair and reasonable and should be approved. As discussed in the Fee Memorandum, Lead Counsel are seeking the Ninth Circuit's 25% "benchmark award," which is well within the range of percentages awarded in securities class actions with comparable settlements in this Circuit.

DECLARATION OF CASEY E. SADLER

3

## 1.   The Work And Experience Of Lead Counsel

9.     As detailed in the table below, GPM's total lodestar is $182,872.50,[2] consisting of $160,550.00 for attorney time and $22,322.50 for professional support staff time:

| TIMEKEEPER/CASE | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **ATTORNEYS:** | | | | |
| Robert Prongay | Partner | 35.50 | 875.00 | 31,062.50 |
| Casey Sadler | Partner | 101.30 | 750.00 | 75,975.00 |
| Melissa Wright | Senior Counsel | 54.30 | 625.00 | 33,937.50 |
| Pavithra Rajesh | Senior Counsel | 43.50 | 450.00 | 19,575.00 |
| **TOTAL ATTORNEY** | **TOTAL** | **234.60** | | **160,550.00** |
| **PARALEGALS:** | | | | |
| Harry Kharadjian | Senior Paralegal | 19.60 | 325.00 | 6,370.00 |
| Paul Harrigan | Senior Paralegal | 31.70 | 325.00 | 10,302.50 |
| John D. Belanger | Research Analyst | 5.00 | 350.00 | 1,750.00 |
| Gabrielle Zavaleta | Research Analyst | 13.00 | 300.00 | 3,900.00 |
| **TOTAL PARALEGAL** | **TOTAL** | **69.30** | | **22,322.50** |
| **TOTAL LODESTAR** | **TOTAL** | **303.90** | | **182,872.50** |

10.    The table above sets forth the amount of time GPM attorneys and professional support staff billed from inception of the Action through and including September 22, 2022 and the lodestar calculation for those individuals based on GPM's current billing rates.

11.    GPM's attorneys and professional support staff rates have recently been accepted as reasonable by other courts when performing a lodestar cross-check, including Courts in the Ninth Circuit. *See Lea v. Tal Education Group*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (finding GPM's rates "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." (citation omitted)); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *2 (N.D. Cal. Nov. 5,

---

[2] The lodestar figure contains only the time of GPM attorneys and professional staff that billed 5 hours or more to the Action.

2021); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019).[3] Additionally, when determining the market rate by looking at fees awarded in similar cases, the rates billed by Lead Counsel (ranging from $450-$625 per hour for non-partners and $750-$875 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 2 attached hereto (table of peer plaintiff and defense law firm billing rates).

12. The lodestar table was prepared from contemporaneous daily time records regularly prepared and maintained by GPM. Time expended on the Fee and Expense Application has not been included in the lodestar. Nor does the lodestar include any of the time that will be spent overseeing the claims administration process, drafting and presenting the motion for final approval of the Settlement to the Court, preparing for and attending the final approval hearing, responding to Settlement Class Members inquiries, and briefing the Motion for Class Distribution Order.

13. The requested fee of 25% of the Settlement Fund represents $250,000 (plus interest), which equates to a multiplier of 1.37 on this lodestar. The 1.37 multiplier is fair and reasonable based on the risks of the litigation, the quality of the representation, and the results obtained. As discussed in further detail in the Fee Memorandum, the requested multiplier is within the range of fee multipliers often awarded in comparable securities class actions and in other complex litigation involving significant contingency fee risk in this Circuit.

14. As demonstrated by the firm résumé attached as Exhibit 1 hereto, Lead Counsel are experienced in the securities litigation field, with a long and successful track record representing investors in such cases. GPM has successfully prosecuted

---

[3] As stated in the Fee Memorandum, GPM's rates are substantially the same as rates that have been accepted by other courts in the Ninth Circuit in similar complex litigation.

securities class action cases and complex litigation in federal and state courts throughout the country.  I respectfully submit that the Settlement (and its quality) was due to counsel's hard work, persistence, and skill—and that their diligence and the results achieved both fully merit the requested fee.

### 2. Standing And Caliber Of Defendants' Counsel

15.   The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, Defendants were represented by Katten Muchin Rosenman LLP, which is a capable and well-respected law firm that vigorously represented the interests of their clients throughout this Action.  In the face of this experienced and formidable opposition, Lead Counsel were nonetheless able to persuade Defendants to settle the case on terms that I believe are favorable to the Settlement Class.

### 3. The Risks Of Litigation And The Need To Ensure The Availability Of Competent Counsel In High-Risk Contingent Securities Cases

16.   This Action was undertaken by Lead Counsel on an entirely contingent-fee basis.  From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, to ensure that funds were available to compensate attorneys and staff, and to cover the considerable litigation costs required by a case like this.

17.   With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Lead Counsel received no compensation during the course of the Action and incurred $23,953.30 in out-of-pocket litigation-related expenses in prosecuting the Action.

18.    Lead Counsel also bore the risk that no recovery would be achieved. From the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever.  For example, Plaintiff's damages expert estimate of total maximum class-wide damages of $7.9 million assumes Plaintiff is given full credit for both of the respective stock drops and does not take into account any disaggregation arguments that Defendants raised and would continue to raise in their motion to dismiss.  Had Defendants' arguments been accepted in whole or in part, they would have dramatically limited or foreclosed any potential recovery.  Even if Plaintiff succeeded in defeating Defendants' motion to dismiss, he still would have been required to show what portion of his loss is attributable to actionable issues versus non-actionable factors.

19.    Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in contingent litigation is never assured. In fact, GPM recently lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs.  *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.).Lead Counsel also litigated a securities class action in the Southern District of New York for approximately five years and, after surviving a motion to dismiss, successfully obtaining class certification and undertaking significant discovery efforts, which included depositions throughout the U.S. and in the U.K. and substantial document review, summary judgment was entered for defendants, and the judgment was affirmed on alternative grounds on appeal to the Second Circuit.  *Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 29 (2d Cir. 2019).  Put another way, complex litigation is uncertain, and success in cases like this one is never guaranteed.

20.    Lead Counsel's extensive efforts in the face of substantial risks and uncertainties have resulted in a significant recovery for the benefit of the Settlement

Class.  In circumstances such as these, and in consideration of the hard work and the result achieved, I respectfully submit that the requested fee is reasonable and should be approved.

### B.     The Litigation Expense Application

21.     Lead Counsel seek a total of 24,953.30 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes $23,953.30 in out-of-pocket costs reasonably and necessarily incurred by Lead Counsel in connection with commencing, litigating, and settling the claims asserted in the Action and $1,000 in costs, including lost wages, incurred by Plaintiff.

22.     Lead Counsel are seeking reimbursement of a total of $23,953.30 in out-of-pocket costs and expenses:

| CATEGORY OF EXPENSE | AMOUNT |
|---|---|
| EXPERTS | 21,656.00 |
| SERVICE OF PROCESS | 2,297.30 |
| GRAND TOTAL | 23,953.30 |

23.     As stated above, Plaintiff seeks reimbursement, pursuant to 15 U.S.C. §78u-4(a)(4), of his reasonable costs (including lost wages) directly incurred in connection with his representation of the Settlement Class, in the amount of $1,000.  Plaintiff was active in this litigation, reviewing pleadings and discussing strategy with his counsel, and ultimately approving the Settlement.  Based on my understanding of the work he performed on behalf of the Settlement Class, I believe that the requested award is justified.

24.     From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses, and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until such time as the Action might be successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced by them to prosecute the Action.

Accordingly, Lead Counsel were motivated to, and did, take appropriate steps to avoid incurring unnecessary expenses and to minimize costs without compromising the vigorous and efficient prosecution of the case.

25.     Of the total amount of Lead Counsel's out-of-pocket costs and expenses, $21,656.00 or 90.4%, was expended on Plaintiff's experts. Plaintiff retained an expert in the fields of loss causation and damages to assist in the prosecution of the Action. Beyond assisting in the development of Plaintiff's theories of the case and drafting of the complaints, Plaintiff's expert on damages and loss causation assisted Lead Counsel's event study which is the basis for the proposed Plan of Allocation. Additionally, Plaintiff retained an accounting expert to assist counsel in understanding the complex accounting issues relevant in the Action, including the proper methods for accounting for the various transactions at issue and understanding appropriate accounting standards relevant to the Canadian company, and assisted Lead Counsel in drafting the amended complaint and analyzing Defendants' motion to dismiss.

26.     The other component Lead Counsel's out-of-pocket costs and expenses was for service of process of Defendants. Defendants were all located in Canada and Lead Counsel had to hire an international process server to locate and serve Defendants. The charges for service of process amounted to $2,297.30, or 9.6% of the total amount of out-of-pocket expenses.

27.     In my opinion, the Litigation Expenses incurred by Lead Counsel and Plaintiffs were reasonable and necessary to represent the Settlement Class and achieve the Settlement. Accordingly, Lead Counsel respectfully submits that the Litigation Expenses should be reimbursed in full from the Settlement Fund.

## II.     CONCLUSION

28.     For all the reasons set forth above, I respectfully submit that that the requested fee in the amount of 25% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses in the

amount of $24,953.30 (which includes $1,000 for Plaintiff's costs) should also be approved.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 26th day of September 2022, in Los Angeles, California.

*s/ Casey E. Sadler*
Casey E. Sadler

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On September 26, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 26, 2022, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler