UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 21-3120 JVS (KESx)                           Date  November 1, 2022

Title  Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Present: The Honorable  **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motion for Preliminary Approval of Class Action Settlement & Related Motions**

Lead Plaintiff Michael G. Quinn ("Plaintiff") moves for preliminary approval of his class action settlement with Defendants Champignon Brands Inc., now known as Braxia Scientific Corp. ("Champignon" or "Braxia" or the "Company"), Gareth Birdsall, and Matthew Fish ("Fish") (collectively, "Defendants"). Mot., Dkt. 63. The motion is unopposed.

On August 9, 2022, the Court issued a Tentative Order identifying several deficiencies in the evidence provided in the motion. See Supplemental Decl. of Casey Sadler ("Sadler Decl."), Dkt. 72 ¶ 2. The Court granted leave for Plaintiff to file a supplemental submission in further support of the preliminary settlement motion, Dkt. 71, which Plaintiff did on August 31, 2022. Supplemental Submission In Support of Mot. ("Mot. Supp."), Dkt. 72.

On September 14, 2022, the Court issued an Order for Plaintiff to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation. Order, Dkt. 74.

On September 23, 2022, Champignon moved to vacate in part the September 14, 2022, Order insofar as the motion for preliminary approval of the class action was held in abeyance. Mot., Dkt. 76.

On September 26, 2022, Plaintiff filed a motion for preliminary award of attorneys' fees and reimbursement of litigation expenses, as requested by the Court. Mot., Dkt. 80. The motion is unopposed. See Not., Dkt. 83.

| CV-90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 28 |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 21-3120 JVS (KESx)                    Date    November 1, 2022

Title    Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

The Court heard oral arguments on October 24, 2022.

For the following reasons, the Court **GRANTS** the motions for preliminary
approval of class action settlement.  The Court **DENIES** the motion to vacate as moot.

## I. BACKGROUND

### A.    Allegations

This is a federal securities class action on behalf of those who purchased or
acquired Champignon securities between March 27, 2020 and February 17, 2021 (the
"Class Period").  First Amended Complaint ("FAC"), Dkt. 40, ¶ 1.

Champignon is a corporation focused on the formulation and manufacturing of
novel ketamine, anesthetics, and adaptogenic delivery platforms for nutraceutical and
psychedelic medicine while being supported by a leading psychedelics medicines clinic
platform.  Id. ¶ 22.  It is also pursuing the development and commercialization of rapid
onset treatments capable of improving health outcomes, such as depression and post-
traumatic stress disorder ("PTSD") as well as substance and alcohol use disorders.  Id. ¶
22.  Champignon, which is now known as Braxia Scientific Corp., is incorporated under
the laws of British Columbia and its primary office is located in Mississauga, Ontario,
Canada.  Id. ¶ 14.  Gareth Birdsall founded Champignon and was its President and
Secretary until May 6, 2020, its CEO until May 11, 2020, and a director of the company
until November 23, 2020.  Id. ¶ 16.  Fish was the Champignon's president since May
2020 and a director since August 2019.  Id. ¶ 19.  During the Class Period, Champignon's
shares traded on the Canadian Securities Exchange under the ticker symbol "SHRM" and
on the quotation board of the Frankfurt Stock Exchange under the ticker symbol "496."
Id. ¶ 14.  Champignon's common shares also traded on the OTC Pink Open Market until
April 23, 2020, when its shares began trading on the OTCQB Venture Markets Group.
Id.

Plaintiffs allege that on February 28, 2020, Champignon closed its initial public
offering and began trading on the Canadian Securities Exchange (the "CSE") on March 2,
2020.  Id. ¶ 24.  In the offering, Champignon issued 18,916,667 common shares at a price
of $0.15 per share for total gross proceeds of $2,837,500.05.  Id.  Thereafter,
Champignon's shares began trading on the OTC on March 17, 2020.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

With funds obtained and the shares issued in the offering, Champignon began acquiring entities in a massive purported expansion of the scope and scale of the business. Id. ¶ 25. In March and April 2020, Champignon acquired four entities: Artisan Growers Ltd., Novo Formulations Ltd., Tassili Life Sciences Corp., and AltMed Capital Corp (the "Acquisitions"). Id. According to Champignon, these Acquisitions, among other things, "expand[ed] the Company's preclinical trial pipeline, as well as its aggregation of broad intellectual property," "accelerate[d] the architecture of Champignon's patent portfolio" and "secur[ed] valuable infrastructure to expedite [its] R&D pursuits." Id. These four Acquisitions cost the Company more than $90 million and resulted in its stock skyrocketing from $0.295 per share and $6.05 million market capitalization at the start of the Class Period to $1.34 per share and $108 million market capitalization by the end of May. Id. ¶ 26. However, this stock appreciation was short-lived because the acquired companies were unprofitable, and Champignon had failed to account for these transactions accurately under applicable accounting principles or document them in accordance with Canadian securities law.

Plaintiffs allege that in reality, three of the acquired companies were not actual business as they had been incorporated mere months before Champignon acquired them and lacked any valuable assets such as intellectual property. Id. ¶ 28. Ultimately, Champignon admitted that it immensely overpaid for the three companies, and the transactions essentially enriched Champignon's CEO's brother, Lucas Birdsall, who was a shareholder in each of the four companies and received a substantial number of Champignon shares in connection with the acquisitions. Id.

While Lucas Birdsall's involvement was never disclosed during the Class Period, Champignon issued a press release on February 17, 2021, revealing, among other things, that "a shareholder and contracted consultant . . . of the Company was a related party with respect to the Acquisitions." Id. ¶ 77. As a result, the financial statements and management discussion and analysis ("MD&A") would "include additional disclosure details with respect to related party transactions involving the Consultant." Id. ¶ 77. It still did not identify the related party. Id. The press release also noted that Champignon would restate its financial results for the three and six month periods ending March 31, 2020. Id. ¶ 78. Specifically, it stated that "the Company previously recognized intangible assets in connection with the [A]cquisitions . . . that aggregated to approximately $12 million." Id. The restatement would "correct the accounting for the Acquisitions as the assets do not meet the definition of intangible assets for the purposes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

of international financial reporting standards and as a result will be recorded as transaction costs in the Company's statement of loss and comprehensive loss." Id.  On this news, the Company's stock price fell 10.8% to close at $0.687 per share on February 17, 2021, on unusually heaving trading volume.  Id. ¶ 79.

On March 11, 2021, the Company finally identified Lucas Birdsall as the related party to the Acquisitions.  Id. ¶ 80.  In the financial statements for 2Q20 (the "Restated 2Q20 Report"), the Company stated:

> The Company has also identified a significant shareholder and contracted consultant of the Company (the "Consultant") as a related party for reporting purposes as the Consultant exerted significant influence over the Company.  The Consultant was also a shareholder of Artisan Growers, Novo [NFL] and Tassili and was issued common shares of the Company for these three acquisitions (Notes 3 and 9).  In addition, the Consultant was paid $20,000 and issued 1,400,000 options to acquire common shares of the Company during the six month period ended March 31, 2020.

The MD&A accompanying the Restated 2Q20 Report identified this Consultant as Lucas Birdsall, Defendant Gareth Birdsall's brother.  Id.  The consulting agreement was terminated in November 2020.

The Restated 2Q20 Report also restated the accounting of the acquisitions, effectively reporting that the value of the "intellectual property" in the acquisitions was zero.

**B.      Procedural History**

On April 10, 2021, a class action complaint was filed in this Court.  Dkt. 1.  On June 9, 2021, a number of movants applied for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act (the "PSLRA").  Dkt. 10, 15, 20.  On June 29, 2021, the Court appointed Plaintiff Michael G. Quinn as lead plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP as Lead Counsel for the class. Dkt. 28.

Lead Counsel then conducted a comprehensive investigation into Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 21-3120 JVS (KESx)          Date  November 1, 2022

Title  Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

allegedly wrongful acts. Mot. at 2. On November 3, 2021, Quinn filed and served the Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") based on counsel's investigation. See Dkt. 40. The Complaint asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants. Id. Defendants moved to dismiss the Complaint on December 20, 2021. Dkt. 55–58.

While Plaintiff was preparing his opposition to Defendant's motion to dismiss, the Parties began exploring potential settlement. Mot. at 3. On January 13, 2022, Quinn served a confidential settlement demand on Defendants. Dkt. 59. The parties reached an agreement, and on February 25, 2022, the parties executed a term sheet memorializing the material terms of the settlement. See Dkt. 65-1 (the "Term Sheet").

On April 7, 2022, Plaintiff moved for preliminary settlement approval. Mot., Dkt. 63. On August 9, 2022, the Court issued a Tentative Order identifying several deficiencies in the evidence provided in the Motion. See Supplemental Decl. of Casey Sadler ("Supp. Sadler Decl."), Dkt. 72 ¶ 2. The Court granted leave for Plaintiff to file a supplemental submission in further support of the preliminary settlement motion, Dkt. 71, which Plaintiff did on August 31, 2022. Plaintiff also filed a submission for *in camera* review. Dkt. 73. On September 14, 2022, the Court issued an Order for Plaintiff to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation. Order, Dkt. 74. On September 26, 2022, Plaintiff filed a motion for preliminary award of attorneys' fees and reimbursement of litigation expenses.

The Court has not yet certified a class or resolved any disputes on the merits of this case.

**B.      Summary of the Proposed Settlement**

*1.      The Proposed Settlement Class*

The parties stipulate and agree to certification of the following class for purposes of settlement (the "Settlement Class"):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

All persons and entities that purchased or acquired [Champignon] shares on the OTC Market between March 27, 2020 and February 17, 2021, inclusive (the "Settlement Class Period") and were injured thereby.  Excluded from the Settlement Class are (a) persons who suffered no compensable losses; and (b) (i) Defendants, (ii) the legal representatives, heirs, successors, assigns, and members of the immediate families of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of [Champignon]; (iv) any person who served as an Officer and/or director of [Champignon] during the Settlement Class Period; (v) any entity in which any of the foregoing (i)–(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendant is the grantor or settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her immediate family; . . . (d) Defendants' liability insurance carriers[; and (e)] any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

Proposed Order, Dkt. 63-1, at 2–3.  The Complaint alleges that

[w]hile the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the [P]roposed Class.  Millions of Champignon shares were traded publicly during the Class Period on the OTC.

FAC ¶ 136.

  2.    *Settlement Amount*

Under the terms of the Settlement Agreement, Champignon will pay $1,000,000 cash to fund the settlement of the claims (the "Settlement Fund").  See Stipulation and Agreement of Settlement, Dkt. 65-1 ("Settlement Agreement), at p. 3, ¶ I; p. 11, ¶ (tt). The Settlement Fund shall be used to pay: (a) any taxes; (b) any notice and administration Costs; (c) any litigation expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  Id. ¶ 10.  Then, the remaining balance (the "Net Settlement Fund"), shall be distributed to Settlement Class members.  Id.

  3.    *Attorneys' Fees and Costs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 21-3120 JVS (KESx)                    Date    November 1, 2022

Title    Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Lead Counsel requests a preliminary award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the Settlement Fund. Memo., Dkt. 77, at 1. Lead Counsel also seeks reimbursement of $23,953.30 in out-of-pocket expenses and $1,000 of reasonable costs and expenses for Lead Plaintiff, paid from the Settlement Fund. Id.

### 4.    Administrative Expenses

The Settlement Agreement states that "Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further notice of the Court, all Notice and Administration Costs actually incurred and payable." Settlement Agreement, ¶ 15. The Agreement does not include a maximum amount to be allocated for administration costs.

### 5.    Release

The Settlement releases two types of claims (collectively, "Released Claims"). First, the Agreement provides a release for all "Released Defendants' Claims":

> "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Term Sheet or the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

Id. ¶¶ 1(oo), 6. Additionally, the Settlement Agreement provides for the release of all "Released Plaintiff's Claims":

> "Released Plaintiff's Claims" means any and all claims, debts, duties, losses, actions, suits, demands, controversies, rights, liabilities, obligations, judgments, damages, costs, restitution, rescission, interest, attorneys' fees, expert or consulting fees, expenses, matters, arguments, causes of action, and issues whatsoever, whether known claims or Unknown Claims, asserted or unasserted, accrued or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 21-3120 JVS (KESx)                    Date    November 1, 2022

Title    Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

unaccrued, liquidated or unliquidated, whether arising under federal, state, local, statutory, common foreign or administrative law or any other law, rule or regulation, whether fixed or contingent, at law or in equity, whether in the nature of class, individual, representative, or in other capacity, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase, acquisition, or sale of Braxia shares that traded on the OTC Market during the Settlement Class Period.  Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement or its terms; (ii) any claims related to the purchase, acquisition or sale of Braxia stock on the Canadian Stock Exchange or any other exchange besides the OTC Market; or (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

Id. ¶¶ 1(pp), 7.

   6.    *Notice*

Lead Counsel has selected Strategic Claims Services ("SCS") as the Claims Administrator, subject to Court approval.  See Mot. at 11.  The Settlement Agreement provides that within ten days of preliminary approval of this Settlement, Braxia will provide names and addresses of entities and individuals that acquired Braxia shares on the OTC Market during the Settlement Class Period.  Settlement Agreement, ¶ 20.  The Claims Administrator will provide notice to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  Id.; Proposed Order, ¶ 9; Mot. at 15.  The Claims Administrator shall also post downloadable copies of the Notice and Claim Form on a webpage hosting the Notice and Claim Form to Settlement Class Members (www.strategicclaims.net/Braxia/) (the "Settlement Webpage").  Settlement Agreement, ¶ 20.  The Settlement Webpage will also allow online claim submission.  Mot. at 15.  The Claims Administrator will then email links to the Settlement Webpage to class members for which it can identify email addresses, and mail by first-class mail, a copy of the Postcard Notice (Settlement Agreement, Ex. A-4), to any Settlement Class Members for which no email address can be obtained.  Settlement Agreement, ¶ 20.  No more than ten business days after mailing and emailing notice of the Settlement, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Claims Administrator will also have the Summary Notice published once in GlobeNewswire. Id.; Proposed Order, ¶ 7(d).

> 7.   *Claim Submission Process*

Settlement Class members who wish to receive a distribution from the Net Settlement Fund must submit a Claim Form online or via mail. Proposed Order, ¶ 10. All Claim Forms must be submitted or postmarked no later than one-hundred-twenty days after the Notice Date. Id. Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of the Settlement Agreement. Settlement Agreement, ¶ 23.

All Claim Forms must: (a) be properly completed, signed, and submitted in a timely manner and in accordance with the Preliminary Settlement Approval; (b) be accompanied by adequate supporting documentation for the transactions and holdings reported therein; (c) include a certification of the person executing the Claim Form's authority to act on behalf of the Settlement Class Member, if applicable; and (d) be complete and contain no material deletions or modifications of the printed matter contained therein and signed under penalty of perjury. Proposed Order, ¶ 11.

> 8.   *Opt-Out and Objection Process*

Settlement Class Members will be able to opt out of the Settlement Agreement by submitting a written request, to be received no later than twenty-one calendar days before the Settlement Hearing. Proposed Order, ¶ 13. The written exclusion request must include: (1) the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (2) a statement that such person or entity "requests exclusion from the Settlement Class in Schneider v. Champignon Brands Inc., Case No. 2:21-cv-03120; (3) the number of Braxia shares that the person or entity purchased/acquired and/or sold on the OTC Market during the Settlement Class Period, as well as the dates and prices of each purchase, acquisition, and sale; and (4) the signature of the person or entity requesting exclusion or an authorized representative. Id.

Any Settlement Class Member who does not opt out may object to the proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

settlement by submitting a written objection to the Court and serving copies of such objection on Lead Counsel and Defendants' Counsel such that they are received no later than twenty-one days prior to the Settlement Hearing. Id. ¶ 17. The objection must: (1) state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (2) contain a statement of the Settlement Class Member's objections and the specific reasons for each objection; and (3) include documents sufficient to prove membership in the Settlement Class, including the number of Braxia shares that the objecting Settlement Class Member purchased/acquired and/or sold on the OTC Market during the Settlement Class Period, and the dates and prices of each purchase, acquisition, and sale. Id. ¶ 18.

> 9.     *Revocation of Agreement*

The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion from the Settlement. Mot. at 12.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) states that "[t]he claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . or compromised only with the court's approval." "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)(ii).

## III. DISCUSSION

**A.     Whether it is Likely that the Court will be Able to Certify the Class**

Next, the Court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Accordingly, the Court must consider the class certification standards under Rule 23, and based on those standards must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." Lusk v. Five Guys Enterprises LLC, 2019 WL 7048791, at *5 (E.D. Cal. Dec. 23, 2019) (quoting Newberg on Class Actions § 13:18 (5th ed)).

A motion for class certification involves a two-part analysis. First, the plaintiffs must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The plaintiffs may not rest on mere allegations, but must provide facts to satisfy these requirements. Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) (citing Gillibeau v. Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).

Second, the plaintiffs must meet the requirements for at least one of the three subsections of Rule 23(b). Under Rule 23(b)(1), a class may be maintained if there is either a risk of prejudice from separate actions establishing incompatible standards of conduct or judgments in individual lawsuits would adversely affect the rights of other members of the class. Under Rule 23(b)(2), a plaintiff may maintain a class where the defendant has acted in a manner applicable to the entire class, making injunctive or declaratory relief appropriate. Finally, under Rule 23(b)(3), a class may be maintained if "questions of law or fact common to class members *predominate* over any questions affecting only individual members," and if "a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The plaintiffs bear the burden of demonstrating that Rule 23 is satisfied. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (2001). The district court must rigorously analyze whether the plaintiffs have met the prerequisites of Rule 23. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." Armstrong v. Davis, 275

---

CV-90 (06/04)                    **CIVIL MINUTES - GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

F.3d 849, 872 n.28 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504–05 (2005).  The district court need only form a "reasonable judgment" on each certification requirement "[b]ecause the early resolution of the class certification question requires some degree of speculation."  Gable v. Land Rover N. Am., Inc., No. SACV 07-0376 AG (RNBx), 2011 U.S. Dist. LEXIS 90774, at *8 (C.D. Cal. July 25, 2011) (internal quotation marks omitted); see also Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  This may require the court to "'probe behind the pleadings before coming to rest on the certification question,'" and the court "'*must* consider the merits' if they overlap with Rule 23(a)'s requirements."  Wang v. Chinese Daily News, 709 F.3d 829, 834 (9th Cir. 2013) (quoting Dukes, 564 U.S. at 351; Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011)).

　　1.　　*Rule 23(a) Prerequisites*

　　　　a.　　*Numerosity*

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be impracticable to join all members individually. In determining whether a proposed class is sufficiently numerous to sustain a class action, the court must examine the specific facts because the numerosity requirement "imposes no absolute limitations." Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 330 (1980).  While there is no exact cut-off, courts generally find that the numerosity requirement is satisfied when a class includes at least 40 members.  Mild v. PPG Indus., 2019 U.S. Dist. LEXIS 1244352, at *4 (C.D. Cal. Jul. 25, 2019) (citing Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)).  "[A] reasonable estimate of the number of purported class members satisfies the numerosity requirement."  In re Badger Mountain Irrigation Dist. Sec. Litig., 143 F.R.D. 693, 696 (W.D. Wash. 1992).

Although the exact number of Settlement Class members is presently unknown, the Complaint alleges that "Plaintiff believes that there are hundreds or thousands of members in the Proposed Class."  FAC, ¶ 136.  But, it cautions that "the exact number of Class members [was] unknown to Plaintiff at [the] time [the Complaint was drafted] and [could] only be ascertained through appropriate discovery."  Id.  While Plaintiffs' Motion for Preliminary Class Certification does not provide an updated estimate of the number of purported class members, it argues that it is "safe to infer" that numerosity is satisfied based on the average volume of Champignon's shares.  Mot. at 17. "The Court certainly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                     Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." In re Cooper Companies Inc. Securities Lit., 254 F.R.D. 628, 634 (C.D. Cal. Jan. 5, 2009).

Here, Plaintiffs contend that numerosity is satisfied because "[t]hroughout the Settlement Class Period, [Champignon's] stock was actively traded on the OTC Market, with an average trading volume of 170,145,660 shares." Mot. at 17. (citing Karam v. Corinthian Colleges Inc., 2017 WL 4070889, at *2 (C.D. Cal. July 7, 2017) (finding that numerosity was satisfied because it was safe to "infer that well over 40 individuals purchased" stock during the class period where there existed over 86 million shares of stock and the average weekly trading volume was over 10 million shares)). Courts have found numerosity satisfied "when a corporation has millions of shares trading on a national exchange." See In re Cooper Cos., 254 F.R.D. at 634 (finding numerosity satisfied when a corporation had more than 36 million shares outstanding during the class period); Karam v. Corinthian Colleges Inc., 2017 WL 4070889, at * 3 (finding numerosity satisfied when there existed over 86 million shares of defendant corporation's stock and the average weekly trading volume was over 10 million shares); Mild v. PPG Indus., Inc., 2019 WL 3345714, at *2 (C.D. Cal. Jul. 25, 2019) (finding numerosity satisfied when defendant corporation had an average of over 254 million shares outstanding and an average weekly trading volume of 6,180,997 shares).

Based on the record evidence presented in support of the Motion, Plaintiffs have met their burden of showing that numerosity is satisfied.

### b.     Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). A common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Dukes, 564 U.S. at 350. As the Ninth Circuit explained in Wang, 709 F.3d at 834, there must be at least "a single common question" to satisfy the commonality requirement of Rule 23(a)(2)."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title       Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Plaintiffs argue that there are several questions of law and fact common to Settlement Class members, including: (1) whether Defendants violated the Exchange Act; (2) whether Defendants omitted and/or misrepresented material facts; (3) whether Defendants knowingly or recklessly disregarded that their statements and omissions were false and misleading; (4) whether the price of Champignon stock was artificially inflated during the Settlement Class Period; and (5) whether and to what extent the Settlement Class members sustained damages.  Mot. at 17.  The Court agrees.  These common questions form the core of securities fraud and are similar to questions of law and fact that other courts have found sufficiently common in previous securities fraud cases. See In re Cooper Cos., 254 F.R.D. at 635.

The Court therefore finds that commonality is satisfied here.

> c.       *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  To meet the typicality requirement, the plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011).  "Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020. Plaintiffs can satisfy their burden through pleadings, affidavits, or other evidence.  See Lewis v. First Am. Title Ins. Co., 265 F.R.D. 536, 556 (D. Idaho 2010).

The typicality requirement is also satisfied here.  Plaintiff is seeking recovery based on the same legal and factual theories as the proposed class members that he seeks to represent.  Plaintiff, like the proposed class members, purchased Champignon shares on the OTC market during the Class Period at artificially inflated prices, and suffered damages as a result of Defendants' materially misleading statements.  See FAC ¶ 13. Further, Plaintiff does not allege any unique theories or claims that would make him an atypical Settlement Class Member.

> d.       *Fair and Adequate Representation*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                     Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting Hanlon, 150 F.3d at 1020). Representation is adequate if (1) the named plaintiffs and their counsel are able to prosecute the action vigorously and (2) the named plaintiffs do not have conflicting interests with the unnamed class members; and (3) the attorney representing the class is qualified and competent. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff argues that adequacy is satisfied because "Plaintiff and Lead Counsel have adequately represented the Settlement Class." Mot. at 18. Plaintiff contends that Lead Counsel, Glacy Progany & Murray, are highly experienced in securities litigation and have a long and successful track record of representing investors in such cases. Id. at 6 (citing GPM Firm Resume, Dkt. 17-4). In fact, Lead Counsel has substantial experience litigating securities actions. GPM Firm Resume, Dkt. 17-4. There is no evidence to suggest that Plaintiff or Lead Counsel have a conflict of interest with other Class Members. Plaintiff asserts that he has the same interest as the class in maximizing recovery. For these reasons, Plaintiff has shown that the adequacy requirement is preliminarily satisfied.

### 2.   *Rule 23(b)*(3)

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975). A class may be certified under this subdivision where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. Proc. 23(b)(3).

#### a.   *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Windsor, 521 U.S. 591, 623 (1997) (citation omitted).  "[I]n deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'"  In re Hyundai and Kia Fuel Economy Litigation, 926 F.3d 539, 558 (9th Cir. 2019) (citing Amchem, 521 U.S. at 620).  Because there is a heightened risk of collusion during settlement, "the aspects of Rule 23(a) and (b) that are important to certifying a settlement class are 'those designed to protect absentees by blocking unwarranted or overbroad class definitions.'"  Id. (citing Amchem, 521 U.S. at 620).  "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."  Id.

Plaintiff argues that "[t]he predominnace test is met here because the same set of operative facts applies to each Settlement Class Member."  Mot. at 19.  "The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all be injured by the same alleged course of conduct."  See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993).  The Court agrees that the predominance test is met here because each Settlement Class Member's claims are based on the same alleged course of conduct.

> b.      *Superiority*

Finally, the Court considers whether a class action would be superior to individual suits.  Amchem, 521 U.S. at 615.  Plaintiff must demonstrate superiority under Rule 23(b0(3) by a preponderance of the evidence.  See Zinser, 253 F.3d at 1186.  "A class action is the superior method for managing litigation if no realistic alternative exists."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234–35 (9th Cir. 1996).  This superiority inquiry requires consideration of the following factors: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action."  See Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1190 (9th Cir. 2001); Fed. R. Civ. P. 23(b)(3)(A)–(D).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

The first factor, "the class members' interests in controlling the prosecution or defense of separate actions," weighs in favor of certifying a class when the individual damages suffered by each class member are relatively low.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001).  Plaintiff contends that superiority is met because "damages suffered by individual Settlement Class members are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws."  Mot. at 19.

Lead Counsel retained damages consultant Michael A. Marek ("Marek"), CFA, to assist in analyzing and quantifying the damages.  See Supp. Sadler Decl. ¶ 5.  Marek reviewed a number of materials, including the daily price and trading volume data for Champignon, filings on the System for Electronic Document Analysis and Retrieval ("SEDAR") during and after the Settlement class period, press releases issued by Braxia and news articles about Braxia in the relevant time period.  See Decl. of Michael Marek ("Marek Decl."), Dkt. 72-1 ¶ 3.  Based on his analysis, Marek concluded that the maximum available damages flowing from the two alleged corrective disclosures would total $7,926,522.  Marek Decl. ¶ 17.  With the estimate of 53,716,176 shares that were purchased and damaged, this would put the maximum compensable damage per share at $0.148, and the average settlement recovery per share at $0.019.  Id.; see Supp. Sadler Decl. ¶ 9.  The low value of each member's claim supports a finding of superiority.

Accordingly, Plaintiff meets his burden under the superiority prong of Rule 23(b)(3).

### 3.   Conclusion Regarding Class Certification

Plaintiffs meet their burden for class certification for purposes of the preliminary settlement motion.  The Court concludes that it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal" based on the record as presented on this motion.  The Court **GRANTS** Plaintiff's motion for preliminary certification for purposes of class certification.

### B.   Preliminary Approval of the Proposed Class Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title        Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is "fair, reasonable, and adequate."  "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (internal quotation marks omitted)).

When evaluating the fairness of a class action settlement, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
      (i) the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered.  See, e.g., In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 21-3120 JVS (KESx)                    Date    November 1, 2022

Title    Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

A "higher standard of fairness" applies when, like here, parties settle a case before the district court has formally certified a litigation class.  See Campbell v. Facebook, Inc., 951 F.3d at 1121 (citing Hanlon, 150 F.3d at 1026).  In such cases, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)."  Id. (quoting Hanlon, 150 F.3d at 1026).

> *1.    Adequacy of Representation by Class Representatives and Class Counsel*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation.  Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.  For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, no extensive discovery — or any formal discovery — has yet commenced. Plaintiff contends that "Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including consultation with experts in the fields of loss causation, damages, and accounting."  Mot. at 13 (internal citation omitted).  Specifically, Plaintiff states that "counsel conducted an investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) the Company's filings with Canadian regulatory agencies, including the British Columbia Securities Commission, and the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysis, and news articles concerning the Company, and (c) other publicly available material related to the Company; and (2) retaining and working with damages and loss causation experts as well as an accounting expert."  Id. at 2.

It is true that discovery has not commenced in this case.  However, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

2000), as amended (June 19, 2000) (internal quotations and citation omitted).  Here, because Defendants had filed a motion to dismiss, Plaintiff was precluded by the PSLRA from commencing discovery "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  Lead Counsel asserts that they "have extensive experience meeting [the PLSRA standard] through their expertise in analyzing corporate securities filings and other public information as well as retaining subject matter experts[.]"  Supp. Sadler Decl. ¶ 16.  Given this and the investigation that Lead Counsel provided evidence of conducting, the Court finds that Plaintiff had sufficient information to make an informed decision.

> 2.    *Negotiated at Arm's Length*

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Servs., 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement has been negotiated at arm's length.

> 3.    *Adequacy of Relief Provided for the Class*

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018). Here, Plaintiff argues that "[t]he $1,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class." Mot. at 10. In support of this assertion, Plaintiff presents evidence by the retained damages expert, Marek. Using a multi-trader model, a "widely accepted" model for estimating the number of damaged shares, Marek estimated the artificial inflation per share, determined that there were 53,716,176 damaged shares and calculates the full damages to be $7,926,522. Marek Decl. ¶¶ 12-17.

Plaintiff asserts that the $1 million Settlement Amount thus "represents approximately 12.7% of the total *maximum* damages *potentially* available in this Action." Mot. at 10. This percentage is "not unreasonable in light of the risks, expenses, and likely duration of further litigation in this action." Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc., No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding that 3.5% "is within the median recovery in securities class actions settled in the last few years").

*a.* *Costs, Risks, and Delay of Trial and Appeal*

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Here, the costs, risks, and delay of trial and appeal favor preliminary approval. "Proceeding in this litigation in the absence of settlement poses various risks such as . . . having summary judgment granted against Plaintiffs[] or losing at trial. Such considerations have been found to weigh heavily in favor of settlement." Graves v. United Industries Corporation, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (citing Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009); Curtis-Bauer v. Morgan Stanley & Co., Inc., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)).

Plaintiff contends that the Settlement Amount is fair given the significant risks involved in continuing litigation that could substantially reduce the amount of recoverable damages. Mot. at 7–10. The Court agrees that the early stage of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

litigation, and the risks that are avoided by reaching this settlement, should be weighed in considering the reasonableness of the Settlement.  The Settlement Agreement offers the Parties immediate and certain relief.  This case would still have to proceed through summary judgment, trial, and appeal if Plaintiffs are successful in the absence of the Settlement Agreement. This subfactor therefore favors preliminary approval of the Class Settlement because in its absence there will be inevitable costs, high risks, and delay.

> b.    *Effectiveness of Proposed Method of Relief Distribution*

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  Id.

Here, Settlement Class members who wish to receive a distribution from the Net Settlement Fund may either submit a Claim Form online or via mail.  Proposed Order, ¶ 10.  This is a reasonable means of distributing relief.  See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").  Further, SCS will allow claimants an opportunity to cure any claim deficiencies or request the Court to review a denial of their claims.  This subfactor therefore weighs in favor of approval.

> c.    *Terms of Proposed Award of Attorneys' Fees*

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).  In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                  Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

clause that returns unawarded fees to the defendant, rather than the class." Briseno v. ConAgra Foods, Inc., 2021 WL 2197968, at *6 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 947 (9th Cir. 2011)).  The Court must consider whether these factors exist in post-class certification settlements. Id. at *8.

Lead Counsel requests a preliminary award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the settlement fund.  Memo., Dkt. 77, at 1.  Lead Counsel also seeks reimbursement of $23,953.30 in out-of-pocket expenses and $1,000 of reasonable costs and expenses for Lead Plaintiff, paid from the Settlement Fund. Id.

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029.  That benchmark is not rigid, and leaves room for the consideration of the circumstances of the case, including the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002).  Courts in this district typically adhere to this benchmark in cases in which there is little active litigation pre-settlement.  See, e.g., Ramirez v. Rite Aid Corp., 2022 U.S. Dist. LEXIS 109069, at *23 (C.D. Cal. May 3, 2022) (25% "is a benchmark that this Court . . . almost always adheres to in cases where there is little active litigation pre-settlement").  The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).

Here, Lead Counsel requests a fee award of 25%.  This is consistent with the 25% benchmark used by courts in the circuit.  As discussed above, the total possible maximum damages is $7,926,522.  Lead Counsel achieved a settlement amount equal to 12.7% of the maximum possible settlement amount, which is reasonable.  This result was achieved in light of substantial risks of prolonged litigation, including potential difficulty in proving loss causation, liability, and damages.  See Memo., Dkt. 81, at 7–10.  Lead Counsel has a long-record of successfully prosecuting securities litigation cases, and took this case on a contingent fee. Id. at 10–13.  All of these factors weigh in favor of the 25% as reasonable.

Additionally, Lead Counsel's lodestar cross-check calculation yields a sum of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                     Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

$182,872.50 based on 303.90 hours worked.  Id. at 16–17.  Compared to the 25% fee request, this yields a multiplier of 1.37.  This multiplier is reasonable.  See, e.g., Vizcaino, 290 F.3d at 1051 (affirming district court's approval where the lodestar multiplier was 3.65).  The Court finds the percentage-of-the-fund-method is fair and reasonable.

Lead Counsel also seeks a total sum of $24,953.30 in litigation expenses.  The expenses include $21,656 for experts, $2,297 for service of process, and $1,000 for costs, including lost wages, incurred by Plaintiff.  Sadler Decl., Dkt. 82, at 8.  Experts and service of process are routinely billed to clients and thus reasonable for Lead Counsel to recover these costs from the Settlement Fund.  See, e.g., Todd v. STAAR Surgical Co., 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017).  The $1,000 reimbursement to Plaintiff is also reasonable and directly related to the representation of the Settlement Class.  See, e.g., In re K12 Inc. Sec. Litig., 2019 WL 3766420 at *2 (N.D. Cal. July 10, 2019).

Lead Counsel's request for attorneys' fees and litigation expenses is fair and reasonable.  This subfactor therefore weighs in favor of approval.

### d.    Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement.  See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  The Parties state that they have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion from the Settlement.  "The existence of a termination option triggered by the number of class members or shares that opt out of the Settlement does not by itself render the Settlement unfair."  Fleming v. Impax Labs. Inc., 2021 U.S. Dist. LEXIS 225218, at *32.

Plaintiff provided a copy of the Opt-Out Agreement for the Court's in-camera review.  See Dkt. 73; see also MANUAL FOR COMPLEX LITIGATION, FOURTH, 21.631 (2015) ("Opt-out agreements in which a defendant conditions its agreement on a limit on the number or value of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out. A common practice is to receive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

information about such agreements in camera.").   The Opt-Out Agreement provides the conditions under which Defendants may terminate the Settlement if a threshold number of Settlement Class members opt out.  Supp. Sadler Decl. ¶ 19.  "This type of agreement is common in securities fraud actions and does not weigh against preliminary approval." Cheng Jiangchen v. Rentech, Inc., No. 17-cv-1490-GW(FFMX), 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (citing In re Carrier IQ, Inc., Consumer Privacy Litig., 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016)).  Moreover, upon in camera review, the Court does not find the Opt-Out Agreement to be unreasonable.

> *4.     Equitable Treatment of Class Members*

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Under the proposed Plan of Allocation, claimants will be treated equitably by receiving a *pro rata* share of the Net Settlement Fund based on their estimated injury. Plaintiffs explain that "an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total amount in the Net Settlement Fund." Mot. at 13.  Accordingly, the average recovery among class members will presumably vary depending on the number of shares purchased, acquired, and sold and the time period.  The Court finds no indication that the distribution and allocation methods that Plaintiff proposes will result in inequitable treatment of class members.  See Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and ha[d] the benefit of simplicity").  This factor thus weighs in favor of preliminary approval of the Settlement.

> *5.     Conclusion as to the Fairness of the Proposed Settlement*

As each of the above factors weighs in favor of approval and Plaintiff provided sufficient information for the Court to evaluate the reasonableness of the Settlement Agreement.  Accordingly, the Court finds that the proposed settlement is fair for purposes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                     Date   November 1, 2022

Title   Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

of preliminary settlement approval.

     *C.    The Proposed Settlement Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B).*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means. Id. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id.

Here, Plaintiff proposes that Claims Administrator will email links to the Settlement Webpage to class members for which it can identify email addresses, and mail by first-class mail, a copy of the Postcard Notice (Settlement Agreement, Ex. A-4), to any Settlement Class Members for which no email address can be obtained. Settlement Agreement, ¶ 20.[1] Courts in this district have found similar notice procedures to be meet the Rule 23(c)(2)(B) notice requirement. Alvarez v. Sirius XM Radio Inc., 2021 U.S. Dist. LEXIS 67754, at *11–12 (C.D. Cal. Feb. 8, 2021) (approving a plan to email notice to all class members for whom a valid email address could be identified and postcard notice via first-class mail to those class members for whom an email address was not readily available, each directing the recipients to a settlement website with more information); Perkins v. LinkedIn Corp., 2016 U.S. Dist. LEXIS 18649, at *24 (N.D. Cal. Feb. 16, 2016) (approving a notice procedure whereby plaintiff would send notice via email to each person in the class using the email address that it had on file directing the recipients to a settlement website). The Court agrees that the combination of emailing a

---

[1] Lead Counsel filed a corrected postcard with the Supplemental Submission. See Supp. Sadler Decl., Ex. 2, Dkt. 72-2; see infra note 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 21-3120 JVS (KESx)                    Date    November 1, 2022

Title    Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

link to the settlement website and mailing the Postcard Notice, publishing Summary
Notice, and online availability of the Notice, as proposed by the Plaintiff provides the
best notice that is practicable under the circumstances.

The class notice must satisfy the requirements of the Federal Rules of Civil
Procedure, which provides the notice "must clearly and concisely state in plain, easily
understood language" the following information:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class
claims, issues, or defenses; (iv) that a class member may enter an appearance
through an attorney if the member so desires; (v) that the court will exclude from
the class any member who requests exclusion; (vi) the time and manner for
requesting exclusion; and (vii) the binding effect of a class judgment on members
under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Court also finds that the content of the proposed notice is adequate. Plaintiff
submitted the proposed notice.[2]  Supp. Sadler Decl. ¶, Ex. 3 ("Notice"), Dkt. 72-3; see
also id., Ex. 2 ("Postcard"), Dkt. 72-2.  The Notice summarizes the case, including the
key legal issues, and includes the class definition.  Notice at 1–2, 6–8.  It also explains
the binding effect of a judgment.  Id. at 10–12.  Finally, it explains the fairness hearing,
processes for objection or opt-out, plan of allocation, and the right to appear through an
attorney.  Id. at 15, 21–22.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions for preliminary
approval of class action settlement.  The Court **DENIES** the motion to vacate as moot.
The Court **ORDERS** the parties to meet and confer, and provide the Courtroom Deputy

---

[2] The Notice was initially filed as Sadler Decl., Ex. A-1, Dkt. 65.  However, upon consulting
with Plaintiff's damages consultant, Lead Counsel "discovered that incorrect figures for the average
settlement recovery and average cost per share were used in the Postcard Notice and Notice."  Lead
Counsel submitted proposed revised Postcard Notice and Notice to reflect these corrections, which
Defendants also agreed to.  See Supp. Decl. at 4 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 21-3120 JVS (KESx)                    Date   November 1, 2022

Title      Jeffrey N. Schneider et al. v. Champignon Brands Inc. et al.

with a proposed date for the final settlement hearing.

**IT IS SO ORDERED.**

:          0

Initials of Preparer        lmb