Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com

*Counsel for Lead Plaintiff Michael G.*
*Quinn and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. SCHNEIDER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPIGNON BRANDS INC., GARETH BIRDSALL, and MATTHEW FISH,<br><br>Defendants. | Case No. 2:21-cv-03120-JVS-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    February 27, 2023<br>Time:    1:30 p.m.<br>Crtm:    10C<br>Judge:   James V. Selna |

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................1

II.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e) AND HANLON ................................................................................................................3

III.  ARGUMENT ........................................................................................................5

    A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of Rule 23(e)(2) And The Remaining *Hanlon* Factors ..............................5

        1.    Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class..........................................................................5

        2.    The Settlement Is The Result Of Arm's-Length Negotiations.....6

        3.    The Relief Provided For The Settlement Class Is Adequate........7

            (a)    The Cost, Risk, And Delay Of Trial And Appeal..............8

            (b)    The Settlement Amount.....................................................11

        4.    Other Factors Established By Rule 23(e)(2)(C) Support Final Approval ...................................................................................11

        5.    All Settlement Class Members Are Treated Equitably ..............13

        6.    The Positive Reaction Of The Settlement Class Supports Settlement Approval ...............................................................14

        7.    The Remaining Ninth Circuit Factors Are Satisfied .................14

    B.    The Plan Of Allocation Is Fair And Reasonable ...............................16

    C.    The Settlement Class Should Be Finally Certified .............................18

    D.    The Notice Program Satisfies Rule 23 And Due Process....................18

    E.    Lead Counsel's Requested Fee Award And Reimbursement Of Litigation Expenses Should Be Finally Approved .............................19

IV.   CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

CASES

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..........................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .................................................................................10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .....................................................................1, 5, 7, 8

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................4, 11

*Ikuseghan v. Multicare Health Sys.*,
2016 WL 3976569 (W.D. Wash. July 25, 2016).....................................................7

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .....................................................16

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................................................8

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991)..........................................................10

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .......................................................5

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)........................................................18

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ..........................................................................8

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)........................................................9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................9, 14, 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..............................................................................3

*In re Vivendi Universal, S.A., Sec. Litig.*,
    2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ............................................................8

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................10

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ....................................................14

*Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................11

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................8

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................16

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................................................5, 6

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ......................................................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..........................................................................10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................7

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    2020 WL 3129566 (S.D. Cal. June 12, 2020) ................................................16, 17

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ....................................................15

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ..........................................................................10

*Vinh Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014).........................................................13

*Wong v. Arlo Technologies, Inc.*,
2021 WL 1531171 (N.D. Cal. Apr. 19, 2021).....................................................4, 5

*Wong v. Arlo Techs., Inc.*,
2021 WL 1146042 (N.D. Cal. Mar. 24, 2021) ....................................................7, 8

STATUTES

15 U.S.C. § 78u-4 .....................................................................................................1

RULES

Fed. R. Civ. P. 23....................................................................................*passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Michael G. Quinn ("Lead Plaintiff") submits this memorandum in support of his motion for final approval of the Settlement of the above-captioned action (the "Action") for $1,000,000 in cash (the "Settlement Amount"), for approval of the Plan of Allocation, and for final approval of the award of attorneys' fees and reimbursement of litigation expenses.  The terms of the Settlement are set forth in the Stipulation (ECF No. 65-1), which was preliminarily approved by the Court on November 1 and 4, 2022.  *See* ECF No. 87 ("Preliminary Approval Findings"), 88 ("Preliminary Approval Order").

The $1 million Settlement is procedurally fair, as it is the product of arm's-length negotiations, including numerous written responses on the merits and counteroffers by the Parties, as well as various telephonic discussions regarding the specifics of the case, only after Lead Plaintiff had an opportunity to review and analyze Defendants' arguments in support of dismissal as well as performing legal research to prepare his counterarguments.  The Settlement is also substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action, and meaningfully assessed the risks of establishing liability and damages, including the risk of surviving a motion to dismiss, or prevailing on appeal, under the heightened pleading standard and automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4, (the "PSLRA")).  Indeed, before agreeing to the Settlement, Lead Counsel, among other things: (i) conducted a comprehensive investigation into the claims asserted against

Defendants, which was assisted by experts in the areas of accounting and damages and loss causation; (ii) drafted the detailed 51-page complaint (the "Complaint"); (iii) researched in preparation for Lead Plaintiff's opposition to Defendants' motion to dismiss; (iv) engaged in arm's-length settlement negotiations with counsel for Defendants, which included numerous written responses on the merits and counteroffers by the Parties, as well as various telephonic discussions regarding the specifics of the case; and (v) obtained a $1 million Settlement for the benefit of the Settlement Class. The Parties then negotiated and executed the Stipulation. Based on this substantial work and Lead Counsel's experience, Lead Plaintiff and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and instead provides a fair and immediate cash recovery—is in the best interests of the Settlement Class.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval. Over 37,481 potential Settlement Class Members and their nominees were notified by either the Postcard Notice or an email with a link to the Notice and Claim Form and, to date, no objections or requests for exclusion have been received or entered on the docket. *See* Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Declaration") submitted herewith.

Additionally, the Plan of Allocation was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action. The Plan of Allocation ties each participating Settlement Class Member's recovery to when the securities were acquired and sold, and is a fair and reasonable method for distributing the Net Settlement Fund. The Plan of Allocation thus warrants approval.

And finally, Lead Counsel respectfully requests the Court grant final approval

of an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the Settlement Fund.  Lead Counsel also seeks final approval of the reimbursement of (i) $23,953.30 in litigation expenses incurred by Lead Counsel in prosecuting and resolving the Action, and (ii) $1,000 in costs incurred by the Court-appointed Lead Plaintiff, directly related to his representation of the Settlement Class, as authorized by the PSLRA.

For these reasons, as well as those set forth below, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and grant final approval of Lead Counsel's request for an award of attorneys' fees in the amount of 25% and reimbursement of Litigation Expenses in the amount of $24,953.30, which includes $1,000 to Lead Plaintiff for reasonable costs and expenses.

## II.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e) AND HANLON

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation.  The settlement of complex cases also contributes to the conservation of scarce judicial resources. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at \*10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

Rule 23(e)(2)–which governs final approval—requires courts to consider several factors in determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Technologies, Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). "That test includes the following factors:

[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings;

4
MEMORANDUM OF POINTS AND AUTHORITIES

[6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Hanlon*); *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (same).

As explained below, application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants Court approval.

## III.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.   Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representative[] and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class during both the litigation of this Action and its settlement. Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the

Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel, Glancy Prongay & Murray LLP, have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country for over 26 years. *See* ECF No. 17-4 (GPM firm resume). Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation, which included, among other things: (1) reviewing and analyzing (a) the Company's filings with Canadian regulatory agencies, including the British Columbia Securities Commission, and the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning the Company, and (c) other publicly available material related to the Company; (2) drafting a detailed complaint based on the foregoing investigation; (3) researching in preparation for Lead Plaintiff's opposition to Defendants' motion to dismiss; and (4) obtaining a $1 million Settlement for the benefit of the Settlement Class. *See* Preliminary Approval Findings at 20 ("Given…the investigation that Lead Counsel provided evidence of conducting, the Court finds that Plaintiff had sufficient information to make an informed decision"); *see also PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

### 2.     The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[1]  The Ninth Circuit, as well

---

[1] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as (footnote continued)

as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Parties began exploring the possibility of resolving this Action only after Lead Plaintiff had an opportunity to review and analyze Defendants' arguments in support of dismissal as well as performing legal research to prepare his counterarguments. Armed with this knowledge, Lead Plaintiff served a confidential settlement demand on Defendants. Following numerous written responses on the merits and counteroffers by the Parties, as well as various telephonic discussions regarding the specifics of the case, the Parties were ultimately able to agree to the general contours of the Settlement.

The arm's-length nature of the extensive settlement negotiations between capable counsel with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See* Preliminary Approval Findings at 20 ("The Court finds that the Settlement has been negotiated at arm's length."); *Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

### 3. The Relief Provided For The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided

---

the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 24, 2021) (citing *Hanlon*, 150 F.3d at 1026).

for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[2]

### (a)   The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Securities fraud cases are inherently complex and tend to take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals.  *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).  Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

The risks of continued litigation here were considerable, perhaps insurmountable.  The most immediate risk is that Lead Plaintiff might not advance past the pleading stage thereby eliminating any benefit potentially available to the Settlement Class.  Although Lead Plaintiff believes the Complaint was adequate to

---

[2] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

survive Defendants' motion to dismiss, Defendants raised plausible arguments in favor of dismissing Lead Plaintiff's claims, including that a pending lawsuit in British Columbia, Canada was the more appropriate forum for the claims to be heard and that Defendants did not have a duty to disclose the fact that the transactions at issue involved a related party. If the Court agreed with Defendants' arguments, any potential recovery would be lost.

Even if Lead Plaintiff did prevail at the motion to dismiss stage, he would then need to move for class certification, which Defendants would likely oppose. Although Lead Plaintiff believes certifying a class here is meritorious, Defendants' likely opposition makes class certification not a foregone conclusion. Had Lead Plaintiff failed to obtain class certification, the benefit to the Settlement Class would have been eliminated. Moreover, even assuming class certification was achieved, the Court could have revisited certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, even if Lead Plaintiff prevailed at the class certification stage, he would still have to **prove** his claims. This would be no small task and Lead Plaintiff and Lead Counsel recognize the significant risk, time, and expense involved in prosecuting Lead Plaintiff's claims against Defendants through completion of fact and expert discovery – discovery that would have mainly occurred outside of the United States – summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Defendants' expected

motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain. *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. Any recovery that shareholders may ultimately see is diminished by the escalating costs accumulated in the process. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[3]

In sum, even if Lead Plaintiff were to prevail after trial and appeals, there is no guarantee that he would have obtained a judgment greater than the $1 million Settlement. There was, as in any complex securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately-realizable recovery and eliminates all of the risk, delay, and expense of continued litigation. *See* Preliminary Approval Findings at 22 (finding this factor weighs in favor of approval).

---

[3] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

MEMORANDUM OF POINTS AND AUTHORITIES

**(b)     The Settlement Amount**

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Wells Fargo*, 2018 WL 6619983, at *8.  The $1,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement.

Here, Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed in his claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury fully accepted Lead Plaintiff's loss causation and damages arguments—*i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $7,926,522.  *See* ECF No. 72-1 at ¶¶ 11-17.  Thus, the $1 million Settlement Amount represents approximately 12.7% of the total ***maximum*** damages *potentially* available in this Action.  In fact, this Court has already found 12.7% of the maximum possible recovery to be reasonable.  Preliminary Approval Findings at 21, 23 (noting 12.7% recovery is "not unreasonable in light of the risks, expenses, and likely duration of further litigation in this action") (quoting *Int'l Bhd. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding that 3.5% "is within the median recovery in securities class actions settled in the last few years")).  Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of final approval. This is particularly relevant here, as it is not assured that Braxia would be able to continue as a going concern and thus funds needed to fund a settlement may have no longer been available in the future.

**4.     Other Factors Established By Rule 23(e)(2)(C) Support Final Approval**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[4]

**Rule 23(e)(2)(C)(iii):** As detailed in Lead Counsel's motion for a preliminary award of attorneys' fees and reimbursement of litigation expenses and the accompanying memorandum in support thereof (ECF Nos. 80-82), Lead Counsel is applying for a percentage of the common fund fee award in an amount of 25% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of 25% of the Settlement Fund (which, by definition, includes

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted. *See* Stipulation ¶14.

interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  On November 1, 2022, in preliminarily approving Lead Counsel's requested 25% fee award, the Court noted that (i) the requested fee was "consistent with the 25% benchmark used by courts in this circuit;" (ii) the Settlement was achieved "in light of substantial risks of prolonged litigation, including potential difficulty in proving loss causation, liability, and damages;" and (iii) "Lead Counsel has a long-record of successfully prosecuting securities litigation cases, and took this case on a contingent fee."  *See* Preliminary Approval Findings at 23-24.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement.  On August 31, 2022, in accordance with the Court's August 15, 2022 order, Lead Plaintiff submitted this confidential agreement *in camera* for the Court's review.  ECF No. 73.  In granting preliminary approval, the Court found the confidential agreement in this case to be reasonable.  Preliminary Approval Findings at 25.

### 5.  All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by

awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'"). Moreover, this Court has already concluded that there is "no indication that the distribution and allocation methods that Plaintiff proposes will result in inequitable treatment of class members." Preliminary Approval Findings at 25.

### 6. The Positive Reaction Of The Settlement Class Supports Settlement Approval

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rules 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See* Craig Decl., Ex. B (Notice) at p. 3. More than 37,481 potential Settlement Class Members were notified by an email containing a link to the Notice and Claim Form or by Postcard Notice and the Summary Notice was published over the *Globe Newswire*. *Id.* ¶¶9-10. To date, no requests for exclusion have been received, and no objections have been filed with the Court. *Id.* ¶¶13-14.[5] The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members.").

### 7. The Remaining Ninth Circuit Factors Are Satisfied

**The Extent of Discovery Completed and the Stage of the Proceeding:** In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *E.g.*, *In re: Volkswagen*

---

[5] The deadline to request exclusion from, or to object to any aspect of, the Settlement is February 6, 2023; if any exclusions or objections are received after the date of this filing, they will be addressed on reply.

*"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016). (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Here, Lead Counsel conducted an extensive investigation of the claims asserted in this Action (*see* Sec III.A.1., *supra*, detailing Lead Counsel's investigation), including consultation with experts in the fields of loss causation, damages, and accounting. Additionally, in drafting the Complaint and preparing an opposition to Defendants' motion to dismiss, Lead Counsel further engaged in extensive legal research, which helped to further evaluate and sharpen the understanding of the strengths and weaknesses of the claims asserted in this Action.

This material amount of information enabled Lead Counsel to make an informed assessment of the strengths and weaknesses of this Action to make a determination on behalf of the Settlement Class about whether to settle. The Parties' settlement negotiations, as explained above, further informed Lead Counsel about the strengths and weaknesses of the potential class's claims in this Action and Defendants' defenses to those claims. As a result, the Parties and their counsel have sufficient basis to make informed decisions about the relative merits and weakness of this Action and the fairness of the Settlement.

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports final approval. Defendants have been vigorously represented by Katten Muchin Rosenman LLP throughout the Action and settlement negotiations. Defendants' counsel is equally well-informed regarding the case, and their representation of Defendants was just as

rigorous as Lead Counsel's representation of the Settlement Class.  Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel, final approval is warranted.

**The Presence Of A Governmental Participant** "Because no government entities are participants in this case, this factor is neutral." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

\*          \*          \*

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a finding that the Settlement is fair, reasonable, and adequate, or is neutral.  Final approval is, therefore, appropriate.

### B.  The Plan Of Allocation Is Fair And Reasonable

Lead Plaintiff also requests final approval of the Plan of Allocation.  A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  The allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  "A plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue should be approved as fair and reasonable." *Schueneman v. Arena Pharmaceuticals, Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020).

The Plan of Allocation, is set forth in the Notice attached to the Craig Declaration at sub-exhibit B (Notice at ¶¶10-14), is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action.  More specifically, the Plan of

Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of Braxia common stock was artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions. The Plan of Allocation is based on the premise that the decreases in the price of Braxia common stock that followed the alleged corrective disclosures that occurred on June 22, 2020 and on February 17, 2021, may be used to measure the alleged artificial inflation in the price of Intersect common stock prior to these disclosures. Craig Decl., Ex. B (Notice) at ¶51. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Intersect common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants. *Id.* at ¶62.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Craig Decl., Ex. B (Notice) at ¶57.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. Craig Decl., Ex. B (Notice) at ¶63. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to a non-sectarian, not-for-profit organization, to be recommended by Lead Counsel and approved by the Court. *Id.*

Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims. *See Arena*, 2020 WL 3129566, at *7 (approving

substantially similar plan of allocation).  Indeed, the Court has already found that there is "no indication that the distribution and allocation methods that Plaintiffs proposes will result in inequitable treatment of class members."  Preliminarily Approval Findings at 25.  The fair and reasonableness of the proposed Plan of Allocation is further evidenced by the fact that, to date, no objections to the Plan of Allocation have been filed on this Court's docket.  Accordingly, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at \*12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

### C.    The Settlement Class Should Be Finally Certified

The Court's November 4, 2022 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 88 at ¶¶1-3.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (ECF No. 64 at 16-18), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D.    The Notice Program Satisfies Rule 23 And Due Process

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  This Court has already found that the proposed notice program is adequate and sufficient (*see* Preliminary Approval Order, ECF No. 88 at ¶¶7-8), and Lead Counsel and SCS carried out the notice program as proposed.

*See* Craig Decl., ¶¶3-12.  The Settlement Class has, therefore, received "the best notice practicable under the circumstances."  FED. R. CIV. P. 23(c)(2)(B).

### E.   Lead Counsel's Requested Fee Award And Reimbursement Of Litigation Expenses Should Be Finally Approved

On September 14, 2022, the Court entered an Order requesting Lead Counsel submit a formal motion for attorneys' fees.  ECF No. 74.  In accordance with the Court's September 14, 2022 Order, Lead Counsel filed a motion for a preliminary award of attorneys' fees and reimbursement of litigation expenses on September 26, 2022.  ECF Nos. 80-82. The Court preliminarily approved Lead Counsel's award of attorneys' fees in the amount of 25% of the Settlement Fund and reimbursement of expenses.  *See* Preliminary Approval Findings at 23-24.  There have been no changes to alter the propriety of the Court's preliminary finding.  In fact, the propriety of the fees and expense award is further supported by the fact that no Settlement Class Member has objected to it, and that Lead Counsel has performed more work since the fee motion was filed and as such, Lead Counsel's lodestar multiplier is currently even lower than that which the Court already deemed was reasonable. Preliminary Approval Findings  at 23-24 (1.37 "multiplier is reasonable").  Thus, for the reasons stated in Lead Counsel's Motion for a Preliminary Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF Nos. 80-82), Lead Counsel respectfully requests the Court affirm its determination that "Lead Counsel's request for attorneys' fees and litigation expenses is fair and reasonable."  ECF No. 87 at 24.

## IV.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for final approval of the Settlement, approve the proposed Plan of Allocation and finally approve Lead Counsel's request for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, and reimbursement of Litigation Expenses in the amount of $24,953.30, which includes $1,000 to Lead Plaintiff for reasonable costs and expenses.

DATED: January 20, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Casey E. Sadler*
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
csadler@glancylaw.com

*Counsel for Plaintiff Michael G. Quinn and
Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES

### **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On January 20, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 20, 2023, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler