UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV21-3120 JVS (KESx) | Date | February 28, 2023 |
| Title | Jeffrey N. Schneider v. Champignon Brands Inc. et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** | |
| Elsa Vargas | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Motions for Final Approval of Class Action Settlement [89] and Attorneys' Fees [80]**

Lead Plaintiff Michael G. Quinn ("Plaintiff") moves for final approval of his class action settlement with Defendants Champignon Brands Inc., now known as Braxia Scientific Corp. ("Champignon" or "Braxia" or the "Company"), Gareth Birdsall ("Birdsall"), Matthew Fish ("Fish"), Roger McIntyre ("McIntyre"), and Stephen Brohman ("Brohman") (collectively, "Defendants"). (Mot., Dkt. No. 89.) The motion is unopposed. Plaintiff also moves for attorneys' fees and reimbursement of litigation expenses. (Attorneys' Fees Mot., Dkt. No. 80.) The Court heard oral argument on February 27, 2023.

For the following reasons, the Court **GRANTS** the motions.

## I. BACKGROUND

### A. Allegations

This is a federal securities class action on behalf of those who purchased or acquired Champignon securities between March 27, 2020, and February 17, 2021 (the "Class Period"). (First Amended Complaint ("FAC"), Dkt. 40, ¶ 1.)

Champignon is a corporation focused on the formulation and manufacturing of novel ketamine, anesthetics, and adaptogenic delivery platforms for nutraceutical and psychedelic medicine while being supported by a leading psychedelics medicines clinic platform. (Id. ¶ 22.) It is also pursuing the development and commercialization of rapid onset treatments capable of improving health outcomes, such as depression and post-

| | | |
|---|---|---|
| CV-90 (06/04) | **CIVIL MINUTES – GENERAL** | Page 1 of 19 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV21-3120 JVS (KESx)                     Date    February 28, 2023

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al.

traumatic stress disorder ("PTSD") as well as substance and alcohol use disorders.  (Id. ¶ 22.)  Champignon, which is now known as Braxia Scientific Corp., is incorporated under the laws of British Columbia and its primary office is located in Mississauga, Ontario, Canada.  (Id. ¶ 14.)  Gareth Birdsall founded Champignon and was its President and Secretary until May 6, 2020, its CEO until May 11, 2020, and a director of the company until November 23, 2020.  (Id. ¶ 16.)  Fish was Champignon's president since May 2020 and a director since August 2019.  (Id. ¶ 19.)  During the Class Period, Champignon's shares traded on the Canadian Securities Exchange under the ticker symbol "SHRM" and on the quotation board of the Frankfurt Stock Exchange under the ticker symbol "496." (Id. ¶ 14.)  Champignon's common shares also traded on the OTC Pink Open Market until April 23, 2020, when its shares began trading on the OTCQB Venture Markets Group.  (Id.)

Plaintiff alleges that on February 28, 2020, Champignon closed its initial public offering and began trading on the Canadian Securities Exchange (the "CSE") on March 2, 2020.  (Id. ¶ 24.)  In the offering, Champignon issued 18,916,667 common shares at a price of $0.15 per share for total gross proceeds of $2,837,500.05.  (Id.)  Thereafter, Champignon's shares began trading on the OTC on March 17, 2020.  (Id.)

With funds obtained and the shares issued in the offering, Champignon began acquiring entities in a massive purported expansion of the scope and scale of the business.  (Id. ¶ 25.)  In March and April 2020, Champignon acquired four entities: Artisan Growers Ltd., Novo Formulations Ltd., Tassili Life Sciences Corp., and AltMed Capital Corp (the "Acquisitions").  (Id.)  According to Champignon, these Acquisitions, among other things, "expand[ed] the Company's preclinical trial pipeline, as well as its aggregation of broad intellectual property," "accelerate[d] the architecture of Champignon's patent portfolio" and "secur[ed] valuable infrastructure to expedite [its] R&D pursuits."  (Id.)  These four Acquisitions cost the Company more than $90 million and resulted in its stock skyrocketing from $0.295 per share and $6.05 million market capitalization at the start of the Class Period to $1.34 per share and $108 million market capitalization by the end of May.  (Id. ¶ 26.)  However, this stock appreciation was short-lived because the acquired companies were unprofitable, and Champignon had failed to account for these transactions accurately under applicable accounting principles or document them in accordance with Canadian securities law.

Plaintiff alleges that in reality, three of the acquired companies were not actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al.

businesses as they had been incorporated mere months before Champignon acquired them and lacked any valuable assets such as intellectual property.  (Id. ¶ 28.)  Ultimately, Champignon admitted that it immensely overpaid for the three companies, and the transactions essentially enriched Champignon's CEO's brother, Lucas Birdsall, who was a shareholder in each of the four companies and received a substantial number of Champignon shares in connection with the acquisitions.  (Id.)

While Lucas Birdsall's involvement was never disclosed during the Class Period, Champignon issued a press release on February 17, 2021, revealing, among other things, that "a shareholder and contracted consultant . . . of the Company was a related party with respect to the Acquisitions."  (Id. ¶ 77.)  As a result, the financial statements and management discussion and analysis ("MD&A") would "include additional disclosure details with respect to related party transactions involving the Consultant."  (Id. ¶ 77.)  It still did not identify the related party.  (Id.)  The press release also noted that Champignon would restate its financial results for the three and six month periods ending March 31, 2020.  (Id. ¶ 78.)  Specifically, it stated that "the Company previously recognized intangible assets in connection with the [A]cquisitions . . . that aggregated to approximately $12 million."  (Id.)  The restatement would "correct the accounting for the Acquisitions as the assets do not meet the definition of intangible assets for the purposes of international financial reporting standards and as a result will be recorded as transaction costs in the Company's statement of loss and comprehensive loss."  (Id.)  On this news, the Company's stock price fell 10.8% to close at $0.687 per share on February 17, 2021, on unusually heaving trading volume.  (Id. ¶ 79.)

On March 11, 2021, the Company finally identified Lucas Birdsall as the related party to the Acquisitions.  (Id. ¶ 80.)  In the financial statements for 2Q20 (the "Restated 2Q20 Report"), the Company stated:

> The Company has also identified a significant shareholder and contracted consultant of the Company (the "Consultant") as a related party for reporting purposes as the Consultant exerted significant influence over the Company. The Consultant was also a shareholder of Artisan Growers, Novo [NFL] and Tassili and was issued common shares of the Company for these three acquisitions (Notes 3 and 9).  In addition, the Consultant was paid $20,000 and issued 1,400,000 options to acquire common shares of the Company during the six month period ended March 31, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al.

The MD&A accompanying the Restated 2Q20 Report identified this Consultant as Lucas Birdsall, Defendant Gareth Birdsall's brother.  (Id.)  The consulting agreement was terminated in November 2020.

The Restated 2Q20 Report also restated the accounting of the acquisitions, effectively reporting that the value of the "intellectual property" in the acquisitions was zero.

### B.    Procedural History

On April 10, 2021, a class action complaint was filed in this Court.  (Dkt. No. 1.)  On June 9, 2021, a number of movants applied for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA").  (Dkt. Nos. 10, 15, 20.)  On June 29, 2021, the Court appointed Plaintiff Michael G. Quinn as lead plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP as Lead Counsel for the class.  (Dkt. No. 28.)

On November 3, 2021, Plaintiff filed and served the Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") based on counsel's investigation.  (See Dkt. No. 40.)  The Complaint asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants.  (Id.)  Defendants moved to dismiss the Complaint on December 20, 2021.  (Dkt. Nos. 55–58.)

On January 13, 2022, Plaintiff served a confidential settlement demand on Defendants.  (Dkt. No. 59.)  The parties reached an agreement, and on February 25, 2022, the parties executed a term sheet memorializing the material terms of the settlement.  (See Dkt. No. 65-1 (the "Term Sheet").)

On April 7, 2022, Plaintiff moved for preliminary settlement approval.  (Dkt. No. 63.)  On August 9, 2022, the Court issued a Tentative Order identifying several deficiencies in the evidence provided in the Motion.  (See Supplemental Decl. of Casey Sadler ("Supp. Sadler Decl."), Dkt. 72 ¶ 2.)  The Court granted leave for Plaintiff to file a supplemental submission in further support of the preliminary settlement motion which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)          Date   February 28, 2023

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al.

Plaintiff did on August 31, 2022. (Dkt. No. 71.)  Plaintiff also filed a submission for *in camera* review.  (Dkt. No. 73.)  On September 14, 2022, the Court issued an Order for Plaintiff to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation.  (Dkt. No. 74.)  On September 26, 2022, Plaintiff filed a motion for attorneys' fees and reimbursement of litigation expenses.

On November 1, 2022, the Court granted the preliminary approval of class action settlement.  (Dkt. No. 87.)  Plaintiff now moves for final approval of class action settlement.  (See Mot.)

   *C.     Summary of the Class Action Settlement*

   **1.     The Settlement Class**

The parties stipulate and agree to certification of the following class for purposes of settlement (the "Settlement Class"):

All persons and entities that purchased or acquired [Champignon] shares on the OTC Market between March 27, 2020 and February 17, 2021, inclusive (the "Settlement Class Period") and were injured thereby.  Excluded from the Settlement Class are (a) persons who suffered no compensable losses; and (b) (i) Defendants, (ii) the legal representatives, heirs, successors, assigns, and members of the immediate families of the Individual Defendants; (iii) the parents, subsidiaries, assigns, successors, predecessors and affiliates of [Champignon]; (iv) any person who served as an Officer and/or director of [Champignon] during the Settlement Class Period; (v) any entity in which any of the foregoing (i)–(iv) excluded persons have or had a majority ownership interest during the Settlement Class Period; (c) any trust of which any Individual Defendant is the grantor or settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her immediate family; . . . (d) Defendants' liability insurance carriers[; and (e)] any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

(Proposed Order, Dkt. No. 89-2, at 3–4.)  The Complaint alleges that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al.

[w]hile the exact number of Class members is unknown to Plaintiff at this time
and can only be ascertained through appropriate discovery, Plaintiff believes
that there are hundreds or thousands of members in the [P]roposed Class.
Millions of Champignon shares were traded publicly during the Class Period
on the OTC.

FAC ¶ 136.

### 2.    Settlement Amount

Under the terms of the Settlement Agreement, Champignon will pay $1,000,000
cash to fund the settlement of the claims (the "Settlement Fund"). (See Stipulation and
Agreement of Settlement, Dkt. No. 65-1 ("Settlement Agreement), at p. 3, ¶ I; p. 11, ¶
(tt).) The Settlement Fund shall be used to pay: (a) any taxes; (b) any notice and
administration Costs; (c) any litigation expenses awarded by the Court; and (d) any
attorneys' fees awarded by the Court. (Id. ¶ 10.) Then, the remaining balance (the "Net
Settlement Fund"), shall be distributed to Settlement Class members. (Id.)

### 3.    Attorneys' Fees and Costs

Lead Counsel requests a preliminary award of attorneys' fees in the amount of
25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the
Settlement Fund. (Attorney's Fees Mot.) Lead Counsel also seeks reimbursement of
$23,953.30 in out-of-pocket expenses and $1,000 of reasonable costs and expenses for
Lead Plaintiff, paid from the Settlement Fund. (Id.)

### 4.    Administrative Expenses

The Settlement Agreement states that "Lead Counsel may pay from the Settlement
Fund, without further approval from Defendants or further notice of the Court, all Notice
and Administration Costs actually incurred and payable." (Settlement Agreement, ¶ 15.)
The Agreement does not include a maximum amount to be allocated for administration
costs.

### 5.    Release

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                         Date   February 28, 2023

Title        Jeffrey N. Schneider v. Champignon Brands Inc. et al.

The Settlement releases two types of claims (collectively, "Released Claims").
First, the Agreement provides a release for all "Released Defendants' Claims":

> "Released Defendants' Claims" means all claims and causes of action of every
> nature and description, whether known claims or Unknown Claims, whether
> arising under federal, state, common or foreign law, that arise out of or relate
> in any way to the institution, prosecution, or settlement of the claims asserted
> in the Action against Defendants.  Released Defendants' Claims do not include
> any claims relating to the enforcement of the Term Sheet or the Settlement or
> any claims against any person or entity who or which submits a request for
> exclusion from the Settlement Class that is accepted by the Court.

(Id. ¶¶ 1(oo), 6.)  Additionally, the Settlement Agreement provides for the release of all
"Released Plaintiff's Claims":

> "Released Plaintiff's Claims" means any and all claims, debts, duties, losses,
> actions, suits, demands, controversies, rights, liabilities, obligations, judgments,
> damages, costs, restitution, rescission, interest, attorneys' fees, expert or
> consulting fees, expenses, matters, arguments, causes of action, and issues
> whatsoever, whether known claims or Unknown Claims, asserted or unasserted,
> accrued or unaccrued, liquidated or unliquidated, whether arising under federal,
> state, local, statutory, common foreign or administrative law or any other law,
> rule or regulation, whether fixed or contingent, at law or in equity, whether in
> the nature of class, individual, representative, or in other capacity, that Lead
> Plaintiff or any other member of the Settlement Class: (i) asserted in the
> Complaint; or (ii) could have asserted in any forum that arise out of or are
> based upon the allegations, transactions, facts, matters or occurrences,
> representations or omissions involved, set forth, or referred to in the Complaint
> and that relate to the purchase, acquisition, or sale of Braxia shares that traded
> on the OTC Market during the Settlement Class Period.  Released Plaintiff's
> Claims do not include: (i) any claims relating to the enforcement of the
> Settlement or its terms; (ii) any claims related to the purchase, acquisition or
> sale of Braxia stock on the Canadian Stock Exchange or any other exchange
> besides the OTC Market; or (iii) any claims of any person or entity who or
> which submits a request for exclusion that is accepted by the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | CV21-3120 JVS (KESx) | | Date | February 28, 2023 |
| Title | Jeffrey N. Schneider v. Champignon Brands Inc. et al. | | | |

(Id. ¶¶ 1(¶), 7.)

### 6.    Notice

Lead Counsel selected Strategic Claims Service as the Claims Administrator.  (See Declaration of Margery Craig ("Craig Decl."), Dkt. No. 89-4, ¶ 1.)  SCS published a notice electronically on Globe Newswire, maintains a toll-free telephone, and maintains a webpage at www.strategicclaims.net/Braxia/ (the "Settlement Webpage").  (Sett.  (Id. ¶¶ 10–12.)  SCS mailed 16,741 Postcard Notices and sent 20,740 emails to potential Settlement Class Members.  (See Supplemental Declaration of Margery Craig ("Supp. Craig Decl."), Dkt. No. 92-1, ¶¶ 3–4.)   As of February 16, 2023, SCS did not receive any requests for exclusion or objections.  (Id. ¶¶ 7–8.)

### 7.    Claims Submission Process

Settlement Class members who wish to receive a distribution from the Net Settlement Fund must submit a Claim Form online or via mail.  (Order at 9.)  All Claim Forms must be submitted or postmarked no later than one-hundred-twenty days after the Notice Date.  (Id.)  Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of the Settlement Agreement.  (Settlement Agreement ¶ 23.)

### 8.    Opt-Out and Objection Process

Settlement Class Members were able to opt out of the Settlement Agreement by submitting a written request, to be received no later than February 6, 2023.  (See Craig Decl. ¶ 13.)  The written exclusion request must include: (1) the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (2) a statement that such person or entity "requests exclusion from the Settlement Class in Schneider v. Champignon Brands Inc., Case No. 2:21-cv-03120; (3) the number of Braxia shares that the person or entity purchased/acquired and/or sold on the OTC Market during the Settlement Class Period, as well as the dates and prices of each purchase, acquisition, and sale; and (4) the signature of the person or entity requesting exclusion or an authorized representative."  (Id., Ex. A, at 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV21-3120 JVS (KESx) | Date | February 28, 2023 |
| Title | Jeffrey N. Schneider v. Champignon Brands Inc. et al. | | |

Any Settlement Class Member who does not opt out may object to the proposed settlement by submitting a written objection to the Court and serving copies of such objection on Lead Counsel and Defendants' Counsel such that they are received no later than February 6, 2023.  (Id. at 15.)  The objection must: (1) state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (2) contain a statement of the Settlement Class Member's objections and the specific reasons for each objection; and (3) include documents sufficient to prove membership in the Settlement Class, including the number of Braxia shares that the objecting Settlement Class Member purchased/acquired and/or sold on the OTC Market during the Settlement Class Period, and the dates and prices of each purchase, acquisition, and sale.  (Id. ¶ 16.)

As discussed above, no request to opt out or objection to the Settlement was received.  (Supp. Craig Decl. ¶¶ 7–8.)

## 9.	Revocation of Agreement

The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion from the Settlement.   (Order at 10.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) states that "[t]he claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . or compromised only with the court's approval."  "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class."  Fed. R. Civ. P. 23(e)(1)(A).  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i)(ii).

## III. DISCUSSION

### A.	Class Certification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV21-3120 JVS (KESx)                     Date  February 28, 2023

Title  Jeffrey N. Schneider v. Champignon Brands Inc. et al.

The Court previously held "Plaintiffs meet their burden for class certification for purposes of the preliminary settlement motion." (Order, Dkt. No. 87, at 17.)  There the Court found, based on the record before it, Plaintiff satisfied the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b).  (Id. at 10–17.)  Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling.  (See Mot. at 18.)  Thus, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

> B.    *Approval of the Class Settlement*

Under Rule 23(e)(2), if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is "fair, reasonable, and adequate."  "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (internal quotation marks omitted)).

When evaluating the fairness of a class action settlement, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV21-3120 JVS (KESx)                    Date    February 28, 2023

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al.

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered.  See, e.g., In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]"  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Id.

A "higher standard of fairness" applies when, like here, parties settle a case before the district court has formally certified a litigation class.  See Campbell v. Facebook, Inc., 951 F.3d at 1121 (citing Hanlon, 150 F.3d at 1026).  In such cases, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)."  Id. (quoting Hanlon, 150 F.3d at 1026).

> 1.    Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class.  This analysis includes "the nature and amount of discovery" undertaken in the litigation.  Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.  For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Here, no extensive discovery — or any formal discovery — has yet commenced.  Plaintiff contends that "Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including consultation with experts in the fields of loss causation, damages, and accounting."  (Mot. at 6.)  Specifically, Plaintiff states that "counsel conducted an investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) the Company's filings with Canadian regulatory agencies, including the British Columbia Securities Commission,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title        Jeffrey N. Schneider v. Champignon Brands Inc. et al.

and the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysis, and news articles concerning the Company, and (c) other publicly available material related to the Company; and (2) retaining and working with damages and loss causation experts as well as an accounting expert." (Id.)

It is true that discovery has not commenced in this case.  However, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (internal quotations and citation omitted).  Here, because Defendants filed a motion to dismiss, Plaintiff was precluded by the PSLRA from commencing discovery "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  Lead Counsel asserts they made an informed assessment of the action, and incorporated their extensive experience in securities litigation.  (Mot. at 15–16.)  Given this and the investigation that Lead Counsel provided evidence of conducting, the Court finds that Plaintiff had sufficient information to make an informed decision.

            2.        Negotiated at Arm's Length

The second Rule 23(e)(2) factor asks the Court to confirm that the settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Servs., 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement has been negotiated at arm's length.

            3.        Adequacy of Relief Provided for the Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV21-3120 JVS (KESx)                          Date    February 28, 2023

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al.

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018). Here, Plaintiff argues that "[t]he $1,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement and the issuance of notice to the Settlement." (Mot. at 11.) In support of this assertion, Plaintiff presents evidence by the retained damages expert, Michael Marek ("Marek"). Using a multi-trader model, a "widely accepted" model for estimating the number of damaged shares, Marek estimated the artificial inflation per share, determined that there were 53,716,176 damaged shares and calculates the full damages to be $7,926,522. (Declaration of Michael A. Marek ("Marek Decl.), Dkt. No. 72-1, ¶¶ 12–17.)

Plaintiff asserts that the $1 million Settlement Amount thus "represents approximately 12.7% of the total ***maximum*** damages *potentially* available in this Action." (Mot. at 11 (italics and bold in original).) This percentage is "not unreasonable in light of the risks, expenses, and likely duration of further litigation in this action." Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc., No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding that 3.5% "is within the median recovery in securities class actions settled in the last few years").

In assessing the adequacy of the relief, the Court finds it significant that there are no opt outs or objectors.

**a.      Costs, Risk, and Dely of Trial and Appeal**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV21-3120 JVS (KESx) | Date | February 28, 2023 |

| | |
|---|---|
| Title | Jeffrey N. Schneider v. Champignon Brands Inc. et al. |

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  Here, the costs, risks, and delay of trial and appeal favor preliminary approval.  "Proceeding in this litigation in the absence of settlement poses various risks such as . . . having summary judgment granted against Plaintiffs[] or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement."  Graves v. United Indus. Corp., 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (citing Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009); Curtis-Bauer v. Morgan Stanley & Co., Inc., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)).

Plaintiff contends that the Settlement Amount is fair given the significant risks involved in continuing litigation that could substantially reduce the amount of recoverable damages.  (Mot. at 8–10.)  The Court agrees that the early stage of this litigation, and the risks that are avoided by reaching this settlement, should be weighed in considering the reasonableness of the Settlement.  The Settlement Agreement offers the Parties immediate and certain relief.  This case would still have to proceed through summary judgment, trial, and appeal if Plaintiffs are successful in the absence of the Settlement Agreement.  This subfactor therefore favors preliminary approval of the Class Settlement because in its absence there will be inevitable costs, high risks, and delay.

### b.  Effectiveness of Proposed Method of Relief Distribution

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  Id.

Here, Settlement Class members who wish to receive a distribution from the Net Settlement Fund may either submit a Claim Form online or via mail.  (Craig Decl. ¶ 9.)  This is a reasonable means of distributing relief.  See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title       Jeffrey N. Schneider v. Champignon Brands Inc. et al.

members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").  Further, SCS will allow claimants an opportunity to cure any claim deficiencies or request the Court to review a denial of their claims.  (Mot. at 12.)  This subfactor therefore weighs in favor of approval.

### c.       Terms of Award of Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).  In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class."  Briseno v. ConAgra Foods, Inc., 2021 WL 2197968, at *6 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)).  The Court must consider whether these factors exist in post-class certification settlements.  Id. at *8.

Lead Counsel requests a preliminary award of attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the settlement fund.  (Attorneys' Fees Mot.)  Lead Counsel also seeks reimbursement of $23,953.30 in out-of-pocket expenses and $1,000 of reasonable costs and expenses for Lead Plaintiff, paid from the Settlement Fund.  (Id.)

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees."  Hanlon, 150 F.3d at 1029.  That benchmark is not rigid, and leaves room for the consideration of the circumstances of the case, including the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002).  Courts in this district typically adhere to this benchmark in cases in which there is little active litigation pre-settlement.  See, e.g., Ramirez v. Rite Aid Corp., 2022 U.S. Dist. LEXIS 109069, at *23 (C.D. Cal. May 3, 2022) (25% "is a benchmark that this Court . . . almost always adheres to in cases where there is little active litigation pre-settlement").  The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV21-3120 JVS (KESx)                          Date    February 28, 2023

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al.

the lodestar method or the percentage-of-the-fund method.  Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).

Here, Lead Counsel requests a fee award of 25%.  This is consistent with the 25% benchmark used by courts in the circuit.  As discussed above, the total possible maximum damages is $7,926,522.  Lead Counsel achieved a settlement amount equal to 12.7% of the maximum possible settlement amount, which is reasonable.  This result was achieved in light of substantial risks of prolonged litigation, including potential difficulty in proving loss causation, liability, and damages.  (See Attorneys' Fees Mot. at 7–10.)  Lead Counsel has a long-record of successfully prosecuting securities litigation cases, and took this case on a contingent fee.  (Id. at 10–13.)  All of these factors weigh in favor of the 25% as reasonable.

Additionally, Lead Counsel's lodestar cross-check calculation yields a sum of $182,872.50 based on 303.90 hours worked.  (Id. at 16–17.)  Compared to the 25% fee request, this yields a multiplier of 1.37.  This multiplier is reasonable.  See, e.g., Vizcaino, 290 F.3d at 1051 (affirming district court's approval where the lodestar multiplier was 3.65).  The Court finds the percentage-of-the-fund-method is fair and reasonable.

Lead Counsel also seeks a total sum of $24,953.30 in litigation expenses.  The expenses include $21,656 for experts, $2,297 for service of process, and $1,000 for costs, including lost wages, incurred by Plaintiff.  Experts and service of process are routinely billed to clients and thus reasonable for Lead Counsel to recover these costs from the Settlement Fund.  See, e.g., Todd v. STAAR Surgical Co., 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017).  The $1,000 reimbursement to Plaintiff is also reasonable and directly related to the representation of the Settlement Class.  See, e.g., In re K12 Inc. Sec. Litig., 2019 WL 3766420 at *2 (N.D. Cal. July 10, 2019).

Lead Counsel's request for attorneys' fees and litigation expenses is fair and reasonable.  This subfactor therefore weighs in favor of approval.

### d.    Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement.  See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  The Parties entered into a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV21-3120 JVS (KESx) | Date | February 28, 2023 |

| | |
|---|---|
| Title | Jeffrey N. Schneider v. Champignon Brands Inc. et al. |

confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion from the Settlement. (Mot. at 13.)  "The existence of a termination option triggered by the number of class members or shares that opt out of the Settlement does not by itself render the Settlement unfair."  Fleming v. Impax Labs. Inc., 2021 U.S. Dist. LEXIS 225218, at *32.

Plaintiff previously provided the Court with a copy of the Opt-Out Agreement for the Court's review.  (Order at 24–25.)  The Court reviewed the Opt-Out Agreement in-camera and found it was not unreasonable.  (Id.)

> 4.      Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Claimants will be treated equitably by receiving a *pro rata* share of the Net Settlement Fund based on their estimated injury.  Plaintiffs explain that "an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total amount in the Net Settlement Fund."  (Mot. at 13–14.)  Accordingly, the average recovery among class members will presumably vary depending on the number of shares purchased, acquired, and sold and the time period.  The Court finds no indication that the distribution and allocation methods that Plaintiff proposes will result in inequitable treatment of class members.  See Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and ha[d] the benefit of simplicity").

This factor thus weighs in favor of preliminary approval of the Settlement.

> **5.      Conclusion**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV21-3120 JVS (KESx)                    Date    February 28, 2023

Title    Jeffrey N. Schneider v. Champignon Brands Inc. et al.

As each of the above factors weighs in favor of approval and Plaintiff provided sufficient information for the Court to evaluate the reasonableness of the Settlement Agreement.  Accordingly, the Court finds that the Settlement is fair, reasonable, and adequate.

C.    *Notice*

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks and citation omitted).  "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]"  Id.  "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims."  Lane, 696 F.3d at 826.

The Notice approved by the Court and implemented by the Claims Administrator satisfies the applicable standard.  (See Craig Decl.; Reply.)  Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

D.    *Attorneys' Fees and Costs*

The Court previously held "Lead Counsel's request for attorneys' fees and litigation expenses is fair and reasonable."  (Order at 6–7, 22–24.)  Specifically, the Court found the request for attorneys' fees in the amount of 25% of the Settlement Fund, or $250,000, plus interest earned at the same rate as the settlement fund is fair.  (Id. at 23.) The Court also found reimbursement for $24,953.30 in litigation expenses was also reasonable.  Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling.  (See Mot. at 19.)  Thus, for the reasons specified in its preliminary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV21-3120 JVS (KESx)                    Date   February 28, 2023

Title   Jeffrey N. Schneider v. Champignon Brands Inc. et al.

approval order, the Court **GRANTS** the motion for attorneys' fees and reimbursement of litigation expenses.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions.

**IT IS SO ORDERED.**